DEAN K. DUNSMORE
U.S. DEPARTMENT OF JUSTICE
Environment & Natural Resources
 Division
801 B Street, Suite 504
Anchorage, Alaska 99501-3657
Telephone: (907) 271-5452
Facsimile: (907-271-5827
Email: dean.dunsmore@usdoj.gov

PAUL HARRISON
TRIAL ATTORNEY
U.S. DEPARTMENT OF JUSTICE
Environment & Natural Resources
 Division
P.O. Box 561 - Ben Franklin Station
Washington, D. C.  20044
Telephone: (202) 305-0299
Facsimile: (202) 514-8865
Email: paul.harrison@usdoj.gov

Attorneys for the United States

FILED

DEC 2 8 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

By _____

Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| PAUL G. SHEARER ) | |
| ) | |
| Plaintiff, ) | No. A03-0263-CV(JKS) |
| ) | (CONSOLIDATED) |
| V. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| GALE NORTON, Secretary of the ) | REPLY IN SUPPORT OF |
| Interior, the DEPARTMENT OF ) | MOTION OF THE UNITED STATES |
| THE INTERIOR, the NATIONAL ) | FOR PARTIAL SUMMARY |
| PARK SERVICE. ) | JUDGMENT AND OPPOSITION TO |
| ) | PLAINTIFF'S CROSS MOTION |
| Defendants. ) | |
| ) | |

INTRODUCTION

     In the First Amended Complaint (Docket Entry No. 21) filed

May 19, 2005, Paul G. Shearer, plaintiff in Case No. A03-0263-CV, ¶¶ 9-13, 47, alleges claims seeking just compensation for the alleged taking of certain properties. These takings are alleged to have occurred by operation of section 120 of the Act of November 14, 1997, Pub. L. No. 105-83, 111 Stat. 1543, 1564-66 (hereinafter referred to as Section 120). First Amended Complaint ¶¶ 2-3, 9-10, 13. The United States moved (Docket Entry No. 39) for a summary judgment dismissing Shearer's claim for compensation for 20 (Parcels designated Parcels 2-21) of 21 parcels, on the grounds that Shearer did not consent to taking of these parcels as required by Section 120.[1]/ In the alternative, the United States moved for the dismissal of Shearer's claims for compensation for Parcels 2, 4, 5, and 6 on other grounds.

Shearer has filed an opposition to this motion. Plaintiff's Opposition to Motion of the United States for Partial Summary Judgment (Docket Entry No. 65), hereinafter referred to as Plf's Opposition. In this opposition Shearer opposes the dismissal of the claims for compensation for Parcels 2-21 generally, but

---

[1]/     The dismissal of Shearer's claims for Parcels 2 through 21 will leave only his claim for a taking of Parcel 1. Parcel 1 is a 3.05 acre portion of the Doherty patented lode mining claim. The United States does not dispute that a taking of this 3.05 acres of the Doherty claim occurred by operation of Section 120. The United States' own action, *United States v. 3.05 Acres*, No. A03-0269-CV(JKS), which is a part of this consolidated proceeding, seeks a determination of the amount just compensation due for the legislative taking of this 3.05 acres.

agrees that his claims for Parcels 2, 4, 5, and 6 may be dismissed.

Shearer also filed a cross motion for summary judgment. Plaintiff's Cross Motion for Partial Summary Judgment Re: Section 120 Consent (Docket Entry No. 64). The United States replies herein in support of its motion for partial summary judgment (Docket Entry No. 39), and in opposition to Shearer's cross motion.

