RECEIVED

JAN 0 9 2006

CLERK U.S. DISTRICT COURT
ANCHORAGE, ALASKA

Paul G. Shearer
1532 Meadows Drive
Lake Oswego, OR 97034
(503) 697-4378

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| PAUL G. SHEARER, ) | |
| ) | Case No. A03-0263 CV (JKS) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES s OF AMERICA, *et al,* ) | |
| ) | |
| Defendants. ) | |
| ) | |

### SECOND DECLARATION OF PAUL G. SHEARER

Plaintiff Paul G. Shearer, of personal knowledge, states as follows:

1. That I am the Plaintiff in Case A03-0263 and that I have personal knowledge regarding the maters of fact asserted in this declaration.

2. This Declaration is offered with the Reply Memorandum In Support Of Plaintiff's Cross-Motion For Partial Summary Judgment Re: Section 120 Consent and comprises Exhibit B thereto. This Declaration also rebuts assertions of fact set forth in the Reply in Support of the Motion of the United States for Partial Summary Judgment and Opposition to Plaintiff's Cross Motion ("Reply"), along with the Second Declaration of Charles Gilbert, ("Gilbert 2d Decl.") attached thereto as Exhibit 1.

1

Exhibit ___B___ page ___1___ of ___11___

3. United States Opposition (page 16) attempts to mislead the court by falsely claiming that the letter I produced (Shearer 1st Decl. ¶ 26 Exhibit 2) as evidence of Park Service notice asserted only an interest in Doherty, and Keystone, Pennsylvania and Pittsburgh (KPP) Claims. However my letter dated February 25, 1994, to the Park Service explicitly states "**I have recently purchased and recorded ALL interest to the following Deed(s)**..." and the referenced deeds explicitly list mining claims other than those four claims listed above. Therefore the Park Service was explicitly put on notice that I had purchased other mining interests in Kantishna with those and subsequent recorded deeds which had explicit lists of mining claims included in or attached to the deeds. Park Service staff, or their title examiners, would have been able to trace my title chain for all my consented Parcels 2-21, not just the four claims above.

4. Mr. Gilbert (Gilbert 2d Decl. ¶ 8) states that "NPS had received title evidence that the Keystone, Pennsylvania and Pittsburgh mining claims were owned by [other owners]. What Mr. Gilbert failed to state was that later title reports issued indicated that Shearer was claiming an interest in these mining claims. Shearer has requested copies of those updated title reports in his First and Second Requests For Production but the United States has not responded to Shearer's request and has not provided copies of those updated title reports.

5. The Banjo and Pass mining claims (Parcel 7 in the First Amended Complaint) are explicitly listed on the deeds I gave to Park Service in 1994 (Shearer 1st Decl. ¶ 26 Exhibits 3 and 5) and also the later deed recorded in 1995 (Shearer 1st Decl. Exhibit 6). An oversize graphical chart showing my complete chain of title of deeds for the Banjo and Pass mining claims was included Exhibit 20 to my first Declaration.

6. I know that on at least one meeting between 1994 and February 1998 at the Park Service office in Anchorage, I met with Diane Wohlwend and Charles Gilbert and showed Diane the Exhibit 20 chart or an earlier oversize chart with a similar set of deeds. All the deeds shown on the oversize graphical chart (Exhibit 20) were recorded and available to Park Service and any title examiner prior to February 12, 1998. This documentation provides ample evidence of actual notice of my ownership interest in the Banjo and Pass mining claims to the Park Service prior to my Section 120 consent.

7. Another example of actual notice to the Park Service is my undivided 1/6 interest in the Polly Wonder lode mining claim (Parcel 19 in the First Amended Complaint). The 1994 deed in Exhibits 5 explicitly listed the Polly Wonder lode claim by name and therefore also conveyed the remaining 1/6 interest of Polly Wonder from Joseph Quigley heirs to Shearer. The complete list of recorded documents referencing this title chain is (Shearer 1st Decl. Exhibit 15). The Park Service acknowledges receipt of these deeds through Gilbert's Second Declaration, and therefore, the Park Service was on actual notice of my ownership interest in the Polly Wonder lode mining claim prior to my Section 120 consent.

