DEAN K. DUNSMORE
U.S. DEPARTMENT OF JUSTICE
Environment & Natural Resources
 Division
801 B Street, Suite 504
Anchorage, Alaska 99501-3657
Telephone: (907) 271-5452
Facsimile: (907-271-5827
Email: dean.dunsmore@usdoj.gov

PAUL HARRISON
TRIAL ATTORNEY
U.S. DEPARTMENT OF JUSTICE
Environment & Natural Resources
 Division
P.O. Box 561 - Ben Franklin Station
Washington, D. C.  20044
Telephone: (202) 305-0299
Facsimile: (202) 514-8865
Email: paul.harrison@usdoj.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| PAUL G. SHEARER,<br><br>    Plaintiff,<br><br> V.<br><br>UNITED STATES OF AMERICA,<br>GALE NORTON, Secretary of the<br>Interior, the DEPARTMENT OF<br>THE INTERIOR, the NATIONAL<br>PARK SERVICE.<br><br>    Defendants. | No. A03-0263-CV(JKS)<br>(Consolidated) |

DECLARATION OF CHARLES M. GILBERT

 I, Charles M. Gilbert, upon personal knowledge declare that the following is true and correct:

 1. Since 1990, I have worked as a Realty Officer and as the Chief of the Land Resources Program Center (formerly "Land Resources Division"), National Park Service ("NPS"), Alaska Region,

DECLARATION OF
CHARLES M. GILBERT    - 1 -

EXHIBIT 1
Page 1 of 9

United States Department of the Interior, Anchorage, Alaska.

2. In my capacity as the Chief of the Land Resources Program Center, I oversee all the functions of the Land Resources Program Center, including all components of land acquisition by the Alaska Region of NPS, and the maintenance of records by the Land Resources Program Center with respect thereto. As a result, I am familiar with the mining claims and other interests within units of the National Parks system in Alaska including mining claims within the boundaries of the Denali National Park and Preserve, and of the acquisition or attempts by the National Park Service to acquire such interests. These duties include implementation of section 120 of the Act of November 14, 1997, Pub. L. No. 105-83 (Section 120).

3. Following receipt by the Park Service of written consents required by Section 120, it was determined that notices would be recorded in the Alaska State recording office of all the consents received by Park Service to provide the public full notice of the receipt of these consents. Prior to the recording of such notices, no review was conducted to determine the validity or effectiveness of the consents, as that was not the purpose of recording the notice. Specifically, no review was made to determine: (1) if the consents were valid, (2) if all owners had consented, (3) if the consenting party held a compensable interest in the subject of the consent, or (4) if the interests to which consent was given was the type of interest covered within the scope of Section 120.

4. The document which the Park Service prepared for recordation was entitled Transfer of Property Ownership Through Consent to Legislative Taking, to which the individual consents

were attached. Two of these notices are found as Exhibits 4 and 5 to Plaintiff's Partial Opposition to United States Motion for Partial Judgment on the Pleadings, (Docket Entry No. 74) in *Shearer v. United States*, no. A03-263-CV(JKS)(D. Alaska). Again, these documents were only intended to give notice to the public, and did not represent a determination by the Park Service of the validity or effectiveness of the consents under Section 120.

5. Thus, the Park Service recorded notices of Transfer of Property Ownership for all consents it received even if it had reason to believe that the consent might be ineffective. The notice of the consent submitted by Mr. Mike R. Mark Anthony of placer mining rights to the Sulphide claim, Exhibit 4 at 2 to Plaintiff's Partial Opposition to United States' Motion for Partial Judgment on the Pleadings (Docket Entry No. 74) is an example of the recording of just such a notice of consent. In that instance, the Park Service had previously received (Attachment A hereto) an opinion from the Office of the Regional Solicitor dated November 22, 1995, that those placer mining rights were already held by the United States.

6. I did sign a letter to Paul G. Shearer dated May 29, 1998, a copy of which is attached as Exhibit 3 to Plaintiff's Partial Opposition to United States' Motion for Partial Judgment on the Pleadings (Docket Entry No. 74), which states in part that Section 120 "provides for the effective taking of portions of patented mining claims." Mr. Shearer misinterprets the scope of that letter. The issue addressed therein was whether a consent by all owners to a sub-divided portion of a mining claims was covered

DECLARATION OF
CHARLES M. GILBERT                  - 3 -

EXHIBIT 1
Page 3 of 9

by Section 120. That letter did not address whether a consent by one-owner to the taking of only his or her undivided interest in a mining claim was within the scope of Section 120. The letter of May 29, 1995, thus addressed the issue of whether consent could be given to a portion of the Doherty Lode Claim, not whether Mr. Shearer could under Section 120 consent to the taking of any fractional interest he may have held in any mining claim.

    I declare under penalty of perjury that the foregoing is correct.

    Executed this 27th day of January, 2006.

