Paul G. Shearer
1532 Meadows Drive
Lake Oswego, OR 97034
(503) 697-4378

## UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

|  |  |
|---|---|
| PAUL G. SHEARER, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| UNITED STATES OF AMERICA, | ) |
| DIRK KEMPTHORNE, Secretary of the Interior, | ) |
| the DEPARTMENT of the INTERIOR, | ) |
| the NATIONAL PARK SERVICE. | ) |
|  | ) |
| Defendants. | ) **Case No. A03-0263 CV (JKS)** |
|  | ) **(Consolidated)** |

RECEIVED

APR 0 6 2007

CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

## SECOND AMENDED COMPLAINT

1.   This is an action seeking resolution of a controversy concerning mining claims within the

Kantishna Hills area of Denali National Park and Preserve.  Plaintiff, Paul G. Shearer, brings this

action pursuant to Public Law No. 105-83 and Mining in the Parks Act, 16 U.S.C. to recover just

compensation for mining claims and all interests in those mining claims taken by the National

Park Service, an agency of the Department of the Interior.  Alternatively Shearer seeks to quiet

title his ownership interest in all mining claims not taken by the National Park Service.

## Jurisdiction and Venue

2.  Jurisdiction for this action lies in the U.S. District Court for Alaska pursuant to Section 120 of Public Law No. 105-83. Also pursuant to the Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq. including the provision in 16 U.S.C. Section 1910 that allows a mining claimant whose property is located within a unit of the National Park System to bring a takings action against the federal government and conferred jurisdiction for such takings of mining claims in Alaska on the U.S. District Court for the District of Alaska. Also pursuant to the court's jurisdiction to quiet title pursuant to 28 U.S.C. sec. 1346(f) and 28 U.S.C. sec. 2409a.

3.  Venue is proper in the District of Alaska pursuant to Section 120 of Public Law No. 105-83. Because the property at issue is within this judicial district and a substantial part of the events giving rise to Plaintiff's claim occurred within this judicial district, venue is also appropriate under 28 U.S.C. sec. 1391(b),(e). Venue is also appropriate under the Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq., and under 28 U.S.C. sec. 1346(f) and 28 U.S.C. sec. 2409a.

## Parties

4.  Plaintiff Paul G. Shearer (referred to as "Shearer") held right, title or interest in or to certain interests in mining claims which he consented to be taken by the United States of America in that Individual Consent Declaration of Taking pursuant to Public Law No. 105-83.

5.  Defendant Dirk Kempthorne is the Secretary of the Department of the Interior. Defendant Kempthorne is responsible for administration of the mining laws, and laws and policies related to the National parks, including Denali National Park and Preserve. Plaintiff brings this action against Secretary Kempthorne in his official capacity as Secretary of the Interior.

6.  Defendant Department of the Interior is the department of the federal government that has responsibility for overseeing public lands, including the National park System, and for implementing section 120 of Public Law 105-83.

7.  Defendant National Park Service ("Park Service") is an agency of the Department of the Interior and administers the National Park System, including Denali National Park and Preserve.

8.  Defendants listed above, United States of America, Dirk Kempthorne, Department of the Interior and the National Park Service are referred to collectively as "the Government Defendants."

## Claim

9.   Plaintiff Paul G. Shearer owned right, title or interest in mining claims in the Kantishna

Mining District, located in Denali National Park and Preserve, Alaska, issued under the authority

of the 1872 Mining Law, 30 U.S.C. sec. 21 et. seq. which he consented to have taken in that

Individual Consent Declaration of Taking (hereafter "Claims"). The Claims are located within

the Denali National Park and Preserve. The Claims include, but are not limited to, the 13.6 acres

of the Doherty Lode Mining Claim (U.S.M.S. 1702). The Claims include all rights, title, and

interest in mining claims conveyed to Shearer as disclosed by deeds and assignments recorded in

the Fairbanks Recording District, Fourth Judicial District, Alaska and which Shearer holds by

any other form of conveyance and is not excluded from the consent to taking in the Individual

Consent Declaration of Taking as of February 12, 1998. The list of Claims are enumerated

below in the section titled "Mining Claims Subject to Individual Consent Declaration of Taking".

10. On October 28, 1997, Alaska's Senator Stevens, put the following statement into the

Congressional Record S11270 regarding the purpose of Section 120 of Public Law 105-83.

> "The plan envisioned by this provision addresses the unique needs of both sides of
> the debate over the future of mining at Denali National Park and Preserve. The
> American people, through the National Park Service, will receive the title to lands
> within the Denali National Park and Preserve and near its crown jewel - Mount
> McKinley. With this provision we are assured that those lands will be held for the
> benefit of all Americans. In return, the owners of mining claims who participate
> in the program will be fairly compensated for the loss of their interest that has
> been uncompensated since mining was effectively terminated in the mining
> district many years ago." Congressional Record S11270 (daily ed. October 28,
> 1997)

11. On November 14, 1997, Public Law 105-83 was signed into law. Section 120 of Public Law

105-83 provides that, if an owner of mining claims within the Kantishna Mining District

consents, all of his right, title and interest in such mining claims is vested in the United States 90

days after passage of the act, i.e. on February 12, 1998. Public Law 105-83 also permits

consenting claim owners to recover "just compensation" for the claims taken and to receive

prompt payment of the estimated just compensation of the claims taken.

