94. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 4 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

95. Plaintiff Shearer consented Parcel 4 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

**Claims of Title that apply to Parcel 5: (Trail Lode Claim and other claims)**

96. Plaintiff Shearer's chain of title to Parcel 5 is supported by, but not limited to, previous documents sent to Government Defendants.

97. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 5 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

98. Plaintiff Shearer consented Parcel 5 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

**Claims of Title that apply to Parcel 6: (Broken Bow "No 1" and other mining claims)**

99. Plaintiff Shearer's chain of title to Parcel 6 is supported by, but not limited to, previous documents sent to Government Defendants.

100.Additional evidence to support Plaintiff Shearer's chain of title to Parcel 6 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

101.Plaintiff Shearer consented Parcel 6 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

**Claims of Title that apply to Parcel 7: (Banjo and Pass mining claims)**

102.Plaintiff Shearer's chain of title to Parcel 7 is supported by, but not limited to, previous documents sent to Government Defendants.

103.Additional evidence to support Plaintiff Shearer's chain of title to Parcel 7 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

104.Plaintiff Shearer consented Parcel 7 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

105.Red Top Mining Company (RTMC) consented Parcel 7 with the Transfer of Property Ownership and Individual Consent Declaration of Taking recorded in document 1998-016769-0, Book 1080 Page 040 in the Fairbanks Recording District.

106.Plaintiff Shearer and RTMC assigned to Michael R. Mark-Anthony all of their rights to Parcel 7 for condemnation and/or inverse condemnation rights, proceeds, and or awards from the two consents in the above paragraphs 104 and 105 with the Assignment recorded in document 2000-020413-0 in the Fairbanks Recording District.

107.Michael R. Mark-Anthony optioned to Shearer for Parcel 7 all of his rights to patent, salvage rights, adverse possession rights, condemnation and/or inverse condemnation rights, proceeds, distributions, and or awards from his interest as assignee in the Assignments in the above paragraph with the document titled: Clarifying and Confirming Assignment of Rights to Patent, Salvage Rights, Adverse Possession Rights, Condemnation and/or Inverse Condemnation Rights, Proceeds, Distributions, and/or Awards.

**Claims of Title that apply to Parcel 8:  (Banjo Mill and personal property)**

108.Plaintiff Shearer's chain of title to Parcel 8 is supported by, but not limited to, previous documents sent to Government Defendants.

109.Additional evidence to support Plaintiff Shearer's chain of title to Parcel 8 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

110. Plaintiff Shearer consented Parcel 8 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

111. Red Top Mining Company (RTMC) consented Parcel 8 with the Transfer of Property Ownership and Individual Consent Declaration of Taking recorded in document 1998-016769-0, Book 1080 Page 040 in the Fairbanks Recording District.

112. Plaintiff Shearer and RTMC assigned to Michael R. Mark-Anthony for Parcel 8 all of their condemnation and/or inverse condemnation rights, proceeds, and or awards from the two consents in the above paragraphs 110 and 111 with the Assignment recorded in document 2000-020413-0 in the Fairbanks Recording District.

113. Michael R. Mark-Anthony optioned to Shearer for Parcel 8 all of his rights to patent, salvage rights, adverse possession rights, condemnation and/or inverse condemnation rights, proceeds, distributions, and or awards from his interest as assignee in the Assignments in the above paragraph with the document titled: Clarifying and Confirming Assignment of Rights to Patent, Salvage Rights, Adverse Possession Rights, Condemnation and/or Inverse Condemnation Rights, Proceeds, Distributions, and/or Awards.

**Claims of Title that apply to Parcel 9: (Fannie Quigley Cabin and personal property)**

114. Plaintiff Shearer's chain of title to Parcel 9 is supported by, but not limited to, previous documents sent to Government Defendants.

115. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 9 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

116. Plaintiff Shearer consented Parcel 9 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

**Claims of Title that apply to Parcel 10: (Joseph B. Quigley cabins and personal property)**

117.Plaintiff Shearer's chain of title to Parcel 10 is supported by, but not limited to, previous documents sent to Government Defendants.

118.Additional evidence to support Plaintiff Shearer's chain of title to Parcel 10 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

119.Plaintiff Shearer consented Parcel 10 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

**Claims of Title that apply to Parcel 11: (MS 360, 361, 362)**

120.Plaintiff Shearer's chain of title to Parcel 11 is supported by, but not limited to, previous documents sent to Government Defendants.