ARGUMENT

I. STANDARDS FOR SUMMARY JUDGMENT

In discussing the standards for the granting of a summary judgment, Shearer ignores a crucial fact. The Government's motion seeks a summary judgment on issue on which Shearer, not the United States, has the burden of proof. Shearer is the party alleging that he owned certain properties that were taken by the United States by operation of Section 120; and therefore, he is entitled to be compensated for this taking. In order to recover compensation, Shearer must prove among other things, that he consented, as required by Section 120, to the taking of the properties for which he seeks compensation.[2]/ All the United States was required to do was to inform the court of the basis of

---

[2]/     The relevant provisions of Section 120 are quoted in the Points and Authorities in Support of Motion of the United States for Partial Summary Judgment at 5-6.

its motion and identify those portions of pleadings, answers to interrogatories, admissions and affidavits, if any, that demonstrate the lack of "a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lake Nacimiento Ranch Co. v. County of San Luis Obispo*, 841 F.2d 872, 876 (9th Cir. 1988), *cert. denied,* 488 U.S. 827 (1988). Once that showing is made, the United States is entitled to judgment as a matter of law if the nonmoving party (here Mr. Shearer) fails to make a "sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Lake Nacimiento Ranch Co*. 841 F.2d at 876.

As will be shown below, Shearer has singularly failed to meet his burden of showing that he consented to the taking of any mining claims other than a portion of the Doherty lode claim.

## II. SHEARER DID NOT CONSENT TO THE TAKING OF PARCELS 2 THROUGH 21

There is no dispute that a timely consent to a taking is an express condition of Section 120. There is also no dispute that the consent submitted by Shearer did not specifically consent to the taking of any property other than a portion of the Doherty lode claim. There is no dispute that Shearer's written Section 120 consent did not name any of the properties identified in the First Amended Complaint as Parcels 2-21.

Shearer admits that his consent was written in only the

general terms of "[a]ll such interests in mining claims in the
Kantishna area....," and only, with the exception of the Doherty
lode claim, specifically identified the properties to which
Shearer was not consenting. Declaration of Paul G. Shearer (which
accompanied Plf's Opposition) ¶ 11. Shearer also concedes that he
attached a map to his consent that depicted the portion of the
Doherty lode claim to which he was consenting. *Id.* ¶ 46-47. This
was the only specific designation of any property to which he was
consenting under Section 120 submitted by Shearer by the February
12, 1998 statutory deadline.

Shearer in fact admits that he was at that time involved in
litigation over the ownership of various properties. *Id.* ¶¶ 13-
14. Therefore, Shearer deliberately chose not to list those
properties in his Section 120 consent. *Id.* ¶ 15: "Because these
property interests were in dispute, **I chose not to list the
properties specifically** in my consent of February 12, 1998."
(Emphasis added)

Section 120 is very specific. Congress is providing for the
legislative taking of "all patented mining claims and valid
unpatented mining claims" for which "all current owners"
submitted a "consent to such vesting in writing to the Secretary
of the Interior within" 90-days or by February 12, 1998. 111
Stat. 1564-65. While it is not explicitly stated in Section 120,
it is nevertheless elemental that the necessary consent must

REPLY SUPPORT US MOTION FOR
PARTIAL SUMMARY JUD'T

identify the property to which that consent was being given.

There is nothing in the language and structure of Section 120 that would permit an claim owner to consent to any property that I may later be determined to own. Implicitly, specific identification is required. With the submission of the required consent, the United States was to pay just compensation, and if an amount could not be agreed upon, the parties could immediately commence suit in this court to determine the amount of compensation due. *Id.* None of this could be done, if the claims to which the consent is given are not specified. It is not possible to determine the value of unidentified property, or to bring suit to determine the value of such property.

Further, the required written consent to the taking is not just a element in effecting the taking, but an element of the jurisdiction of the court under section 120. Under Section 120, the court only has jurisdiction to determine and award compensation for the taking of mining claims for which the required consent was given. Section 120 is, thus, also a waiver of sovereign immunity. Waivers immunity may not be implied, but must be express and unequivocal. *United States v. Nordic Village*, 503 U.S. 30, 33-34 (1992); *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983), *cert. denied sub nom.*, 466 U.S. 958 (1984). Any waiver of sovereign immunity and any limitations on that waiver are also to

be strictly construed in favor of the government. *Lane v. Pena*,
116 S. Ct. 2092, 2096 (1996); *Ruckelshaus v. Sierra Club*, 463
U.S. 680, 687 (1983); *Lehman v. Nakshian*, 453 U.S. at 160-61;
*Campbell v. United States*, 835 F.2d 193, 195 (9th Cir. 1987).
When Congress attaches conditions to legislation waiving
sovereign immunity, those conditions must be strictly observed,
and exceptions thereto are not to be implied. *Lane v. Pena; Block
v. North Dakota*, 461 U.S. 273, 287 (1983); *Wildman v. United
States*, 827 F.2d 1306, 1309 (9th Cir. 1987). Here one condition
for the court's jurisdiction is a written consent submitted by
February 12, 1998, to the legislative taking of mining claims.
That condition and the firm February 12, 1998 deadline would be
meaningless if the consent did not specify the mining claims
subject to that consent.