8. The two examples of Parcels 7 and 19 in the above paragraphs demonstrate that I put the Park Service on actual notice about my other interests and that by examination of the deeds Park Service (or their title examiner) could have identified all my other interests in addition to the four mining claims discussed in paragraph 3 and 4 above. For completeness (Shearer 1st Decl. Exhibits , 9, 10, 11, 12, 13, 14, 15, 16) contained the title chains for Parcels 2, 3, 7, 11, 12, 13, 14, 19, 20.

3

Exhibit __B__ page __3__ of __11__

9. Mr. Gilbert in his Second Declaration of Charles M. Gilbert (Gilbert 2d Decl. ¶ 5) states "I do not recall Shearer showing me or discussing with me any draft of the Consent prior to my receipt of the February 12, 1998, Consent from him". However I recall having several phone conversations with Mr. Gilbert prior to my submitting my final Consent on February 12, 1998. He may not recall discussing my draft consent, but I recall that my final consent language was based on those conversations which specifically dealt with the language to use in describing the consent.

10. Mr. Gilbert (Gilbert 2d Decl. ¶ 6) claims that he cannot locate Shearer's draft consent in the NPS files for the Land Resources Program Center. However Diane Wohlwend has told me that their tract deed files are purged of non essential records after land purchases are completed. I have requested copies of these files in Shearer's First and Second Request For Production and United States has not yet responded to any of my production requests.

11. Mr. Gilbert (Gilbert 2d Decl. ¶ 9) admits that NPS asked Shearer to issue quitclaim deeds to convey Shearer's interest in the property. What Mr. Gilbert fails to admit is that NPS first requested Shearer to sign a warranty deed to United States for Shearer's interest in the property. Then NPS asked Shearer to convey his interest with an initial quitclaim deed to the other parties to the benefit of NPS since NPS was attempting to purchase the KPP claims. Shearer complied with NPS first request to take all of his interest to a 2/3 undivided interest in the KKP claims. Then NPS came back and asked for a second deed from Shearer for any of his additional 1/3 undivided interest. NPS has never paid Shearer just compensation for any of these takings of Shearer's interest based on these conveyances Shearer made on behalf of NPS. These actions show the NPS staff understands constructive notice when they want to clear title in their

4

Exhibit B  page 4 of 11

favor. It would therefore be inconsistent for NPS to not be aware of and acknowledge Shearer's other interests in mining claims (Parcels 2-21) that flowed from the same original deeds granted to Shearer.

12. Mr. Gilbert claims in his Second Declaration that he was "surprised" and "astonished" to learn that Shearer was claiming to have had additional ownership interests besides the Doherty which were also covered by the Shearer Consent. He states (Gilbert 2nd Dec ¶ 11,12)

> 11. ... In July 2003, Shearer informed NPS Realty Specialist Diane Wohlwend, who in turn informed me by a July 18, 2003, e-mail message, that Shearer understood NPS was waiting a counteroffer from him, but he wanted to discuss settlement with NPS of all of the claims covered by the Shearer consent, not just the Doherty acreage. **This surprised me greatly.** As explained in paragraphs 7 through 9 of the Declaration of Charles Gilbert attached to the United States' motion for Partial Summary Judgment dated September 30, 2005, NPS believed Shearer only consented to a portion of the Doherty claim.
>
> 12. When Ms. Wohlwend told Shearer NPS did not know what claims he was talking about other than the Doherty parcel, he said he was referring to the properties in the 1937 Option between Joe and Fannie Quigley and E. Fransen and M. Hawkins. A copy of the 1937 Option is attached hereto as Attachment G. **I was astonished to learn this**, as none of these claims were listed in the Shearer Consent.