                                                Charles M. Gilbert



# United States Department of the Interior

OFFICE OF THE SOLICITOR
Alaska Region
4230 University Drive
Suite 300
Anchorage, Alaska 99508-4626

ALASKA
NOV 27 '95

FIELD OFFICE

| | Initial | Date |
|---|---|---|
| FD | | |
| DFD | | |
| RA | | |
| PA | | |
| NL | | |

YS SUPPORT OFC

| | | |
|---|---|---|
| SUPT | | |
| A | | |
| E | @ | 11/2? |
| R | | |

CY TO DESK OFF
File

AK.NPS.0667                               November 22, 1995

MEMORANDUM

To:      Field Director
         Alaska Service Center
         National Park Service

From:    Regina L. Sleater
         Attorney

Subject: Placer Mining Rights in Patented Lode Mining Claim
         Denali National Park Tract 12-120 and Tract 12-121

This is in response to your inquiry of March 8, 1995 in which certain questions are posed concerning whether there exist placer rights outstanding in property which the United States had previously acquired and, if such placer rights are outstanding, how should they be appraised. In connection with this request, we have reviewed not only the materials forwarded with the inquiry, the additional information which we requested upon initial review of the opinion request and which was received from your office on August 1, 1995, and the title materials collected for the acquisition of Tract 12-120. As a result of that review, it is our conclusion that it is unnecessary for the National Park Service to acquire the placer mining rights to the Sulphide and Water Level lode claim since those rights have been previously acquired by the United States by quit claim deed from Kantishna Mines, Ltd., dated January 31, 1991. Further, it would appear to be inappropriate for the National Park Service to expend appropriated funds to defend its title or remove any cloud on its title, through acquisition or otherwise, without first making a demand on the Stewart Title Guaranty Company under Title Insurance Policy No. 26860 PMC, since the National Park Service has paid $5,719.50 for insurance for "a fee simple estate" in the patented lode claims described in U.S. Mineral Survey 1705, which is the Sulphide and Water Level claims. The materials which Mike Mark Antony has provided to the National Park Service should be forwarded to the title company with a request that it cause the default judgment to be set aside and defend against this cloud on the United States' title or otherwise resolve this matter.

00169
Attachment A

EXHIBIT 1
Page 5 of 9

27

## DISCUSSION

The following is a chronology of the documents which relate specifically to the placer rights question:[1]

| | |
|---|---|
| January 16, 1925 | QCD from J.B. Quigley to Joseph J. Dalton for placer mining claims on Nos. five and six above Discovery "which said placer mining claims may be overlapped by Watter [sic] Level and Sulphide lode claims." Recorded July 15 or 16, 1928. |
| September 9, 1926 | Patent No. 984958 to Joseph B. Quigley for Sulphide and Water Level Claims. U.S. Mineral Survey No. 1705 (Fairbanks 01170). |
| August 16, 1933 | Option agreement between J.B. Quigley and A.D. MacRae which states that the placer mining rights in the Sulphide claim "have been transferred by optioners by previous deed." Recorded August 17, 1933, 4:30 p.m. |
| February 18, 1990 | Option Agreement between The Trust for Public Land and Kantishna Mines, Ltd., including Sulphide and Water Level patented lode claims. Recorded April 12, 1990. |
| December 26, 1990 | QCD from Trust for Public Lands to USA including Sulphide and Water Level patented lode claims as described in Patent No. 984958. <u>No exception for placer rights</u>. Recorded 91-2858, February 25, 1991, 8:30 a.m. |
| January 9, 1991 | Warranty deed from Kantishna Mines, Ltd. (Leo and Donald Mark Antony) to USA <u>which excepts Sulphide placer rights from Parcel V</u> Recorded 91-2857, February 25, 1991, 8:30 a.m. |
| January 31, 1991 | QCD from Kantishna Mines, Ltd. (Leo and Donald Mark Antony) to USA, <u>specifically includes Sulphide placer rights</u>. Recorded 91-2859, Feb.25, 1991, 8:30 a.m. |
| February 25, 1991 | Title Insurance from Stewart Title Guaranty Co. |

---

[1]The materials in the acquisition file for Tract 12-120 trace the title to the Sulphide and Water Level patent from Quigley to Kantishna Mines, Ltd. For brevity the entire title is not repeated here. It is sufficient that Quigley's interests in the patent were eventually transferred to Kantishna Mines, Ltd. and that Stewart Title insured that ownership in the United States.