12. Section 120 of Public Law No. 105-83 provides in part:

> ... that the United States shall pay just compensation to the aforesaid owners of
> any valid claim to which title has vested ...: *Provided further*, that payment shall
> be in the amount of a negotiated settlement of the value of such claim or the
> valuation of such claim awarded by judgment, ... *Provided further*, that when any
> such suit is instituted by the United States or the owner ..., the United States shall
> deposit as soon as possible in the registry of the court the estimated just
> compensation, ... that the estimated just compensation deposited in the court
> registry shall be paid forthwith to the aforesaid owners upon application to the
> court ... (Emphasis added)

13. On February 12, 1998, Plaintiff Paul G. Shearer signed an Individual Consent Declaration of

Taking which was recorded in the Fairbanks Recording District at Book 1080, Page 52-53,

pursuant to Public Law 105-83 Section 120, agreeing to consent to the taking of all right, title or

interest he held to such Claims in the Kantishna area of Denali National Park by the United

States of America, excepting from such consent to taking the parcels and access easements and

the right of way to such parcels as described in the Individual Consent Declaration of Taking.

14. On May 29, 1998, the National Park Service issued a letter to verify that a portion of a

mining claim could also be taken. The letter stated:

> "The National Park Service, in consultation with the U.S.D.O.I. Office of the
> Solicitor, is confident that section 120 of Public Law 105-83, which authorized
> takings of mining claims in the Kantishna area of Denali National Park, provides
> for the effective taking of portions of patented mining claims."

15. On May 26, 1998, Red Top Mining Company (RTMC) filed a Complaint against defendants (among others) Leo Mark-Anthony, Michael Mark-Anthony and Kantishna Mines Limited (KML) in Alaska Superior Court 4FA-98-1250 and listed as subject property some of the mining claims in which Shearer held an ownership interest. The Complaint stated that: "13. ... Paul Shearer, who is joined only for the quiet title actions." and "Count X: Quiet Title: 56. Paul Shearer is joined to this count as a possible holder of an interest in certain mining claims in Kantishna."

16. On September 13, 2000 Shearer recorded in Fairbanks Recording District Book 1216 Page 0896-0298 the Order Approving Settlement, Quitclaim Deeds and other related documents representing a partial settlement of 4FA-98-1250. This partial settlement resolved the ownership issues of the Doherty Lode Mining Claim to allow Shearer and Shearer's assignee Red Top Mining Company (RTMC) to collect payment for the portions of the Doherty claim that Shearer owned and to which he consented to be taken under Public Law 105-83, Section 120. The partial settlement also resolved the ownership issues of the Banjo and Pass mining claims sufficiently to allow Shearer to include prior claims of ownership of those mining claims in this Complaint.

17. On January 19, 2001 the National Park Service agreed to a settlement of the acquisition of the south 51% divided interest in the Doherty, a 10.57 acre tract that is a portion of the approximately 13.6 acres that Shearer consented, within the Doherty patented mining claim (U.S.M.S. 1702).

18. On June 18, 2001, the National Park Service paid Shearer for his ownership interest in the 10.57 acre tract within the Doherty patented mining claim pursuant to Public Law 105-83, Section 120, and pursuant to the two settlement agreements listed in the two previous paragraphs.

19. On November 12, 2003 when Shearer filed the original Complaint, the Government Defendants had not paid for and still owed Shearer for his ownership of the remaining portion, a 3.05 acre tract, of the Doherty patented mining claim that Shearer consented to have taken pursuant to Public Law 105-83, Section 120.

20. Section 120 authorizes Paul G. Shearer to file an action in the District Court for the District of Alaska seeking a determination of just compensation for the taking of the Claims. An action for a determination of just compensation under Section 120 of Public Law 105-83 is governed by the Declaration of Taking Act, 40 U.S.C. sec. 258 a-e, except where Section 120 provides rights inconsistent with the Declaration of Taking Act.

21. Section 120 further requires that "the United States shall deposit as soon as possible in the registry of the court the estimated just compensation, in accordance with the procedures generally described in the [Declaration of Taking Act], not otherwise inconsistent with this section." Accordingly, as soon as possible, the government must deposit in the registry of this Court the government's estimated just compensation for the Claims.