121.Additional evidence to support Plaintiff Shearer's chain of title to Parcel 11 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

122.Plaintiff Shearer consented Parcel 11 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

**Claims of Title that apply to Parcel 12: (Friday and Star mining claims)**

123.Plaintiff Shearer's chain of title to Parcel 12 is supported by, but not limited to, previous documents sent to Government Defendants.

124.Additional evidence to support Plaintiff Shearer's chain of title to Parcel 12 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

125. Plaintiff Shearer consented Parcel 12 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

126. The Deed between J.B. Quigley (party of the first part) and Joseph J. Dalton (party of the second part) recorded in deed number 5340 in the former Kantishna Mining and Recording Precinct, Territory of Alaska, and now recorded in the Fairbanks Recording District, fourth Judicial District, State of Alaska, and signed on the date January 16, 1925, listed by name the following mining claims unpatented interests that existed as of the date January 16, 1925:

> "The Star lode claim …
> The Friday lode claim …
> An undivided one third (1/3) in and to the Pennsylvania lode claim, …
> An undivided one third (1/3) in and to the Pittsburg lode claim, …
> An undivided one third (1/3) in and to the Keystone lode claim, …
> An undivided one third (1/3) in and to the Polly Wonder lode claim, …
> Also all placer mining rights within the boundary lines of placer mining claims
> No. five and No. six Above Discovery, Eureka Creek, which said placer mining
> claims may be overlapped by the Water Level and Sulphide lode claims."

127. The Deed between J.B. Quigley and Joseph J. Dalton recorded in deed number 5340 (see paragraph 126 above) did not contain the word "warrant".

128. The Deed between J.B. Quigley and Joseph J. Dalton recorded in deed number 5340 (see paragraph 126 above) was not a Warranty Deed as defined by Alaska State Statute 35.15.030.

129. The Deed between J.B. Quigley and Joseph J. Dalton recorded in deed number 5340 (see paragraph 126 above) contained the words "convey" and "quit-claim".

130. The Deed between J.B. Quigley and Joseph J. Dalton recorded in deed number 5340 (see paragraph 126 above) was a Quitclaim Deed as defined by Alaska State Statute 35.15.040.

131. The patent from the United States of America to Joseph B. Quigley dated September 9, 1926 and recoded June 13, 1991 in Book 704 Page 938 in the Fairbanks Recording District, created a

patent interest in Parcel 12 as of the patent date of September 9, 1926. Said patent interest did not exist prior to the patent date of September 9, 1926.

132. The Deed between J.B. Quigley and Joseph J. Dalton recorded in deed number 5340 (see p126 above) did not convey or warrant the interest in the patented mining claims that Shearer acquired from the patentee heirs and consented as the interest in Parcels 12, 13, and 14.

**Claims of Title that apply to Parcel 13: (MS 1703 Polly Wonder lode claim 1/3 interest)**

133. Plaintiff Shearer's chain of title to Parcel 13 is supported by, but not limited to, previous documents sent to Government Defendants.

134. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 13 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

135. Plaintiff Shearer consented Parcel 13 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

136. The patent from the United States of America to Joseph B. Quigley dated October 6, 1927 created a patent interest in Parcel 13 as of the patent date of October 6, 1927. Said patent interest did not exist prior to the patent date of October 6, 1927.

137. The Deed between J.B. Quigley and Joseph J. Dalton recorded in deed number 5340 (see paragraph126 above) did not convey or warrant the interest in the patented mining claims that Shearer acquired from the patentee heirs and consented as the interest in Parcel 13.

**Claims of Title that apply to Parcel 14: (MS 1702 3 claims 1/3 interest)**

138. Plaintiff Shearer's chain of title to Parcel 14 is supported by, but not limited to, previous documents sent to Government Defendants.

139. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 14 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

140. Plaintiff Shearer consented Parcel 14 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

141. The patent from the United States of America to Joseph B. Quigley dated September 9, 1926, and recorded on April 20, 1929, in Book 2 of General Records, pages 62 through 65, Kantishna Recording District Records (now Fairbanks Recording District) created a patent interest in Parcel 14 as of the patent date of September 9, 1926. Said patent interest did not exist prior to the patent date of September 9, 1926.

142. The Deed between J.B. Quigley and Joseph J. Dalton recorded in deed number 5340 (see paragraph 126 above) did not convey or warrant the interest in the patented mining claims that Shearer acquired from the patentee heirs and consented as the interest in Parcel 14.