Further, nothing in Section 120 precluded Shearer from
specifically listing in his consent the claims that he was
claiming to own, even if his ownership was in litigation and
unresolved. He certainly knew or should have known the mining
claims he believed that he owned. One would certainly expect a
reasonable person who claims to have expended over 2,000 hours of
time and funds "in a significant amount (five figures)",
Declaration of Shearer ¶ 37, to be able to identify the
properties on which all of these resources had been expended.
That he chose not to list the claims he was claiming to own was

his own choice. Any such listing would not have been prejudicial to Shearer or any other owner. If it was later determined that Shearer was not an owner of any of the properties on February 12, 1998, then his Section 120 consent would not be effective, and would not deprive anyone else of that property.

   A. **Shearer Misstates and Confuses Condemnation Law.** Shearer offers several arguments to support the contention that his consent should be construed to include Parcels 2-21. One, Shearer would identify himself as the condemning agency (the "condemnor") in an eminent domain proceeding. Plf's Opposition, Part I.C, at 7-11. Thus, he contends that he should be permitted to amend his complaint after February 12, 1998, so as to identify the claims to which he has consented to their taking.

   First, Shearer is not the condemning agency, and Section 120 does not make him the equivalent of the condemning agency. It is the United States acting through Congress that is the taking entity.

   The United States has, as a sovereign, the right to take private property for public uses. *United States v. Jones*, 109 U.S. 513, 518 (1883): "The power to take private property for public uses, generally termed the right of eminent domain, belongs to every independent government." A condition on this right is that the United States must pay just compensation for this taking. *Armstrong v. United States*, 364 U.S. 40, 49 (1960);

*United States v. Jones*, 109 U.S. at 518-19.

Such takings can occur directly through the exercise of the power of eminent domain with the commencement of a condemnation action. *United States v. 564.54 Acres of Land*, 441 U.S. 506 (1979); *United States v. Dow*, 357 U.S. 17, 21-22 (1958). This can be described as the usual or direct taking action. A taking may also occur indirectly when the government acts in a manner which causes an inverse condemnation. *First English Evangelical Lutheran Church of Glendale v. Los Angeles County*, 482 U.S. 304, 315 (1987); *United States v. Clarke*, 445 U.S. 253, 255 (1980). Inverse condemnation, in turn, can occur by direct physical invasion, *Loretto v. Teleprompter Manhattan CTAB Corp.*, 458 U.S. 419, 436 (1982), or by virtue of governmental restrictions (regulatory taking) on land use. *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978).

The power of the United States to take property may be exercised by yet a third method--by Congress directly. *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 5 (1984): "Finally, Congress occasionally exercises the power of eminent domain directly." If Congress so acts, then there has been a "'legislative taking.'" *Id*. It is the latter that has occurred in this instance. Congress has effected a legislative taking if certain conditions are met and these include the timely

submission of a written consent to the taking. This does not make Shearer the equivalent of the taking entity or in his terms, the "condemnor". That "condemnor" remains the United States.

Shearer then relies on this false characterization of himself as the condemner to argue that like the United States in a direct condemnation action, he should be allowed to amend his complaint to describe the properties he intended his consent to cover. First, that would make a nullity of the consent deadline in Section 120. Second, the ability to amend a complaint to change, and in this instance add to the description of the properties taken,[2]/ has no application to a legislative taking where Congress has defined the property that it is taking. It applies in an ordinary taking action where there is authority for the taking and for some reason it is necessary to add additional property to that which was the original subject of the action. For example, an agency may determine that its project will require more property than originally envisioned. However, the ability to so amend clearly does not extend to the situation where the taking is a legislative taking. Congress there defines the property taken. Any later judicial pleadings do not define the property taken, but at most describe the property taken for

---

[2]/    The original Complaint (Docket Entry No. 1) ¶ 9 filed by Shearer only specifically identified the Doherty lode claim.