13. There are three reasons why it is disingenuous for Mr. Gilbert to claim to be surprised or astonished at these facts.

a) First I had informed him as early as the February 25, 1994 letter (Shearer 1st Decl. Exhibit 2) that "**I have recently purchased and recorded ALL interest to the following Deed(s).**" The referenced deeds, attached as Exhs. 3-5 in my first Declaration, explicitly listed

5

Exhibit B page 5 of 11

the same mining claims that were listed in the 1937 Option mentioned above. So my ownership interest in several mining claims listed in the 1994 deeds and provided to the Park Service in 1994 should not have been a surprise to Gilbert in July 2003.

    b)     Second, my Section 120 consent with language, "All such interests in mining claims in the Kantishna area of Denali National Park" is similar in effect to the notice imparted in my 1994 letter to the Park Service that "I have recently purchased and recorded all interest in the following deeds."

    c)     Third, in the very same month he describes as being surprised, July 2003, (*over 5 years after the consent date in February 1998*) he was well informed that United States would file on July 21, 2003, a BLM Complaint (Contest of Mining Claims) in which the United States admitted (page 1 ¶ 3) that the contestant knew that Shearer was claiming an interest in other claims (Banjo and Pass) as set forth in the Settlement Agreement dated June 2000 between Michael Mark-Anthony, Paul Shearer, Red Top Mining Company. This Settlement Agreement referenced the Section 120 Consents. So Mr. Gilbert should also have known about Shearer's claims since the recording of the first Settlement Agreement after June 2000.

14.     More importantly, neither Gilbert nor Wohlwend ever conveyed their "surprise" or "astonishment" to me in July 2003. Nor did either of these persons indicate to me that my 1998 consent was invalid or legally deficient for failure to identify the additional properties on which I was seeking settlement through the Section 120 process.

15.     During the years prior to filing the First Amended Complaint I did communicate with NPS a willingness to provide them a list of all consented claims provided they would sign a non-disclosure. This was necessary so as not to compromise settlement negotiations with Mike

6

Exhibit __B__ page __6__ of __11__

Mark-Anthony and Red Top Mining Company. NPS refused to sign the non-disclosure agreements at those times.

16. Documents in the Park Service tract files that I produced in response to United States requests for production show that Park Service knew there were interests in mining claims that were conveyed by the recorded deeds that I sent to Park Service. United States has yet to deliver a response to Shearer's First and Second Request For Production to obtain the documents that would provide additional proof that Park Service had notice.

17. The Reply at 16 states that "Shearer has also failed to show that the Park Service had actual notice that Shearer claimed to own an interest in any mining claims other than the Doherty claim in February 1998." That statement is false and is contradicted by all of the evidence presented in my first Declaration of Paul G. Shearer that shows that I did communicate with Park Service and put them on notice, including but not limited to giving them copies of recorded documents and letters in which I claimed to own an interest in mining claims other than the Doherty claim in February 1998. The averments in paragraphs 3, 5, 6, 7, 8, and 11 above provide further evidence of actual notice of my interests in several mining claims aside from the Doherty claim. For the reasons stated in paragraphs above, the unsworn statement in the government's Opposition is not supported by the Second Declaration of Charles Gilbert

18. United States offers no explanation as to why they did not search the recorded record or order a title search to determine my consented interest on date of consent, or if they did they offer no facts as to what was discovered. (Shearer 1st Decl. ¶ 41-44) I have seen instances where my recorded interests appeared on updated title reports prior to the consent date, but

United States has refused to produce a response to my First and Second Discovery Requests in which I have requested copies of their updated title reports.

19. I had telephone conversations with Mr. Gilbert prior to beginning the effort to reach a Full and Final Settlement with Mark-Anthony and Red Top Mining Company. In one telephone conversation I specifically asked to confirm that the United States wanted to take the Banjo and Pass mining claims as Section 120 consented claims, since my position was that they had been determined to be valid claims as of the date of consent, February 12, 1998. Mr. Gilbert confirmed that he would want the United States to take the Banjo and Pass as consented mining claims. I therefore proceeded based on the fact that Mr. Gilbert as Chief of Lands for the National Park Service was representing the position of the United States and would agree to take the Banjo and Pass as valid mining claims that had been consented.