00170

EXHIBIT 1  
Page 6 of 9

|              |                                                                                                                                                                                                                                |
|--------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|              | No. 26860 PMC, insuring fee title in the USA in Sulphide and Water Level patented mining claims. <u>This insurance does not contain an exception for placer rights</u>.                                                        |
| August 20, 1992 | QCD from heirs(?) of Joseph James Dalton conveying Dalton's interest in Sulphide placer rights to Mike Mark Antony. Recorded September 22, 1992. |
| May 11, 1994 | Default Judgment filed in the Superior Court for the State of Alaska, Fourth Judicial District at Fairbanks purporting to quiet title to the placer mining claims in U.S. Mineral Survey No. 1705 in Mike Mark Antony. |

A mineral survey and the issuance of a mineral patent resolves all questions of overlap between competing claimants. If a person claims an interest in the property for which patent has been applied, that claimant must appear in the patenting proceedings. If competing claimants do not appear, their interests are eliminated by the issuance of the mineral patent. See <u>Essex International, Inc.</u>, 81 I.D. 187, 191-2 (1974). A co-owner may protest the issuance of a mineral patent. See <u>Turner v. Sawyer</u>, 150 U.S. 578, 586 (1893); <u>Parsons v. Ellis</u>, 23 L.D. 504 (1896). The mineral patent has the effect of vesting the patentee with the equivalent of fee title, with the exception of superior lode claims. <u>See</u> American Law of Mining, second edition, §54.02. When Patent No. 984958 was issued to Joseph P. Quigley in 1926, he received full title to all the land described therein and any interests in others was eliminated at that time.

The January 16, 1925 quit claim deed to Joseph J. Dalton does not alter this conclusion. That deed did not convey any rights in the Sulphide and Water Level claims to Mr. Dalton. It merely noted that certain placer rights might overlap those lode claims. The problem of overlap is quite common when dealing with claim filings. That is why the rule is that the mineral patent resolves all conflicts and overlaps. The mineral survey, not the locations as filed, controls the location of the claims. Once Patent No. 984958 was issued, Mr. Dalton had no potential interest in the Sulphide and Water Level claims since there was no longer the question of potential overlap. The recording in 1928 of the 1925 deed does not have the effect of reviving a potential interest in Mr. Dalton.

The August 20, 1992 quit claim deed from the purported heirs of Joseph James Dalton of all of his interests to Mike Mark Antony conveyed no placer rights in the land described in Patent No. 984958, since Mr. Dalton had no interests in those placer rights.

The default judgment obtained by Mike Mark Antony is ineffective against the United States. Mike Mark Antony, as vice-president of

3

00171

EXHIBIT 1
Page 7 of 9

Kantishna Mines, Ltd., was aware that the United States claimed an interest in the placer rights by virtue of the January 31, 1991 deed from Kantishna Mines, Ltd. to the United States which specifically mentioned the placer rights. Yet, the United States was not personally served and joined in the quiet title action. Without review of the entire court file in that matter, it is not possible to determine if the requirements of Title 9, Chapter 45 of the Alaska Statutes have been met. It is not necessary to resolve that question because the interests of the United States can not be defaulted by the State court since it lacks jurisdiction over federal property.

While it would be possible for a landowner to separate the placer mining rights from the land and convey the placer rights to another, it does not appear that, in this case, that happened. Reference to a prior conveyance of the placer rights in the 1933 option agreement does not in itself have any effect on the ownership of the placer rights. The Alaska Recording Act, AS 40.17.080, provides protection from any unrecorded conveyance that is not of record.

Review of the title evidence prepared for the Kantishna Mines acquisition indicates that Mr. Quigley's interests under Patent No. 984958 transferred by various conveyances to Kantishna Mines, Ltd. Kantishna Mines, Ltd. and The Trust for Public Land transferred all of those interests to the United States by deeds of December 26, 1990, January 9, 1991 and January 31, 1991. Based on these deeds, and the deed from The Trust for Public Lands, the Stewart Title Guaranty Company insured the United States as having fee title to the Sulphide and Water Level patented lode claims.

## CONCLUSION

In answer to your specific questions, placer rights are part of the estate acquired under a mineral patent for a lode claim unless they are specifically excepted in the patent. Based on the materials reviewed the United States already owns the placer rights under discussion. Mike Mark Antony has provided no documentation which shows him to have an interest superior to that held by the United States.[2] Since it is not necessary that the placer rights be acquired, there is no reason, at this time, to respond to the appraisal questions, which appear to be postulated on appraising

---

[2]The opinion requests notes that an attempt was made to acquire a preliminary commitment for title insurance for the placer mining rights and the title company responded that the interest was not insurable. If it were considered necessary to research this further, a mineral title examination would be the tool utilized to trace the title to the placer rights.

00172

4

EXHIBIT 1
Page 8 of 9

the placer rights separate from the fee ownership.[3]

It is suggested that, in this case, the placer rights not be listed as a separate tract as that implies that they are not part of Tract 12-120 which has already been acquired. To change the schematic diagrams which have been provided to Molly Ross and, through her, to the Congressional delegation, it is suggested that following Tract 12-121 on the next iteration of the graph it read "acquired as part of 12-120." Later graphs could then delete mention of Tract 12-121.

cc: Chuck Gilbert, Leader
    Lands Team

---

[3]Since the appraisal questions relate specifically to the various claims being asserted by Mike Mark Antony, the answers would not be directly applicable to other situations. If there are other situations where appraisals have been ordered for placer interests separated from other ownership, please provide information specific to those situations if our opinion is necessary.

5