22. On April 7, 2004, pursuant to this action and the original Complaint filed by Shearer in November 12, 2003, the Government Defendants deposited in the court registry an initial payment of $107,000 plus interest, totaling $136,030.61, as initial payment toward the remaining 3.05 acre tract of the Doherty patented mining claim.

23. On June 4, 2004, by Court Order, this initial payment was disbursed to Shearer from the registry of the Court.

24. Plaintiff Shearer claims that both the just compensation and fair market value of the 3.05 acre parcel of the Doherty patented mining claim are higher than $107,000 by an amount to be determined at trial.

25. The Government Defendants have not paid for and still owe Shearer for his ownership of the remaining Claims that Shearer consented to have taken pursuant to Public Law 105-83, Section 120, and that Shearer has listed below in the section titled "Mining Claims Subject to Individual Consent Declaration of Taking" as parcels 2 through 21.

26. The Government Defendants have not deposited in the registry of this Court the government's estimated just compensation for the remaining Claims listed below in the section titled "Mining Claims Subject to Individual Consent Declaration of Taking" as parcels 2 through parcel 21.

27. Pursuant to Public Law 103-85 and the Declaration of Taking Act, 40 U.S.C. 258a, the right to just compensation has vested and Shearer is entitled to recover the value of the Claims.

28. Under the terms of the Declaration of Taking Act, 40 U.S.C. sec. 258a, 258e-1, and section 120 of Public Law 105-83, Shearer is entitled to recover from the Government Defendants just compensation for the Claims and interests from the date that the Claims were taken by the federal government.

29. The date of taking for all interest in the Claims consented to be taken by Shearer under section 120 of Public Law 105-83 was on or before February 12, 1998.

30. The Government Defendants have determined the estimated just compensation of Shearer's remaining 3.05 acre tract on Doherty patented mining claim to be $107,000 as of February 12, 1998, the date that title to this property was transferred to the United States of America pursuant

to Public Law 105-83. This 3.05 acre tract is listed below in the section titled "Mining Claims Subject to Individual Consent Declaration of Taking" as Parcel 1.

31. The Government Defendants have not yet determined an estimated just compensation for the remaining interests in the Claims that Shearer consented to be taken pursuant to Public Law 105-83 and the Declaration of Taking Act, 40 U.S.C., and listed below in the section titled "Mining Claims Subject to Individual Consent Declaration of Taking" as Parcels 2 through Parcel 21.

**(Claim continued)**
**Alaska State Court Orders and Settlements Filed After the Original Complaint**

32. On January 14, 2005, Plaintiff Paul G. Shearer and Michael R. Mark-Anthony entered into a Settlement Agreement that resolved all remaining issues that were raised or could have been raised by Mark-Anthony in 4FA-93-2045 and 4FA-98-1250 regarding the subject property which includes some of the Claims in the section below titled "Mining Claims Subject to Individual Consent Declaration of Taking". The Settlement transferred all of Mark-Anthony's rights to Parcel 2 (Galena) and Parcel 3 (Sulphide) to Shearer, and granted Shearer an Option to Purchase all of Mark-Anthony's rights to Parcels 7 (Banjo, Pass) and Parcel 8 (Banjo Mill). The Settlement also included a Release of Claims signed by Mark-Anthony with regard to the two Alaska State Court cases 4FA-93-2045 and 4FA-98-1250.

33. On February 23, 2005, (first signed date, and final signed date of March 10, 2005), Plaintiff Paul G. Shearer and Red Top Mining Company (RTMC) entered into a Settlement Agreement that resolved all remaining issues that were raised or could have been raised by Red Top Mining Company in 4FA-93-2045 and 4FA-98-1250 regarding the subject property which includes Claims in the section below titled "Mining Claims Subject to Individual Consent Declaration of

Taking". The Settlement resulted in RTMC transferring to Shearer all rights, title, or interest, if

any, in the Claims (Parcels 19, 20, and 21.) Shearer assigned to RTMC a 50% interest in the net

proceeds, distributions, or awards received by Shearer for the Claims (Parcels 19, 20, and 21.)

34. From the previous first partial settlement on September 8, 2000, the Alaska State Superior

Court filed an Order Vacating the September 12, 1996 Memorandum Decision and December 18,

1996 Decree Quieting Title.

35. On March 18, 2005, the Alaska State Superior Court filed an Order vacating the

Memorandum Opinion dated December 18, 1997 issued by Superior Court Judge Charles

Pengilly in Case No. 4FA-93-2045 Civil.

36. On March 18, 2005, the Alaska State Superior Court filed an Order granting defendant

Shearer's motion for partial summary judgment as follows:

> "IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the interest
> granted to the Optionees under that certain Option Agreement dated August 19,
> 1937, by and between Joseph B. Quigley and Fannie Quigley ("Optionors"), and
> E. Fransen and C. M. Hawkins ("Optionees"), which interest was assigned to Red
> Top Mining Company pursuant to that certain Assignment of Option dated
> October 15, 1937 (a) was an option interest and not the interest of a purchaser
> under a contract for purchase and sale; b) was not fully paid on or before
> November 23, 1979; and, (c) therefore expired no later than November 24, 1979,
> by operation of the "wait and see" Rule Against Perpetuities applicable in this
> case to the 937 Option Agreement under Hansen v. Stroecker, 699 P.2d 871
> (Alaska 1985)."