**Claims of Title that apply to Parcel 15: (Quigley 1937 Option property, 2% mineral rights)**

143. Plaintiff Shearer's chain of title to Parcel 15 is supported by, but not limited to, previous documents sent to Government Defendants.

144. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 15 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

145. Plaintiff Shearer consented Parcel 15 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

146.Government Defendants interference with mining resulted in the taking of mining income represented by Parcel 15.

**Claims of Title that apply to Parcel 16: (Dalton lien on taken property)**

147.Plaintiff Shearer's chain of title to Parcel 16 is supported by, but not limited to, previous documents sent to Government Defendants.

148.Additional evidence to support Plaintiff Shearer's chain of title to Parcel 16 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

149.Plaintiff Shearer consented Parcel 16 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

150.Government Defendants have failed to pay compensation for liens represented by Parcel 16 on property taken by Government Defendants.

**Claims of Title that apply to Parcel 17: (Deacon lien on taken property)**

151.Plaintiff Shearer's chain of title to Parcel 17 is supported by, but not limited to, previous documents sent to Government Defendants.

152.Additional evidence to support Plaintiff Shearer's chain of title to Parcel 17 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

153.Plaintiff Shearer consented Parcel 17 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

154.Government Defendants have failed to pay compensation for liens represented by Parcel 17 on property taken by Government Defendants.

**Claims of Title that apply to Parcel 18: (Fannie Quigley lien on taken property)**

155.Plaintiff Shearer's chain of title to Parcel 18 is supported by, but not limited to, previous documents sent to Government Defendants.

156.Additional evidence to support Plaintiff Shearer's chain of title to Parcel 18 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

157.Plaintiff Shearer consented Parcel 18 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

158.Government Defendants have failed to pay compensation for liens represented by Parcel 18 on property taken by Government Defendants.

**Claims of Title that apply to Parcel 19: (Poly Wonder mining claim 1/6 interest)**

159.Plaintiff Shearer's chain of title to Parcel 19 is supported by, but not limited to, previous documents sent to Government Defendants.

160.Additional evidence to support Plaintiff Shearer's chain of title to Parcel 19 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

161.Plaintiff Shearer consented Parcel 19 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

162.The patent from the United States of America to Joseph B. Quigley dated October 6, 1927 created a patent interest in Parcel 19 as of the patent date of October 6, 1927.  Said patent interest did not exist prior to the patent date of October 6, 1927.

163.Joseph B. Quigley optioned a 2/3 interest to W.E. Dunkle on April 6, 1937.

164.Joseph B. Quigley conveyed 1/3 out of the 2/3 interest to Fannie Quigley by the Property

Settlement dated April 7, 1937.

165.Joseph B. Quigley subsequently optioned his 1/3 out of 2/3 interest in the Option Agreement

to a Fransen and Hawkins dated August 19, 1937.

166.Joseph B. Quigley conveyed 1/6 out of this 1/3 to Don Fowler on April 7, 1944.

167.NPS knew that Joseph B. Quigley only conveyed 1/6 out of this 1/3 to Don Fowler on April

7, 1944.

168.Joseph B. Quigley retained 1/6 out of this 1/3 interest.

169.Joseph B. Quigley was known but was not a named party in the case Kantishna Mines v.

Dunkle, 4FA-79-194 and therefore was not bound by that settlement agreement that attempted to

include his retained 1/6 with the 2/3 interest included in the Decree to Quiet Title.  Defendants in

that case also knew, but did not disclose to the Court, that Joseph B. Quigley had retained 1/6

interest.

170.This 1/6 interest was conveyed from Joseph B. Quigley heirs to Shearer prior to February 12,

1998.

**Claims of Title that apply to Parcel 20: (MS 1702 3 claims 1/6 interest)**

171.Plaintiff Shearer's chain of title to Parcel 20 is supported by, but not limited to, previous

documents sent to Government Defendants.

172.Additional evidence to support Plaintiff Shearer's chain of title to Parcel 20 is being

provided in response to Government Defendant's Discovery Requests and will be presented at

trial.

173. Plaintiff Shearer consented Parcel 20 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

174. Plaintiff Shearer incorporates Parcel 14 paragraphs 141 through 142 here to also apply with respect to Parcel 20.

175. Plaintiff Shearer incorporates Parcel 19 paragraphs 162 through 170 here to also apply with respect to Parcel 20.

**Claims of Title that apply to Parcel 21: (Quigley 1937 Option property, 3% mining rights)**

176. Plaintiff Shearer's chain of title to Parcel 21 is supported by, but not limited to, previous documents sent to Government Defendants.

177. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 21 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

178. Plaintiff Shearer consented Parcel 21 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

179. Government Defendants interference with mining resulted in the taking of mining income represented by Parcel 21.

**(Claim continued)**
**Mining Claims and Access Rights Not Subject to Individual Consent Declaration of Taking**

180. Shearer did not consent any interest or forfeit any access rights to any property or access rights that he obtained after February 12, 1998, the date he signed the Individual Consent Declaration of Taking.

181.Shearer claims however that Deeds conveyed to Shearer and Assignments assigned to Shearer after the date of February 12, 1998, can be used for the purpose of quieting title to property interests that Shearer did claim to own and consent on February 12, 1998, by way of the Individual Consent Declaration of Taking.

182.Shearer did not consent any interest or forfeit any access rights to the property specifically excluded from his consent as documented in the Individual Consent Declaration of Taking. For the avoidance of doubt, those properties excluded from the consent are explicitly described in this Complaint in the next paragraphs 183 through 193.

183.Shearer did not consent any of his interest to Rainy #5 Placer Mining Claim (M.S. 2430).

184.Shearer did not consent any of his interest to Rainy #4 Placer Mining Claim (M.S. 2430).

185.Shearer did not consent any of his interest to the access rights and mining claims traversed by the ACCESS EASEMENT and RIGHT OF WAY attached as an exhibit to the Corrective Warranty Deed recorded in Book 839 Page 287-303 in the Fairbanks Recording District, Fourth Judicial District, State of Alaska. Further described as the Access Easement and Right of Way that extends from the Denali Park Road to and across Rainy#4 and Rainy#5 Placer Claims (M.S. 2430).

186.Shearer did not consent any of his interest to the divided parcel of Doherty Lode Claim (M.S. 1702) specifically described as follows:

Commencing at Corner No. 1 of Doherty Lode Claim (M.S. 1702), the point of beginning;
thence South 36 degrees 07 minutes West a distance of 11.110 chains;
thence North 53 degrees 43 minutes West a distance of 4.568 chains;
thence North 36 degrees 07 minutes East a distance of 6.666 chains;
thence North 53 degrees 43 minutes West a distance of 4.568 chains;
thence North 36 degrees 07 minutes East a distance of 4.444 chains to Corner No. 4;
thence South 53 degrees 43 minutes East a distance of 9.136 chains to Corner No. 1,

the point of beginning, containing approximately 7.1 acres, more or less.

187. Shearer did not consent any of his interest to his access to the Doherty mining claim.

Therefore Shearer did not consent his access to all of the Skyline Drive (aka Quigley Ridge

Road), such access beginning at the Denali Park Road on the Galena lode mining claim.

188. Shearer did not consent any of his rights to his access across the Galena mining claim.

189. Shearer did not consent any of his rights to his access across the Doherty mining claim.

190. Shearer did not consent any of his rights to his access across the Banjo and Pass unpatented

mining claims.

191. Shearer did not consent and has not forfeited any access rights guaranteed by the Alaska

National Interest Lands Conservation Act (ANILCA.) specifically described in, but not limited

to, the sections: VALID EXISTING RIGHTS (16 USC 3169) SEC. 1109 and SPECIAL

ACCESS AND ACCESS TO INHOLDINGS (16 USC 3170) SEC. 1110.  The excerpt of these

sections is included below for reference:

### ALASKA NATIONAL INTEREST LANDS CONSERVATION ACT

PUBLIC LAW 96-487-DEC. 2, 1980 94 STAT. 2465

VALID EXISTING RIGHTS

(16 USC 3169) SEC. 1109. Nothing in this title shall be construed to adversely affect any valid existing right of access.

SPECIAL ACCESS AND ACCESS TO INHOLDINGS

(16 USC 3170) SEC. 1110. (a) Notwithstanding any other provision of this Act or other law, the Secretary shall permit, on conservation system units, national recreation areas, and national conservation areas, and those public lands designated as wilderness study, the use of snowmachines (during periods of adequate snow cover, or frozen river conditions in the case of wild and scenic rivers), motorboats, airplanes, and nonmotorized surface transportation methods for traditional activities (where such activities are permitted by this Act or other law) and for travel to and from villages and homesites. Such use shall be subject

to reasonable regulations by the Secretary to protect the natural and other values of the conservation system units, national recreation areas, and national conservation areas, and shall not be prohibited unless, after notice and hearing in the vicinity of the affected unit or area, the Secretary finds that such use would be detrimental to the resource values of the unit or area. Nothing in this section shall be construed as prohibiting the use of other methods of transportation for such travel and activities on conservation system lands where such use is permitted by this Act or other law.