REPLY SUPPORT US MOTION FOR
PARTIAL SUMMARY JUD'T

which compensation is sought.[4]/

**B. Estoppel Does Not Apply.** Shearer contends that the United States is estopped from challenging the scope of his Section 120 consent. Shearer also contends that he will suffer substantial financial injury if he is not permitted to add Parcels 2-21 to the his Section 120 consent. Plf's Opp. at 10. He couples this statement with the contentions that he believes he shared a draft of his proposed Section 120 consent with Mr. Charles Gilbert of the Park Service, *id.* ¶ 16 ("I believe I shared"), and that he was never informed that this consent would be invalid except for properties other than the Doherty claim, *id.* ¶ 17. He then argues that the United States should now be estopped from contending otherwise.

First, Shearer's statements are incorrect. The Park Service has no record that Shearer ever submitted a draft of his proposed consent. Second Declaration of Charles M. Gilbert (Exhibit 1 hereto) ¶¶ 5-6. Further, after his consent was submitted, the Park Service promptly acknowledged by letter dated February 18, 1998, that it had received his Section 120 consent, and notified Shearer that this consent "affects Tract 12-117, Doherty." *Id.* ¶ 4 and attachment B thereto at 7.

Second, even if Shearer had submitted a draft of his

_____

[4]/    A party whose property has been taken can decide to forgo claiming any compensation.

consent, and the Park Service did not tell Shearer that it would
not be effective except for specifically named or described
properties, the United States would not be estopped from now
contending that this consent covered only a taking of the
designated portions of the Doherty lode claim.

Assuming that the doctrine of estoppel could be applied to
the United States,[5]/ application of that doctrine requires the
plaintiff to first show each of the following traditional
elements:

     1. The party to be estopped must know the facts;

     2. He or she must intend that his or her conduct shall
be acted on or must so act that the party asserting estoppel
has a right to believe it is so intended;

     3. The latter must be ignorant of the true facts; and

     4. The party asserting estoppel must rely on the
former's conduct to his or her injury.

*Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991); *JAA v.
United States Immigration & Naturalization Service*, 779 F.2d 569,
571 (9th Cir. 1986); *United States v. Ruby Co.*, 588 F.2d 697, 703

---

[5]/    Whether this doctrine is ever applicable to the United
States is an issue which has not yet been decided by the Supreme
Court. *Office of Personnel Management v. Richmond*, 496 U.S. 414,
423-24, *rehearing denied*, 497 U.S. 1046 (1990); *Heckler v.
Community Health Services of Crawford County*, 467 U.S. 51, 60
(1984). The United States contends that the doctrine does not
apply to it.

(9th Cir. 1978), *cert. denied sub nom.*, *Ruby v. United States*, 442 U.S. 917 (1979); *Lord v. Babbitt*, 991 F. Supp. 1150, 1162 (D. Alaska 1997), *affirmed without published opinion*, 188 F.3d 513 (9th Cir. 1999), *cert. denied*, 530 U.S. 1214 (2000).

Further, if a party is asserting estoppel against the United States, it must, in addition to the forgoing traditional elements, also show that the government's actions have amounted to affirmative misconduct. *Gilmore v. Lujan*, 947 F.2d 1409, 1412 (9th Cir. 1991); *Bolt*, 944 F.2d at 609; *Seldovia Native Ass'n v. Lujan*, 904 F.2d 1335, 1347 (9th Cir. 1990); *Mukherjee v. Immigration & Naturalization Service*, 793 F.2d 1006, 1008 (9th Cir. 1986); *JAA v. United States*, 779 F.2d at 571; *Lord v. Babbitt*; *Alaska Limestone Corp. v. Hodel*, 614 F. Supp. 642, 647 (D. Alaska 1985). As stated in *United States v. Ruby Co.*, 588 F.2d at 704, in order for estoppel to apply there must be "an affirmative misrepresentation or an affirmative concealment of a material fact by the government." A mere mistake does not rise to the level required for estoppel. *Mukherjee*, 793 F.2d at 1009; *Lord v. Babbitt*; *United States v. Alaska Public Utilities Comm'n*, 800 F. Supp. 857, 861 (D. Alaska). Affirmative misconduct is an essential requirement if estoppel were to be applied, *Rider v. United States Postal Service*, 862 F.2d 239, 241 (9th Cir. 1988).