20. Prior to initiating the final settlements in state court to quiet title to property that is also the subject of this federal court case, I had also communicated my intentions to the United States attorney Paul Harrison and he did nothing to apprise me otherwise. I proceeded to get a stay from this court, which the United States attorneys stipulated to in our joint status reports, for the purpose of consummating the Full and Final Settlement with Mark-Anthony and Red Top Mining Company. I incurred significant expense and labor to complete the settlements and I reasonably relied on my consent along with the government's understanding of the scope of my consent and willingness to take Banjo and Pass as consented mining claims, and the government did nothing to apprise me otherwise. So after the government stood by and silently allowed me to invest significant labor and expense to compete the final settlements, it is now I who am "surprised" and "astonished" that the government waited until late 2005 to change its position

Exhibit B page 8 of 11

and to formally oppose my First Amended Complaint and file a Motion for Partial Summary Judgment to challenge the validity of the Shearer Consent.

21. The Reply at 15 claims that it requested Shearer amend the complaint in order to know the breadth of his purported action for settlement considerations. However, neither Park Service personnel nor government lawyers ever made that representation to me. During our discussions they never indicated that settlement was a main reason for amending the complaint. Instead, those discussions focused on United States agreeing to a stay so that I could complete the settlements in State court and thereafter amend the complaint to include all the mining claims that had been subject of my Section 120 consent and for which I had resolved title issues in State court. (See Shearer 1st Decl. ¶ 20-25.)

22. The joint status reports clearly show the United States agreed to allow me to amend the complaint but never represented to me personally or in those joint status reports that it was for settlement purposes only. (See Shearer 1st Decl. ¶ 24-25). The United States has never taken the initiative to request a settlement discussion with me and has never formally replied to any of my written settlement offers. Moreover, the government explained that it had no duty to settle and that settlement discussion was premature. I therefore consider the government's unsworn statement that it agreed to my amending the complaint for settlement purposes to be a perpetual excuse that belies the understanding between the parties set forth above and referenced in the Joint Status Reports filed with the Court.

23. United States has agreed to the stays required for Shearer to obtain final settlements in Alaska State Court for the express purpose of amending Shearer's Complaint to include the list of properties consented which first needed to have all ownership issues resolved

9

Exhibit __B__ page __9__ of __11__

in Alaska State Court. The United States agreed to this process in both the joint status reports and in email exchanged between the parties. (See Shearer 1st Decl. ¶ 24-25 and email dialog Exhibit 17.)

24. Neither the Park Service nor other personnel representing the United States ever communicated to me that my Section 120 consent was invalid because a specific list of mining claims was lacking. Nor did I ever receive a communication from the Park Service or other personnel representing the United States that my "all inclusive" consent language was invalid as to all of the interests in mining claims in Kantishna. *See* Declaration of Paul Shearer ¶¶ 3-10, 17, attached as Exh. A with Plaintiff's Opposition to Motion of the United States for Partial Summary Judgment ("Shearer Decl."). The first communication I received from the United States wherein it contested the validity of my consent as to Parcels 2-21 was its Motion for Partial Summary Judgment filed on September 30, 2005 (Docket 39).

25. The Reply at 21 states that "plaintiff Shearer should have the same burden under Section 120 to describe to the Government the property to which he is consenting." Again the United States ignores the fact that we agreed that I would amend my complaint to list all consented mining claims for which I could resolve title issues via settlements in State court. As a result of joint status reports agreed to by United States, I was granted a stay by this court to complete the arduous and expensive task of completing those settlements for the purpose of amending the complaint to include the final list of mining claims after all title issues had been settled. I took on a huge burden at great expense to complete the settlements and describe the complete list of consented mining claims in my First Amended Complaint (Docket 21) and

Exhibit _B_ page _10_ of _11_

respond to the United States requests with 328 title documents as evidence of my ownership interests.

I declare under penalty of perjury that the foregoing is true and correct pursuant to U.S.C. § 1746.

Executed at Lake Oswego, Oregon, on January 8, 2006.

_____

Plaintiff
Paul G. Shearer
1532 Meadows Drive
Lake Oswego, OR  97034

11

Exhibit __B__ page __11__ of __11__