37. The settlement in paragraph 16 and resulting Orders and the recent settlements in paragraphs,

32 and 33 above, and the Orders in paragraphs 34, 35 and 36 above, resolved all remaining issues

that were brought, or could have been brought, by parties opposed to Shearer in the Alaska State

Superior Court cases 4FA-93-2045 CV and 4FA-98-1250 CV. Shearer's ownership in the

Claims is no longer being disputed by the parties in those cases and Shearer can now proceed to

recover from the Government Defendants just compensation for the Claims and interests from

the date that the Claims were taken by the federal government.

### (Claim continued)
### Mining Claims Subject to Individual Consent Declaration of Taking

38. The Court Order Approving Settlement recorded on September 13, 2000 in Fairbanks

Recording District Book 1216 Page 0896-0298 approved a partial Settlement Agreement of 4FA-

98-1250 which included a stipulation provided to avoid disputes as to what property is subject to

the Consents made by the parties pursuant to Public Law 105-83 Section 120.  The Court

approved partial Settlement Agreement stipulation states the following:

> "5. All parties represent and warrant that except for the sales contract titled
> "Contract – Doherty" recorded in the Fairbanks Recording District in Book 980
> Page 959-973 which is now being converted into this Settlement Agreement, and
> the Consents given by the parties under Section 120 of Public Law 105-83, all
> parties have not sold, assigned, transferred, conveyed or otherwise disposed of any
> of the named subject property from the date the Complaint was filed in civil case
> 4FA-93-2045 to the present.  This settlement agreement represents a compromise
> of disputed claims without an admission of liability by any of the parties.
> Therefore with regard to the final interest in the subject property, or any portion
> thereof, held by each party after executing this Settlement Agreement, in the cases
> where there are multiple predecessors recorded, all parties stipulate that each party
> has the right to identify which predecessor their title is derived from.  Therefore
> each party is free to assert where the ownership interest originated from for their
> respective property, or any portion thereof.  This stipulation is provided to avoid
> disputes as to what property is subject to the Consents."

39. On January 14, 2005 the final Settlement Agreement between Michael R. Mark-Anthony and

Plaintiff Paul G. Shearer included a similar stipulation also intended to further avoid disputes as

to what property is subject to the Consents:

> "4. Mark-Anthony represents and warrants that except for the Quitclaims and
> Assignments conveyed pursuant to the first Settlement Agreement first dated June
> 10, 2000, and the Warranty Deeds for the Mark-Anthony Subdivision Lot 1 and 2,
> which are the Warranty Deed recorded on November 8, 2000 as document number

2000-000820-0 in Book 70, Pages 1-2, in the Nenana Recording District, and the Warranty Deed recorded on July 19, 2004, in document number 2004-015506-0, in the Fairbanks Recording District, State of Alaska., and the Consents given by Mark-Anthony under Section 120 of Public Law 105-83, Mark-Anthony has not sold, assigned, transferred, conveyed or otherwise disposed of any of the named subject property in this Settlement Agreement from the date the Complaint was filed in civil case 4FA-93-2045 to the present. This settlement agreement represents a compromise of disputed claims without an admission of liability by any of the parties. Therefore with regard to the final interest in the subject property, or any portion thereof, held by each party after executing this Settlement Agreement, in the cases where there are multiple predecessors recorded, all parties stipulate that each party has the right to identify which predecessor their title is derived from. Therefore each party is free to assert where the ownership interest originated from for their respective property, or any portion thereof. This stipulation is provided to avoid disputes as to what property is subject to the Consents."

40. On February 12, 1998, Plaintiff Paul G. Shearer signed an Individual Consent Declaration of Taking pursuant to Public Law 105-83 Section 120, agreeing to consent to the taking of all right, title or interest he held to such Claims in the Kantishna area of Denali National Park by the United States of America, excepting from such consent to taking the parcels and access easements and the right of way to such parcels as specifically described in the Individual Consent Declaration of Taking. The paragraphs below enumerate, and assign a parcel number for future reference, the mining claims and interests that were consented by way of that Individual Consent Declaration of Taking.

41. Shearer consented to the taking of the following interest, referred to as Parcel 1:

**Parcel 1:**  MS 1702  Doherty Lode Claim
Interest:  Remaining ownership interest of 3.05 acres out of the original 13.62 acres consented.
NPS has already fully paid for 10.57 acres out of the 13.62 acres consented.
NPS has already paid $107,000 plus interest toward the remaining 3.05 acres.