(b) Notwithstanding any other provisions of this Act or other law, in any case in which State owned or privately owned land, including subsurface rights of such owners underlying public lands, or a valid mining claim or other valid occupancy is within or is effectively surrounded by one or more conservation system units, national recreation areas, national conservation areas, or those public lands designated as wilderness study, the State or private owner or occupier shall be given by the Secretary such rights as may be necessary to assure adequate and feasible access for economic and other purposes to the concerned land by such State or private owner or occupier and their successors in interest. Such rights shall be subject to reasonable regulations issued by the Secretary to protect the natural and other values of such lands.

192. Shearer claims the right to receive the same quality and quantity of access to the property he retained in his Individual Consent Declaration of Taking as is provided to other Kantishna Inholders under the provisions of ANILCA as described above, or any other laws granting access.

193. Shearer claims the right to receive all equal rights and opportunities under the law for access to the property that he did not consent to taking.

### (Claim continued)
### Claims of Taking Involving Rights to Patented and Unpatented Mining Claims

194. With respect to consented parcels 11 through 21 that are patented mining claims or interests therein, Shearer claims certain rights as a predecessor (assignee) of the original patentee which are binding on the grantor (USA) and established in the original patents with the following language:

Second Amended Complaint
Page 36                                36

Hereby granted by the United States unto the said (patentee), the said mining premises hereinbefore described, …

TO HAVE AND TO HOLD said mining premises, together with all the rights, privileges, immunities, and appurtenances of whatsoever nature thereunto belonging, unto the said grantees above named and to their heirs and assigns forever;

195. With respect to consented parcels 11 through 21 that are patented mining claims, Shearer claims that the recorded record beginning with the date of patent will show that Shearer received a conveyed interest in the patent rights as described above which he subsequently consented to the USA on February 12, 1998.

196. With respect to consented parcels 7 and 8 (Banjo and Pass) that are unpatented mining claims in the process of being patented, the rights and interests that existed as of the date of taking, February 12, 1998, included the status of a valid Mineral Report. The United States Department of the Interior National Park Service Alaska Regional Office MINERAL REPORT, a Supplement to Mineral Patent for the Pass and Banjo Lode Mining Claims, Mineral Survey No. 2510 Alaska, had received Technical Approval by Robert C. Fink on August 14, 1995 and had received Management Acknowledgement by Lynn Griffith on August 17, 1995. The MINERAL REPORT stated the following Conclusions and Recommendations:

Conclusions
The estimated value of recoverable metals from the Pass and Banjo lode claims exceeds the estimated cost of production in 1972. It is therefore concluded that the subject claims are supported by mineral discovery at the time of withdrawal of lands from mineral entry and thereafter.

Recommendations
Having met the requirement of mineral discovery s defined by the General Mining Law of 1872, as amended, it is recommended the pass and Banjo claims are valid and qualify for issuance of mineral patent.

**(Claim continued)**
**Claims of Taking Involving National Park Service Land Acquisition Procedures**

197.Shearer's list of consented Claims include some mining claims and interests in which the

Government Defendants may claim to have taken Shearer's ownership interest on a date earlier

than February 12, 1998. The issue of the earlier date of first taking, or whether Shearer's

ownership interest continued beyond the earlier date of first taking, does not alter the final

consent which transferred all interest, if any, to the Government Defendants. For those claims

the effect of Shearer's Individual Consent Declaration of Taking was to consent all of Shearer's

rights to bring any separate action against the Government Defendants for the purpose of

receiving compensation for the earlier takings. If the Court agrees with evidence to be presented

at trial, or if the parties stipulate, that Shearer's ownership interest was still vested in Shearer

when he signed the Individual Consent Declaration of Taking, then the ownership interest

transferred on February 12, 1998, rather than any earlier date. In either case the effect of

Shearer's Individual Consent Declaration of Taking was to vest the right to just compensation

which entitles Shearer to recover the value of the Claims as of the February 12, 1998 date of

taking pursuant to Public Law 103-85 and the Declaration of Taking Act, 40 U.S.C. 258a.