Even interpreting Shearer's statements in the light most

favorable to him, the Park Service's actions or inactions did not
amount to affirmative misconduct or affirmative concealment. All
Shearer has shown is that he believes that he provided a draft of
his proposed consent to the Park Service some time before
February 12, 1998, and that the Park Service did not tell him
that this draft consent would be effective only for the Doherty
lode claim or a portion thereof. However, assuming such a draft
had been provided, the Park Service had no duty to inform him of
any limitations on the scope of his purported draft consent.
Further, any failure of the Park Service to do so clearly would
not be affirmative misconduct or affirmative concealment, for the
Park Service would have no reason to believe that Shearer
intended his consent to be broader unless he had so specifically
stated.

Further, Shearer does not even meet all the traditional
elements for estoppel. He has not shown that he actually informed
the Park Service prior to the filing of his Section 120 consent
that he was intending to consent to property other than a portion
of the Doherty claim. All he has shown is that he believes he
provided a draft of his consent to the Park Service. Declaration
of Shearer ¶ 16. He has made no showing he actually informed the
Park Service that he wanted his consent to be broader. Further,
no showing at all has been made that the Park Service knew that
Shearer would rely on any response or lack thereof to any

submission of a draft consent as constituting agreement as to the scope of the consent. Thus, the Park Service could not have intended that its actions or inactions be relied upon by Shearer.

Nor does any agreement and encouragement by the United States for the filing of an amended complaint operate to bar the United States from contending that his consent is limited to the Doherty claim. First, the Section 120 consent had to be filed by February 12, 1998, at the latest. Any agreement to the filing of the First Amended Complaint came years later (after Shearer commenced his action on November 12, 2003), and could not change or affect the terms of the consent that was required to be submitted over five years earlier.

Further, in his original Complaint (Docket Entry No. 1) Shearer alleged that he was seeking compensation for unidentified claims other than the Doherty lode claim. Complaint ¶ 9: "The Claims include, but are not limited to, the 13.6 acres of the Doherty Lode Mining Claim...." It was reasonable for the United States to desire that these other claims be identified. Shearer had expressed an interest in reaching a settlement of this action, and in order to consider that possibility, the United States needed to know the breadth of his purported action. Amendment of the original Complaint was a means to obtain the necessary identification.

In any event, the Government's agreement that Shearer could

amend his complaint did not constitute an agreement that his
Section 120 consent was broad enough to include claims other than
the Doherty Lode Claim. Further, in responding to the amended
complaint, the United States admitted only that Shearer's consent
was valid for Parcel 1, the 3.05 acres of the Doherty lode claim.
United States of America's Answer to Plaintiff Paul Shearer's
First Amended Complaint (Docket Entry No. 29), ¶ 9 at 3:

> The United States admits that Plaintiff owned
> 3.05 acres of the Doherty claim in Denali
> National Park and Preserve in Alaska and that
> he consented to have that claim taken under
> Section 120. The remaining allegations
> characterize Plaintiff's case and the United
> States neither admits nor denies.

*Also Compare* First Amended Complaint (Docket Entry No. 21) ¶ 41
and United States of America's Answer to Plaintiff Paul Shearer's
First Amended Complaint (Docket Entry No. 29) ¶ 41. The United
States specifically denied that there was any taking of Parcels
2-21. *Compare* First Amended Complaint (Docket Entry No. 21) ¶¶
42-61 and United States of America's Answer to Plaintiff Paul
Shearer's First Amended Complaint (Docket Entry No. 29) ¶¶ 42-61.