42. Shearer owns the condemnation rights of the following interest, referred to as Parcel 2:

**Parcel 2**:  MS 1747     Galena Lode Claim
Interest:    Ownership of 3% mineral rights.
             Note: Originally consented by Michael Mark-Anthony on or before February 12, 1998, who subsequently assigned all condemnation and/or inverse condemnation rights, proceeds, distributions, and/or awards to Shearer.

43. Shearer consented to the taking of the following interest, referred to as Parcel 3:

**Parcel 3**:  MS 1705     Sulphide Lode Claim
Interest:    Ownership of placer mining rights.
             Note: Shearer consented all rights conveyed from Quigley heirs.
             Note: Originally also consented by Michael Mark-Anthony on or before February 12, 1998, who subsequently assigned all condemnation and/or inverse condemnation rights, proceeds, distributions, and/or awards to Shearer.

44. Shearer consented to the taking of the following interest, referred to as Parcel 4:

**Parcel 4**:  Lucky Gulch No. 1 Placer Claim
Interest:    (1/2 undivided interest)
             Ownership of rights, title, and interest vested in Joseph B. Quigley on or after date of 08/25/1939. Shearer consented all interest remaining, if any, conveyed from Joseph B. Quigley heirs.

45. Shearer consented to the taking of the following interest, referred to as Parcel 5:

**Parcel 5**:  Trail Lode Claim
             Four (4) Associations Placer Claims
Interest:    Ownership of rights, title, and interest, vested in Joseph B. Quigley or Fannie Quigley on or after date of 08/16/1933. Shearer consented all interest remaining, if any, conveyed from Quigley heirs.

46. Shearer consented to the taking of the following interest, referred to as Parcel 6:

**Parcel 6**:  Broken Bow "No. 1" mining claim
             Broken Bow "No. 2" mining claim
             Friday Creek Discovery Claim mining claim
Interest:    Ownership of rights, title, and interest, vested in Joseph B. Quigley or Fannie Quigley on or after date of 02/18/1965. Shearer consented all interest remaining, if any, conveyed from Quigley heirs.

47. Shearer consented to the taking of the following interest, referred to as Parcel 7:

**Parcel 7**:  FF-54240     Banjo Lode Claim

FF-54241      Pass Lode Claim

Interest:      Ownership of mining claims and all other rights associated with mining claims.
Shearer consented all interest conveyed from Quigley heirs to Shearer.
Also originally consented by RTMC on or before February 12, 1998, who
subsequently assigned all condemnation and/or inverse condemnation rights,
proceeds, distributions, and/or awards to Mark-Anthony, who subsequently
optioned them to Shearer.

48. Shearer consented to the taking of the following interest, referred to as Parcel 8:

**Parcel 8**:     FF-54240      Banjo Mill and personal property

Interest:      Ownership of Banjo Mill, structures, and personal property.
Ownership of salvage rights and all other rights associated with personal property.
Shearer consented all interest conveyed from Quigley heirs to Shearer.
Also originally consented by RTMC who subsequently assigned all condemnation
and/or inverse condemnation rights, proceeds, distributions, and/or awards to
Mark-Anthony, who subsequently optioned them to Shearer.

49. Shearer consented to the taking of the following interest, referred to as Parcel 9:

**Parcel 9**:     Fannie Quigley Cabin, summer cabin, other structures, homestead, and homestead
rights.
Interest:      Ownership of all rights, title, and interest, including salvage rights,
originally vested in Fannie Quigley on or after 04/07/1937, and conveyed from
Fannie Quigley heirs to Shearer.

50. Shearer consented to the taking of the following interest, referred to as Parcel 10:

**Parcel 10**:    Joseph B. Quigley cabins, other structures, homesteads, and homestead rights.
Interest:      Ownership of all rights, title, and interest, including salvage rights,
originally vested in Joseph B. Quigley on or after 04/07/1937, and conveyed from
Joseph B. Quigley heirs to Shearer.

51. Shearer consented to the taking of the following interest, referred to as Parcel 11:

**Parcel 11**:    MS 360      Silver King Lode Claim
MS 360      Merry Widow Lode Claim
MS 361      Jupiter-Mars Lode Claim
MS 361      Chloride Lode Claim
MS 361      Waterloo Lode Claim
MS 362      Chlorine Lode Claim

Interest:      (1/6 undivided interest)

Ownership of rights, title, and interest vested in the patentee Joseph B. Quigley on or after patent issue date of 06/06/1914 (MS 360, 361) and 04/14/1914 (MS 362), and conveyed from Quigley heirs to Shearer.

52. Shearer consented to the taking of the following interest, referred to as Parcel 12:

**Parcel 12**:    MS 1706        Friday Lode Claim
            MS 1706        Star Lode Claim
Interest:    Ownership of all rights, title, and interest vested in Joseph B. Quigley on or after patent issue date of 09/09/1926, and conveyed from Quigley heirs to Shearer.