198.The list of Claims that may have been affected by earlier takings will be established at trial.

199.The Government Defendants did not follow all of the National Park Service Land

Acquisition Procedures as defined by that agency with regard to the potential earlier takings of

Shearer's ownership interests in the Claims or the ownership interests of Shearer's predecessors-

in-interest. The official procedures not followed include, but are not limited, to the procedures

sighted in the following paragraphs 200 through 217.

200. On about February 7, 1994, Plaintiff contacted NPS and informed NPS that Plaintiff had received deeds and as the grantee had received an ownership interest in certain Claims.

201. Plaintiff provided copies of the recorded deeds and subsequent deeds to NPS beginning in February 1994. These deeds included, but are not limited to, the following deeds:

| Book 840 Page 012-014 | 02/07/1994 | Quitclaim Deed<br>Grantor: Robert Zoppi (Joseph Quigley devicee)<br>Grantee: Paul G. Shearer |
| Book 842 Page 261-263 | 02/24/1994 | Executrix Quitclaim Deed<br>Grantor: Shirley Jo Rogers (Joseph Quigley heir)<br>Grantee: Paul G. Shearer |

202. The deeds in the above paragraph (as well as subsequent deeds) conveyed to Plaintiff Shearer (Grantee) an ownership interest for the Claims including, but not limited to, Parcels 3 through 21.

203. NPS procedures not followed in the following paragraphs 204 through 217 apply to the Claims listed in this Complaint including, but not limited to, takings after February 1994 specifically involving, but not limited to, parcel 14 and parcel 20.

204. NPS did not obtain Preliminary Title Evidence that was in full compliance with the "Standards for the Preparation of Title Evidence in Land Acquisition by the United States" (Department of Justice Title Standards).

205. NPS did not follow standard procedures for handling Title Exceptions.

206. NPS did not follow standard procedures for conduct of negotiations.

207. NPS did not establish early contact with Plaintiff or Plaintiff's predecessors.

208.NPS did not follow the standard procedure of providing at initial contact the pamphlet entitled "Progress, Property and Just Compensation."

209.NPS did not send to Plaintiff or Plaintiff's predecessors all of the required contact notices, including but not limited to, letters of intent, letter of just compensation, final letter to owner, and Individual Offer to Sell Real Property.

210.NPS did not present to Plaintiff or attempt to obtain an Individual Offer to Sell Real Property or obtain Plaintiff's agreement to sell prior to delivering to Plaintiff a Warranty Deed and instructing Plaintiff to sign and return the Warranty Deed.

211.NPS did not prepare Warranty Deeds in compliance with the requirements as established in the "Standards for the Preparation of Title Evidence in Land Acquisitions by the United States".

212.NPS did not prepare as part of the Warranty Deed which was sent to the Plaintiff the required citation of the true consideration and the receipt thereof.

213.NPS requested Plaintiff to convey his interest, whatever it was, to the United States.

214.NPS employees, NPS agents, and others conspired to take Plaintiff's interest for the benefit of NPS without paying any compensation.

215.NPS requested Plaintiff to convey certain deeds to third parties to facilitate a final conveyance to NPS, but did pay Plaintiff compensation after Plaintiff conveyed the deeds as requested by NPS.

216.NPS and NPS agents made multiple requests for the Plaintiff to convey interests which the Plaintiff then conveyed for the benefit of NPS.  NPS knew, or should have known, that these interests were vested in the Plaintiff.  NPS did not pay Plaintiff compensation for the conveyance of these interests which were conveyed to the benefit of NPS.

217. NPS did not retain specific records in the files on land tracts purchased which the NPS knew, or should have known, might be requested during discovery in court actions involving takings cases. NPS routinely removed such evidence from their land files after a sale.

218. NPS removed, or allowed to be removed, historic "No Trespassing" signs which had been identified as physical evidence in prior Alaska State Superior Court cases and established and used to control access to private property.

219. With respect to parcel 11, NPS knew, or should have known, who the owners (patentees) were, including Shearer's predecessors, and how to contact them prior to negotiating an earlier purchase.

220. With respect to parcel 11, NPS knew, or should have known, that the party representing to be the owner in an earlier sale had not met the criteria required for Adverse Possession as was represented to and required by the Alaska State Superior Court.