Shearer has also failed to show that the Park Service had
actual notice that Shearer claimed to own an interest in any
mining claims other than the Doherty claim in February 1998.
Shearer relies on a letter dated February 25, 1994, to the Park
Service as showing he claimed other properties. Declaration of
Shearer ¶ 26 and Exhibit 2 thereto. This letter did assert an

interest in the Doherty, and Keystone, Pennsylvania and Pitsburg
Claims. However, in April 1994, by two quit claim deeds, Shearer
conveyed both a two-thirds and then a one-third interest in the
Keystone, Pennsylvania and Pitsburg Claims to grantees who in
turn then conveyed their interest in the Keystone, Pennsylvania
and Pitsburg Claims to the United States. Declaration of Charles
M. Gilbert first and second ¶ 9 at 3-4 and attachments D, E and F
thereto at 10-30. This conveyance left Shearer with only an
interest in the Doherty Lode Claim, about which there is no
dispute.

### C. Shearer Misconstrues the Circumstances of *Northwest Exploration.*

Shearer correctly contends (Plf's Opposition at 3-
5), that the court discussed in *Northwest Explorations, Inc. v.
United States et al.*, No. A98-0086-CV(JKS), Order Granting Motion
to Amend Pleadings and Extending Stay of Counts Two Through Four
of the Amended Complaint filed December 23, 1998, at 6,
*reconsideration denied*, Order From Chambers filed January 26,
1999, the issue of what law to apply in determining the extent of
the property included within the Section 120 consent at issue in
that case. However, that discussion is neither relevant to nor
applicable to this case.

In *Northwest Explorations* the parties had previously
negotiated for the purchase of the plaintiffs' property.
Complaint Docket Entry No. 1) in Case No. A98-0086-CV, ¶ 8 and

Exhibit A thereto. A copy of the Northwest Explorations'
Complaint is attached as Exhibit 2 hereto at 7. Northwest
Explorations, Inc. consented to the taking of the property that
had been subject to those prior purchase negotiations. *Id*. ¶ 11
and Exhibit B thereto at 8.

First, unlike the situation in *Northwest Exploration* there
has been no showing of any such prior negotiation and agreement
in this case. Second, the consent in *Northwest Explorations* also
specifically identified mining claims by name and acreage. That
case did not present the issue of whether a Section 120 consent
is valid for claims not even mentioned in the consent.

**D. Shearer Misconstrues the Legislative History of Section
120.** Shearer contends (Plf's Opposition at 5-7) that the
legislative history of Section 120 shows that it was intended to
allow consents such as the one he submitted. Neither the
structure of the statute, nor the legislative history shows any
such intent. All the legislative history and structure of the
statute shows is that Congress recognized there was a problem and
that it was creating a mechanism whereby mining claim owners
could elect to consent to the legislative taking of any patented
or valid unpatented mining claims they might own, and be assured
prompt payment of the estimated just compensation for their
claims. Specifically, Congress recognized that the Park Service
policy was to acquire the mining claims within Denali where

REPLY SUPPORT US MOTION FOR
PARTIAL SUMMARY JUD'T

possible, there were delays and uncertainties in whether mining

operations would be approved on claims within Denali, and there

was "a significant dispute as to whether there have been takings

of mining claims." Conf. Rep. No. 105-337, 105th Cong. 1st Sess.

(1997), at 76, copy attached as Exhibit 3 hereto. Section 120 was

designed to provide a mechanism to resolve these disputes. *Id.*

However, just as clearly, Section 120 did not effect a

taking of all mining claims within the Kantishna Mining District.