53. Shearer consented to the taking of the following interest, referred to as Parcel 13:

**Parcel 13**:    MS 1703        Polly Wonder Lode Claim
Interest:    (1/3 undivided interest)
            Ownership of rights, title, and interest vested in Joseph B. Quigley on or after patent issue date of 10/06/1927, and conveyed from Quigley heirs to Shearer.

54. Shearer consented to the taking of the following interest, referred to as Parcel 14:

**Parcel 14**:    MS 1702        Pittsburg Lode Claim
            MS 1702        Pennsylvania Lode Claim
            MS 1702        Keystone Lode Claim
Interest:    (1/3 undivided interest)
            Consent of all interest in claim of taking without compensation for:
            Ownership of rights, title, and interest vested in Joseph B. Quigley on or after patent issue date of 09/09/1926.

55. Shearer consented to the taking of the following interest, referred to as Parcel 15:

**Parcel 15**:    Mining interests in the subject property of the Quigley 1937 Option Agreement.
Interest:    2% mineral rights held originally by Joseph B Quigley and Fannie Quigley. The taking of rights or property values in the form of income from mineral rights owned by Joseph B. Quigley and Fannie Quigley or their assignees: Government Defendants interference with mining resulted in the taking of mining income.

56. Shearer consented to the taking of the following interest, referred to as Parcel 16:

**Parcel 16**:    Mining interests in the subject property that NPS claims to have purchased from Dalton heirs and assignees.

Interest:        Ownership interest in liens, documented by Creditor's Claim in Probate No. 1014
                 State of Alaska, on subject property for the following loans that Fannie Quigley
                 made to Joseph J. Dalton, payable to Fannie Quigley, or her heirs or assignees:
                 Loan for $1,000 together with 6% interest per annum from October, 2, 1940.
                 Loan for $1,000 together with 6% interest per annum from November 3, 1941.
                 This is for NPS taking of rights or property values in the form of unpaid liens
                 owed to Fannie Quigley or her assignees on subject property that NPS claims to
                 have purchased from Dalton heirs and assignees, but for which NPS never paid
                 the liens during that purchase.

57. Shearer consented to the taking of the following interest, referred to as Parcel 17:

**Parcel 17**:   Mining interests in the subject property of the Quigley 1937 Option Agreement.
Interest:        Ownership interest of a lien on subject property for promissory note of RTMC
                 dated September 11, 1942 in the sum of $5000 plus 5% interest from date of
                 payment, payable to Robert Deacon, assignee of Joseph B. Quigley.
                 This is for NPS taking of rights or property values in the form of unpaid liens
                 owed to Joseph B. Quigley or his assignees on subject property purchased or taken
                 by NPS:

58. Shearer consented to the taking of the following interest, referred to as Parcel 18:

**Parcel 18**:   Mining interests in the subject property of the Quigley 1937 Option Agreement.
Interest:        Ownership interest of a lien on subject property for promissory note of D. R.
                 Gustafson, President of RTMC, dated May 13, 1942 in the sum of $5000 plus 6%
                 interest from May 13, 1943, (valued at $5,139.95 on November 1, 1944), payable
                 to Fannie Quigley, or her heirs or assignees.
                 This is for NPS taking of rights or property values in the form of unpaid liens
                 owed to Fannie Quigley or her assignees on subject property purchased or taken
                 by NPS:

59. Shearer consented to the taking of the following interest, referred to as Parcel 19:

**Parcel 19**:   MS 1703        Polly Wonder Lode Claim
Interest:        (1/6 undivided interest – part of the 1937 optioned 2/3 undivided interest)
                 Ownership of rights, title, and interest vested in Joseph B. Quigley on or after
                 patent issue date of 10/06/1927, and retained by Joseph B. Quigley as "Optionor".
                 Conveyed from Quigley heirs to Shearer.

60. Shearer consented to the taking of the following interest, referred to as Parcel 20:

**Parcel 20**:   MS 1702        Pittsburg Lode Claim
                 MS 1702        Pennsylvania Lode Claim

MS 1702      Keystone Lode Claim
Interest:      (1/6 undivided interest – part of the 1937 optioned 2/3 undivided interest)
Consent of all interest in claim of taking without compensation for:
Ownership of rights, title, and interest vested in Joseph B. Quigley on or after
patent issue date of 09/09/1926, and retained by Joseph B. Quigley as "Optionor".
Conveyed from Quigley heirs to Shearer.
Conveyed from Shearer at the demand of NPS for earlier taking by NPS.

61. Shearer consented to the taking of the following interest, referred to as Parcel 21:

**Parcel 21**:    Mining interests in the subject property of the Quigley 1937 Option Agreement.
Interest:      3% mineral rights held originally by RTMC.
The taking of rights or property values in the form of income from mineral rights
owned by RTMC or their assignees:
Government Defendants interference with mining resulted in the taking of mining
income.