221. With respect to parcel 12 and 13, NPS knew, or should have known, that the party representing to be the owner in an earlier sale did not own the patent rights granted by the USA, but only owned a quitclaim that had been conveyed before the patent rights had been granted.

222. With respect to parcel 12 and 13, NPS knew, or should have known, who the owners (patentees) were, including Shearer's predecessors, and how to contact them prior to negotiating an earlier purchase.

223. Evidence for and the accumulative damages resulting from the Government Defendants failure to follow the National Park Service Land Acquisition Procedures will be presented at trial.

## Claims for Valuation of Consented Mining Claims and Parcels 1 through 21

224. Plaintiff Shearer claims that both the just compensation and fair market value of Parcel 1, the 3.05 acre parcel of the Doherty patented mining claim, is higher than the NPS offered $107,000 (or $35,000 per acre) as of February 12, 1998, by an amount to be determined at trial.

225. Sales of land comparable to Shearer's 1998 consented parcels include the 1988 sale (10 years earlier) of USMS 4015 approximately 5 acres of real estate for North Face Lodge with a total purchase price in 1988 of $650,000 ($175,000 for buildings and improvements, and $475,000 for real estate, or 5 acres at $95,000 per acre in 1988), secured with a Deed of Trust recorded on September 30, 1987 in Book 40 Page 328 in the Nenana Recording District 414, 10 years prior to Shearer's consent.

226. Sales of land comparable to Shearer's 1998 consented parcels include the 1988 sale (10 years earlier) of USMS 2432 of approximately 2.5 acres of real estate (raw land) for over $90,000 per acre, by Warranty Deed recorded on October 19, 1988, in Book 593 Page 351 in the Fairbanks Recording District, 10 years prior to Shearer's consent.

227. Sales of land comparable to Shearer's 1998 consented parcels include the 1987 sale (10 years earlier) of USMS 2432 of approximately 1.0 acres of real estate (raw land) for $100,000 per acre, by Warranty Deed recorded on November 23, 1987, in Book 551 Page 932 in the Fairbanks Recording District, over 10 years prior to Shearer's consent.

228. Appraisals of land in the vicinity of Shearer's consented parcels show the land value of parcels in Kantishna appreciating at a rate of up to 18% per year prior to February 12, 1998, the date of Shearer's consent.

Second Amended Complaint
Page 42                                    42

229.NPS appraisals of Plaintiff Shearer's Claims have not included all appropriate prior private sales as the comparables which would result in higher valuations of the Claims.

230.NPS appraisals of Plaintiff Shearer's Claims have not adequately adjusted for features affecting land prices in the vicinity including, but not limited to, features such as road access and views of Denali (Mt. McKinley), which would result in higher valuations of the Claims.

231.The just compensation and fair market value as of February 12, 1998 for Plaintiff Shearer's consented Parcels 1 through 21 will be in an amount to be determined by the Court at trial.

### (Claim continued – Second Amended Complaint)
### Claims for Takings of one or more of the Parcels 2 through 21 pursuant to:
### "Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq."

232.Plaintiff Shearer reserves a right to appeal decisions by this Court that find any of the Parcels 2 through 21 were not subject to taking under the Public Law No. 105-83 Section 120.

233.Without forfeiting his right to appeal, Plaintiff Shearer claims that for all Parcels 2 through 21 that this Court finds were not subject to taking under the Public Law No. 105-83 Section 120, either because of an earlier date of taking or because the Parcel does not meet the definition of property that could be taken pursuant to Section 120, Shearer brings a claim of taking for all such Parcels 2 through 21 pursuant to the "Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq."

234.Plaintiff Shearer claims the Parcels 14, 15, 16, 17, 18, 20, and 21; if not taken pursuant to Law No. 105-83 Section 120, were taken pursuant to the "Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq".

**(Claim continued – Second Amended Complaint)**
<u>**Claims for Ownership and Request to Quiet Title any Parcels 2 through 21**</u>
<u>**that are found not to have been taken pursuant to Public Law No. 105-83 Section 120**</u>
<u>**("Section 120") and found not to have been taken pursuant to:**</u>
<u>**"Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq."**</u>

235.Plaintiff Shearer reserves a right to appeal decisions by this Court that find any of the Parcels

2 through 21 were not subject to taking under the Public Law No. 105-83 Section 120.

236.Without forfeiting his right to appeal, Plaintiff Shearer claims that he is the rightful owner of

all rights, title, and interest to any Parcels 2 through 21 that the court finds not to have been taken

pursuant to Section 120 and not to have been taken pursuant to the "Mining in the Parks Act, 16

U.S.C. Secs 1901, et seq."