A claim owner who wanted to retain his or her claims could still

do so. This was effected by the consent provision. That provision

to be meaningful, however, requires that the consent be

sufficient to determine the properties to which it applies. This

is consistent with the court's decision in *Northwest*

*Explorations, Inc. v. United States et al.*, No. A98-0086-CV(JKS),

Order Granting Motion to Amend Pleadings and Extending Stay of

Counts Two Through Four of the Amended Complaint filed December

23, 1998, at 6, *reconsideration denied*, Order From Chambers filed

January 26, 1999 (copies attached as Exhibits 2 and 3 to the

Motion of the United States for Partial Summary Judgment), that

not just "any form of consent constitutes a valid consent under §

120." This Court rejected the notion that the only requirement of

Section 120 was that some form of consent be given. *Id.* Nor has

Shearer shown anything in the legislative history that indicates

Congress intended the consent provisions of Section 120 be

REPLY SUPPORT US MOTION FOR
PARTIAL SUMMARY JUD'T

interpreted so broadly as to effect a taking of mining claims
that are not even mentioned by name or for which no form of
specific description is provided.

**E. Shearer Would Misapply Common Law Regarding Extrinsic
Evidence.** Shearer contends (Plf's Opposition at 11-16) that
common law permits parties to introduce extrinsic evidence to
determine property descriptions, and that they same should be
applied to Section 120 consents. However, as already shown,
Section 120 and the required consent is not, an ordinary
conveyance document, but a specific statutory condition that also
has jurisdictional (sovereign immunity wavier) consequences.
Common law has no application to such situations, and Shearer has
failed to show any situation where common law has been applied to
define property taken by legislative action.

Shearer also contends that by doing a title search of the
State records, the United States could have determined the
properties Shearer owned. Section 120, however, specifically
adopts provisions of the Declaration of Takings Act, 40 U.S.C. §
258a-e (2000)<u>6</u>/ "except where inconsistent with this section."
111 Stat. at 1565. The Declaration of Taking Act provides a means
for the immediate acquisition of property by the United States

---

<u>6</u>/    The Declaration of Taking Act has since been re-codified
commencing at 40 U.S.C. § 3114 (Supp. II 2002). Act of August 21,
2002, Pub. L. No. 107-217, 116 Stat. 1062, 1145-46.

with the filing of a Declaration of Taking and the deposit of

estimated just compensation. 40 U.S.C. § 258a (2000). A

Declaration of Taking is required to contain "A description of

the lands sufficient for the identification thereof." 40 U.S.C. §

258a(2)(2000). A sufficient description of the property is an

essential requirement in such an action, for the Government

cannot place the burden on the landowner of determining what

property is being taken. *United States v. 39.20 Acres of Land*,

143 F. Supp. 623, 625 (D. N.D. 1955).

      Just as the United States has the duty to tell a landowner

what property it is taking when it files a Declaration of Taking,

plaintiff Shearer should have the same burden under Section 120

to describe to the Government the property to which he is

consenting. The burden should not be placed on the United States

to determine what property was taken and for which it owes

compensation. It is the claim owner's consent that defines the

mining claims taken, and that owner alone has knowledge as to the

property he purports to own and to which he or she wishes to

consent to a taking.

      **F.** **Shearer Would Misapply Common Law With Regard To**

**Contracts.** Shearer also contends (Plf's Opposition at 16-18) that

the common law of contracts should be applied to determine what

was intended to be included in his Section 120 consent. First,

there is no contract at issue. Congress exercised its powers

under eminent domain. The law of contracts is simply not applicable to that situation.

Nor is the court's suggestion in *Northwest Explorations, Inc. v. United States et al.*, No. A98-0086-CV(JKS), that the law of contracts might be applicable in that case relevant to this case. As already shown at 17-18, *supra.*, at the time of Northwest Explorations' consent, Northwest Explorations and the Park Service had negotiated for a purchase and an offer to sell certain property had been made. The Park Service had accepted that offer with the condition that existing title problems be resolved. Exhibit 2 hereto ¶ 8 and Exhibit A thereto at 7. The consent submitted by Northwest Explorations also specifically listed the mining claims by name. *Id.* at 8. There is no such prior history in this case.