62. Shearer reserves the right to amend this Complaint to describe in further detail the remaining

interests in the Claims that Shearer consented to have taken or to add any mining claims that may

have been missed when compiling the current list of Claims consented.

63. Shearer reserves the right to amend this Complaint to remove any Claims from the list that

the parties stipulate were not consented so that Shearer can proceed to sell those Claims at the

current fair market value, rather than recover from the Government Defendants just

compensation for the Claims and interests from the date of taking, which is February 12, 1998.

64. Shearer reserves the right to amend this Complaint to remove the Banjo and Pass mining

claims (parcels 7 and 8) from the list of Claims consented and proceed to complete the current

patent application which is in progress on those mining claims. This right is supported by the

Order Approving Settlement recorded on September 13, 2000 in Fairbanks Recording District

Book 1216 Page 0896-0298 and the other related documents representing a partial settlement of

4FA-98-1250. This right is further supported by the Settlement Agreement between Paul G.

Shearer and Michael R. Mark-Anthony first dated January 14, 2005 and other related documents

representing a final settlement of 4FA-98-1250 between these two parties.

**(Claim continued)**
**Claims of Title of Mining Claims Subject to Individual Consent Declaration of Taking**

**Claims of Title that apply to multiple parcels consented by Plaintiff Shearer:**

65. Plaintiff Shearer includes claims in paragraphs 38 and 39 here by reference.

66. The Alaska State Superior Court Order filed on March 18, 2005 ordered as follows:

> IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the interest
> granted to the Optionees under that certain Option Agreement dated August 19,
> 1937, by and between Joseph B. Quigley and Fannie Quigley ("Optionors"), and
> E. Fransen and C. M. Hawkins ("Optionees"), which interest was assigned to Red
> Top Mining Company pursuant to that certain Assignment of Option dated
> October 15, 1937 (a) was an option interest and not the interest of a purchaser
> under a contract for purchase and sale; b) was not fully paid on or before
> November 23, 1979; and, (c) therefore expired no later than November 24, 1979,
> by operation of the "wait and see" Rule Against Perpetuities applicable in this
> case to the 937 Option Agreement under <u>Hansen v. Stroecker</u>, 699 P.2d 871
> (Alaska 1985).

67. In case Kantishna Mines v. Dunkle, 4FA-79-194, the Corrected Judgment and Decree

Quieting Title filed on April 12, 1991 and recorded on April 15, 1991 in Book 698 Page 636, is a

corrective of that certain Judgment and Decree Quieting Title first recorded on March 23, 1982

in Book 252, Page 713, in the Fairbanks Recording District.

68. Red Top Mining Company (RTMC) was a known party to both the Plaintiff and Defendants

in Kantishna Mines v. Dunkle, 4FA-79-194.

69. Red Top Mining Company (RTMC), a known party, was not named or personally served or

joined in the quiet title action by the plaintiff or defendants in Kantishna Mines v. Dunkle, 4FA-

79-194, and therefore the settlement and the Corrected Judgment and Decree Quieting Title

(identified in paragraph 67 above) in that case is not binding against RTMC.

70. Joseph B. Quigley was a known party to both the Plaintiff and Defendants in Kantishna Mines v. Dunkle, 4FA-79-194.

71. Joseph B. Quigley, a known party, was not named or personally served or joined in the quiet title action by the plaintiff or defendants in Kantishna Mines v. Dunkle, 4FA-79-194, and therefore the settlement and the Corrected Judgment and Decree Quieting Title (identified in paragraph 67 above) in that case is not binding against Joseph B. Quigley.

72. The Mining Lease With Option To Purchase from RTMC (lessor) to Kantishna Mines Ltd. (lessee) dated May 28, 1969, and recorded in Book 31 Page 104 of the Fairbanks Recording District, specified as one of the terms of exercising the Option To Purchase that Kantishna Mines Ltd. would "in writing, agree to indemnify and defend lessor against claims or losses arising from the estates of Fannie and Joseph Quigley and from liens which encumber the property as of the date of this agreement upon conveyances to the corporation of the aforenamed lode claims."

73. The Warranty Deed from RTMC (grantor) to Kantishna Mines Ltd. (grantee) dated April 26, 1978, and recorded in Book 116 Page 420 of the Fairbanks Recording District, did not make any warranties with respect to any liens which encumbered the subject property as of May 28, 1969, or subsequent thereto, or with respect to the claims of the Estates of Fannie Quigley and Joseph Quigley, their heirs, devisees, successors and assigns.

74. Kantishna Mines Ltd. did not meet all of the terms of the Option To Purchase within ten (10) years after the date of that agreement and specifically did not fully indemnify and defend lessor against all claims or losses arising from the estates of Fannie and Joseph Quigley and from liens which encumber the property as of the date of that agreement with respect to all of the subject property in that agreement.