237.Plaintiff Shearer has recorded his proof of ownership in the form of deeds, assignments,

releases, and other recordable documents in the Fairbanks Recording District, State of Alaska.

238.Plaintiff Shearer has produced the recorded documents that are the basis for his ownership

and chain of title to Parcels 2 through 21 and provided a copy of such recorded documents to the

Defendant the United States.

239.The United States has allegedly claimed an interest conflicting with Plaintiff Shearer's

interest to some of Parcels 2 through 21.

240.The United States has not produced any proof of ownership or chain of title that is superior

to Plaintiff Shearer's interest in response to Shearer's Requests for Production.

241.Plaintiff Shearer therefore is requesting the court to quiet title to Shearer all of the rights,

title, and interest to Parcels 2 through 21 that the court finds not to have been taken pursuant to

Section 120 and not to have been taken pursuant to the "Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq."

242. Plaintiff Shearer claims the Parcels 2, 3, 9, and 10; if not taken pursuant to Law No. 105-83 Section 120, and if not taken pursuant to the "Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq.", are owned by Plaintiff Shearer and requests the Court to quiet title the above Parcels to Paul G. Shearer against any and all defendants, including Defendant United States and any unknown defendants: Plaintiff Shearer requests the Court to enter a judgment declaring that the Plaintiff, to the exclusion of all other parties to this action, is the owner of these Parcels and nullifying any claim of the United States to said Parcels.

### Prayer for Recovery

Plaintiff respectfully requests that:

1. The Court enter judgment declaring that the Government Defendants are liable to Plaintiff in an amount equal to the just compensation for the taking of the 3.05 acre tract of Doherty patented mining claim as of the date of taking and award Plaintiff just compensation for the value of such property interest in an amount to be determined by the Court.

2. The Court enter judgment declaring that the Government Defendants are liable to Plaintiff in an amount equal to the just compensation for the taking of all other interests and Claims consented by the Individual Consent Declaration of Taking as of the date of taking and award Plaintiff just compensation for the loss of the property interest in an amount to be determined by the Court.

3. The Court enter judgment declaring that the Government Defendants are liable to Plaintiff in an amount equal to the just compensation for the taking of all affected interests and Claims or

other damages caused by the failure of the Government Defendants to follow the National Park Service Land Acquisition Procedures as of the date of taking and award Plaintiff just compensation for the loss of the property interest in an amount to be determined by the Court.

4.  The Court enter judgment in favor of Plaintiff and against the Government Defendants, awarding interest on the sum determined to be just compensation for the Claims from the date of taking until payment.

5.  The Court order and direct the Government Defendants to immediately proceed to determine the estimated just compensation plus interest from the date of taking to the date of deposit, for the taking of all other interests and remaining Claims listed above as parcels 2 through 21 consented by the Individual Consent Declaration of Taking pursuant to Section 120 of Public Law No. 105-83 or pursuant to the Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq.

6.  The Court order and direct the Government Defendants to deposit in the Court's Registry account the estimated just compensation plus interest from the date of taking to the date of deposit, for the consented Claims listed above as parcels 2 through 21 consistent with Section 120 of Public Law 105-83, as soon as the estimated just compensation is determined.

7.  The Court order the immediate release to Plaintiff of such funds deposited in the Court Registry.

8.  The Court order and direct the Government Defendants to reimburse the Plaintiff for all relocation expenses that are allowed by the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Public Law 91-646, as amended (42 U.S.C. 4601 et seq.).

9.  Alternatively if the government Defendants fail to perform its obligations under the law regarding any of the Claims consented by the Plaintiff, or if the Court finds that the Plaintiff

ownership interests have not been taken by the United States, then the Plaintiff requests the Court

to enter a judgment declaring that the Plaintiff, to the exclusion of all other parties to this action,

is the owner of the Claims and nullifying any claim of the United States to said Claims.

10. The Court enter judgment in favor of Plaintiff and against the Government Defendants for

Plaintiff's attorney fees and costs of this action pursuant to the Equal Access to Justice Act, 28

U.S.C. sec 2412 or any other applicable statute; and

11. The Court award Plaintiff such further relief as the Court determines to be just and equitable.

Dated April 5, 2007

Plaintiff
Paul G. Shearer
1532 Meadows Drive
Lake Oswego, OR  97034