### III. THE CLAIM FOR A TAKING OF PARCELS 4, 5 & 6 MUST BE DISMISSED

The United States alternatively moved for the dismissal of Shearer's claims for compensation for mining claims identified as Parcels 4, 5 and 6. The United States showed that the identified mining claims did not exist on the date of taking; therefore, there was no property to be taken. Shearer now agrees to the dismissal of his claims for compensation for these claims. Plf's Opposition at 20:

> Shearer therefore concedes that Parcels 4, 5 and 6 are not enforceable property interests

for purposes of a Section 120 action in just
compensation. Shearer will agree to dismissal
of his First Amended Complaint as to Parcels
4, 5 and 6.

### IV. THE CLAIM FOR A TAKING OF PARCEL 2 MUST BE DISMISSED

Shearer agrees that Parcel 2 consists only of a royalty
interest in the Galena Lode Claim, Mineral Survey 1747. Plf's
Opposition at 20. The United States moved for dismissal of this
claim on two grounds. One, this interest was owned by another
person on February 12, 1998, and that while that party may have
submitted a consent to the taking of that interest, Shearer could
not bring an action to recover for any taking of that interest.
*See United States v. Dow*, 357 U.S. 17, 20 (1958); *Danforth v.
United States*, 308 U.S. 271, 284 (1939). Two, that Section 120
only provides for the taking of patented and valid unpatented
mining claims. Therefore, no taking of the alleged royalty
interest could occur under Section 120. Shearer agrees that this
royalty interest is not within the scope of Section 120. Plf's
Opposition at 20:

> Shearer disagrees on the issue of vested
> ownership rights **but acknowledges that even
> if he were vested with ownership on the date
> of legislative taking that a consent to a
> royalty interest would not suffice for
> purposes of the Section 120 legislation**.
> (Emphasis added)

Thus, Shearer agrees that with respect to Parcel 2, the
First Amended Complaint fails to state a claim upon which relief

can be granted under Section 120. Therefore, his claims for compensation for Parcel 2 must be dismissed.

Shearer states that he will agree to dismissal only if the United States will stipulate "that any consents executed as to this property interest are null and void, and therefore, any documents the Park Service caused to be recorded regarding the consent(s) are null and void." *Id*. He demands "such stipulation as a condition for dismissal" of the claim for Parcel 2. *Id*. However, since the First Amended Complaint fails to state a claim upon which relief can be granted, that claim must be dismissed as a matter of law, and that dismissal cannot be conditioned on any stipulation by the United States.

In any event, Shearer offers no response whatsoever to the showing made by the United States (Points and Authorities in Support of Motion of the United States for Partial Summary Judgment at 13), that since he was not the owner of this royalty interest on February 12, 1998, he is barred from bringing an action for compensation for any taking of that interest. He has, thus, conceded the validity of that argument. Therefore, the claim in the First Amended Complaint for compensation of Parcel 2 must dismissed on that ground without any need to consider Shearer's request for stipulation.

## V. SHEARER'S CROSS MOTION MUST BE DENIED

Plaintiffs' Cross Motion for Partial Summary Judgment Re:
Section 120 Consent (Docket Entry No. 64), states at 1-2, that
Shearer is seeking partial summary judgment based on the
arguments in "Parts I.A through I.C" of Plf's Opposition. The
United States has responded to those specific arguments at 8-19,
*supra*. For the reasons stated therein, his cross-motion must be
denied.

## CONCLUSION

For the reason already stated in Points and Authorities in
Support of Motion of the United States for Partial Summary
Judgment, and stated above, Shearer's claim in the First Amended
Complaint for compensation for Parcels 2-21 must be dismissed,
and Plaintiff's Cross Motion for Partial Summary Judgment Re:
Section 120 Consent (Docket Entry No. 64), must be denied.

Dated this **28th** day of December, 2005.

DEAN K. DUNSMORE
PAUL HARRISON
Attorneys for the United States

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _28th_ day of December, 2005, a copy of the foregoing Reply in Support of the Motion of the United States for Partial Summary Judgment was served by placing said copy in a postage prepaid envelope, addressed to that person at the place and address stated below, and by depositing said envelope and contents in the United States mail at Anchorage, Alaska.

> Paul G. Shearer
> Kathryn McCready
> 1532 Meadows Drive
> Lake Oswego, Oregon 97034

_Lorraine A Carter_

Lorraine A. Carter