75. RTMC (Grantor) conveyed a Quitclaim to Shearer (Grantee) for all of its remaining interest, whatsoever; in the property described in the 1937 Option Agreement by the Quitclaim signed on February 23, 2005, in Instrument Number 2005-005187-0 recorded in Fairbanks Recording District.

76. RTMC also assigned, transferred and/or surrendered to Shearer all of its access rights, adverse possession rights, salvage rights, mineral rights, personal property rights, condemnation and/or inverse condemnation rights, proceeds, distributions, and/or awards, if any, for the property which it quitclaimed to Shearer pursuant to the above paragraph, by way of the document titled Clarifying and Confirming Assignment of Salvage Rights, Adverse Possession Rights, Condemnation and/or Inverse Condemnation Rights, Proceeds, Distributions, and/or Awards signed on February 23, 2005, and recorded in Instrument Number 2005-005188-0.

77. The Assignment from RTMC to Shearer described in the above paragraph assigned to Shearer any remaining proceeds, distributions, and/or awards owed to RTMC for Transfer of Property Ownership Through Consent to Legislative Taking recorded in Book 1080 Pages 040-044 in the Fairbanks Recording District, with the (Attachment A, Page 041) Individual Consent Declaration of Taking signed by William R. Satterberg, Jr., Attorney for RTMC dated February 11, 1998, and the (Attachment B, Page 042-044) letter from William R. Satterberg enumerating properties consented.

78. The Transfer of Property Ownership Through Consent to Legislative Taking recorded in Book 1080 Pages 040-044 in the Fairbanks Recording District dated July 14, 1998 and signed by Charles M. Gilbert, Chief, Land Resources Program Center, Alaska, National Park Service, (see above paragraph), contained the following language:

"In addition to the DOHERTY CLAIM, the attached consent (Attachment A)
affects several other properties enumerated in the attached letter (Attachment B).
…
Location Index: Sections 4,5,6,7, and 8, T. 16 S., R.17W., Fairbanks Meridian and
Sections 11, 12, 13, and 14, T.16S., R.18 W., Fairbanks Meridian."

79. Additional claims of title with respect to all of the consented parcels will be presented at trial.

**Claims of Title that apply to Parcel 1: (MS 1702 Doherty Lode Claim)**

80. Plaintiff Shearer's chain of title to Parcel 1 is supported by, but not limited to, previous

documents sent to Government Defendants.

81. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 1 is being provided

in response to Government Defendant's Discovery Requests and will be presented at trial.

82. Plaintiff Shearer consented Parcel 1 with the Individual Consent Declaration of Taking

recorded in Book 1080 Page 052 in the Fairbanks Recording District.

83. NPS has already fully paid Plaintiff Shearer for 10.57 acres out of the original 13.62 acres of

Parcel 1 consented.

84. NPS has already paid Plaintiff Shearer $107,000 plus interest toward the remaining 3.05

acres of Parcel 1 that Shearer consented.

**Claims of Title that apply to Parcel 2: (MS 1747 Galena Lode Claim – 3% mineral rights)**

85. Plaintiff Shearer's chain of title to Parcel 2 is supported by, but not limited to, previous

documents sent to Government Defendants.

86. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 2 is being provided

in response to Government Defendant's Discovery Requests and will be presented at trial.

87. Michael R. Mark-Anthony consented Parcel 2 with the Transfer of Property Ownership and Individual Consent Declaration of Taking recorded in document 1998-016771-0, Book 1080 Page 049 in the Fairbanks Recording District.

88. Michael R. Mark-Anthony assigned to Shearer all of his salvage rights, adverse possession rights, condemnation and/or inverse condemnation rights, proceeds, distributions, and or awards from his consent in the above paragraph with the Assignment recorded in document 2005-005185-0 in the Fairbanks Recording District.

**Claims of Title that apply to Parcel 3: (MS 1705 Sulphide placer mining rights)**

89. Plaintiff Shearer's chain of title to Parcel 3 is supported by, but not limited to, previous documents sent to Government Defendants.

90. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 3 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

91. Michael R. Mark-Anthony consented Parcel 3 with the Transfer of Property Ownership and Individual Consent Declaration of Taking recorded in document 1998-016771-0, Book 1080 Page 047 in the Fairbanks Recording District.

92. Michael R. Mark-Anthony assigned to Shearer all of his salvage rights, adverse possession rights, condemnation and/or inverse condemnation rights, proceeds, distributions, and or awards from his consent in the above paragraph with the Assignment recorded in document 2005-005185-0 in the Fairbanks Recording District.

**Claims of Title that apply to Parcel 4: (Lucky Gulch No. 1. Placer Claim)**

93. Plaintiff Shearer's chain of title to Parcel 4 is supported by, but not limited to, previous documents sent to Government Defendants.