Paul G. Shearer
1532 Meadows Drive
Lake Oswego, OR 97034
(503) 697-4378



## UNITED STATES DISTRICT COURT

### DISTRICT OF ALASKA

|  |  |
|---|---|
| PAUL G. SHEARER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| DIRK KEMPTHORNE, Secretary of the Interior, | ) |
| the DEPARTMENT of the INTERIOR, | ) |
| the NATIONAL PARK SERVICE. | ) |
| | ) |
| Defendants. | ) **Case No. A03-0263 CV (JKS)** |
| | ) **(Consolidated)** |

## SECOND AMENDED COMPLAINT

1.  This is an action seeking resolution of a controversy concerning mining claims within the

Kantishna Hills area of Denali National Park and Preserve.  Plaintiff, Paul G. Shearer, brings this

action pursuant to Public Law No. 105-83 and Mining in the Parks Act, 16 U.S.C. to recover just

compensation for mining claims and all interests in those mining claims taken by the National

Park Service, an agency of the Department of the Interior.  Alternatively Shearer seeks to quiet

title his ownership interest in all mining claims not taken by the National Park Service.

**Jurisdiction and Venue**

2.  Jurisdiction for this action lies in the U.S. District Court for Alaska pursuant to Section 120 of Public Law No. 105-83.  Also pursuant to the Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq. including the provision in 16 U.S.C. Section 1910 that allows a mining claimant whose property is located within a unit of the National Park System to bring a takings action against the federal government and conferred jurisdiction for such takings of mining claims in Alaska on the U.S. District Court for the District of Alaska.  Also pursuant to the court's jurisdiction to quiet title pursuant to 28 U.S.C. sec. 1346(f) and 28 U.S.C. sec. 2409a.

3.  Venue is proper in the District of Alaska pursuant to Section 120 of Public Law No. 105-83. Because the property at issue is within this judicial district and a substantial part of the events giving rise to Plaintiff's claim occurred within this judicial district, venue is also appropriate under 28 U.S.C. sec. 1391(b),(e).  Venue is also appropriate under the Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq., and under 28 U.S.C. sec. 1346(f) and 28 U.S.C. sec. 2409a.

**Parties**

4.  Plaintiff Paul G. Shearer (referred to as "Shearer") held right, title or interest in or to certain interests in mining claims which he consented to be taken by the United States of America in that Individual Consent Declaration of Taking pursuant to Public Law No. 105-83.

5.  Defendant Dirk Kempthorne is the Secretary of the Department of the Interior.  Defendant Kempthorne is responsible for administration of the mining laws, and laws and policies related to the National parks, including Denali National Park and Preserve.  Plaintiff brings this action against Secretary Kempthorne in his official capacity as Secretary of the Interior.

6.  Defendant Department of the Interior is the department of the federal government that has responsibility for overseeing public lands, including the National park System, and for implementing section 120 of Public Law 105-83.

7.  Defendant National Park Service ("Park Service") is an agency of the Department of the Interior and administers the National Park System, including Denali National Park and Preserve.

8.  Defendants listed above, United States of America, Dirk Kempthorne, Department of the Interior and the National Park Service are referred to collectively as "the Government Defendants."

## Claim

9.   Plaintiff Paul G. Shearer owned right, title or interest in mining claims in the Kantishna

Mining District, located in Denali National Park and Preserve, Alaska, issued under the authority

of the 1872 Mining Law, 30 U.S.C. sec. 21 et. seq. which he consented to have taken in that

Individual Consent Declaration of Taking (hereafter "Claims").  The Claims are located within

the Denali National Park and Preserve.  The Claims include, but are not limited to, the 13.6 acres

of the Doherty Lode Mining Claim (U.S.M.S. 1702).  The Claims include all rights, title, and

interest in mining claims conveyed to Shearer as disclosed by deeds and assignments recorded in

the Fairbanks Recording District, Fourth Judicial District, Alaska and which Shearer holds by

any other form of conveyance and is not excluded from the consent to taking in the Individual

Consent Declaration of Taking as of February 12, 1998.  The list of Claims are enumerated

below in the section titled "Mining Claims Subject to Individual Consent Declaration of Taking".

10. On October 28, 1997, Alaska's Senator Stevens, put the following statement into the

Congressional Record S11270 regarding the purpose of Section 120 of Public Law 105-83.

> "The plan envisioned by this provision addresses the unique needs of both sides of
> the debate over the future of mining at Denali National Park and Preserve.  The
> American people, through the National Park Service, will receive the title to lands
> within the Denali National Park and Preserve and near its crown jewel - Mount
> McKinley.  With this provision we are assured that those lands will be held for the
> benefit of all Americans.  In return, the owners of mining claims who participate
> in the program will be fairly compensated for the loss of their interest that has
> been uncompensated since mining was effectively terminated in the mining
> district many years ago."   Congressional Record S11270 (daily ed. October 28,
> 1997)

11. On November 14, 1997, Public Law 105-83 was signed into law.  Section 120 of Public Law

105-83 provides that, if an owner of mining claims within the Kantishna Mining District

consents, all of his right, title and interest in such mining claims is vested in the United States 90

days after passage of the act, i.e. on February 12, 1998.  Public Law 105-83 also permits

consenting claim owners to recover "just compensation" for the claims taken and to receive

prompt payment of the estimated just compensation of the claims taken.

12. Section 120 of Public Law No. 105-83 provides in part:

> … that the United States shall pay just compensation to the aforesaid owners of
> any valid claim to which title has vested …: *Provided further* , that payment shall
> be in the amount of a negotiated settlement of the value of such claim or the
> valuation of such claim awarded by judgment, … *Provided further*, that when any
> such suit is instituted by the United States or the owner …, the United States shall
> deposit as soon as possible in the registry of the court the estimated just
> compensation, … that the estimated just compensation deposited in the court
> registry shall be paid forthwith to the aforesaid owners upon application to the
> court … (Emphasis added)

13. On February 12, 1998, Plaintiff Paul G. Shearer signed an Individual Consent Declaration of

Taking which was recorded in the Fairbanks Recording District at Book 1080, Page 52-53,

pursuant to Public Law 105-83 Section 120, agreeing to consent to the taking of all right, title or

interest he held to such Claims in the Kantishna area of Denali National Park by the United

States of America, excepting from such consent to taking the parcels and access easements and

the right of way to such parcels as described in the Individual Consent Declaration of Taking.

14. On May 29, 1998, the National Park Service issued a letter to verify that a portion of a

mining claim could also be taken.  The letter stated:

> "The National Park Service, in consultation with the U.S.D.O.I. Office of the
> Solicitor, is confident that section 120 of Public Law 105-83, which authorized
> takings of mining claims in the Kantishna area of Denali National Park, provides
> for the effective taking of portions of patented mining claims."

15. On May 26, 1998, Red Top Mining Company (RTMC) filed a Complaint against defendants (among others) Leo Mark-Anthony, Michael Mark-Anthony and Kantishna Mines Limited (KML) in Alaska Superior Court 4FA-98-1250 and listed as subject property some of the mining claims in which Shearer held an ownership interest. The Complaint stated that: "13. ... Paul Shearer, who is joined only for the quiet title actions." and "Count X: Quiet Title: 56. Paul Shearer is joined to this count as a possible holder of an interest in certain mining claims in Kantishna."

16. On September 13, 2000 Shearer recorded in Fairbanks Recording District Book 1216 Page 0896-0298 the Order Approving Settlement, Quitclaim Deeds and other related documents representing a partial settlement of 4FA-98-1250. This partial settlement resolved the ownership issues of the Doherty Lode Mining Claim to allow Shearer and Shearer's assignee Red Top Mining Company (RTMC) to collect payment for the portions of the Doherty claim that Shearer owned and to which he consented to be taken under Public Law 105-83, Section 120. The partial settlement also resolved the ownership issues of the Banjo and Pass mining claims sufficiently to allow Shearer to include prior claims of ownership of those mining claims in this Complaint.

17. On January 19, 2001 the National Park Service agreed to a settlement of the acquisition of the south 51% divided interest in the Doherty, a 10.57 acre tract that is a portion of the approximately 13.6 acres that Shearer consented, within the Doherty patented mining claim (U.S.M.S. 1702).

18. On June 18, 2001, the National Park Service paid Shearer for his ownership interest in the 10.57 acre tract within the Doherty patented mining claim pursuant to Public Law 105-83, Section 120, and pursuant to the two settlement agreements listed in the two previous paragraphs.

19. On November 12, 2003 when Shearer filed the original Complaint, the Government

Defendants had not paid for and still owed Shearer for his ownership of the remaining portion, a

3.05 acre tract, of the Doherty patented mining claim that Shearer consented to have taken

pursuant to Public Law 105-83, Section 120.

20. Section 120 authorizes Paul G. Shearer to file an action in the District Court for the District

of Alaska seeking a determination of just compensation for the taking of the Claims. An action

for a determination of just compensation under Section 120 of Public Law 105-83 is governed by

the Declaration of Taking Act, 40 U.S.C. sec. 258 a-e, except where Section 120 provides rights

inconsistent with the Declaration of Taking Act.

21. Section 120 further requires that "the United States shall deposit as soon as possible in the

registry of the court the estimated just compensation, in accordance with the procedures generally

described in the [Declaration of Taking Act], not otherwise inconsistent with this section."

Accordingly, as soon as possible, the government must deposit in the registry of this Court the

government's estimated just compensation for the Claims.

22. On April 7, 2004, pursuant to this action and the original Complaint filed by Shearer in

November 12, 2003, the Government Defendants deposited in the court registry an initial

payment of $107,000 plus interest, totaling $136,030.61, as initial payment toward the remaining

3.05 acre tract of the Doherty patented mining claim.

23. On June 4, 2004, by Court Order, this initial payment was disbursed to Shearer from the

registry of the Court.

24. Plaintiff Shearer claims that both the just compensation and fair market value of the 3.05 acre parcel of the Doherty patented mining claim are higher than $107,000 by an amount to be determined at trial.

25. The Government Defendants have not paid for and still owe Shearer for his ownership of the remaining Claims that Shearer consented to have taken pursuant to Public Law 105-83, Section 120, and that Shearer has listed below in the section titled "Mining Claims Subject to Individual Consent Declaration of Taking" as parcels 2 through 21.

26. The Government Defendants have not deposited in the registry of this Court the government's estimated just compensation for the remaining Claims listed below in the section titled "Mining Claims Subject to Individual Consent Declaration of Taking" as parcels 2 through parcel 21.

27. Pursuant to Public Law 103-85 and the Declaration of Taking Act, 40 U.S.C. 258a, the right to just compensation has vested and Shearer is entitled to recover the value of the Claims.

28. Under the terms of the Declaration of Taking Act, 40 U.S.C. sec. 258a, 258e-1, and section 120 of Public Law 105-83, Shearer is entitled to recover from the Government Defendants just compensation for the Claims and interests from the date that the Claims were taken by the federal government.

29. The date of taking for all interest in the Claims consented to be taken by Shearer under section 120 of Public Law 105-83 was on or before February 12, 1998.

30. The Government Defendants have determined the estimated just compensation of Shearer's remaining 3.05 acre tract on Doherty patented mining claim to be $107,000 as of February 12, 1998, the date that title to this property was transferred to the United States of America pursuant

to Public Law 105-83. This 3.05 acre tract is listed below in the section titled "Mining Claims Subject to Individual Consent Declaration of Taking" as Parcel 1.

31. The Government Defendants have not yet determined an estimated just compensation for the remaining interests in the Claims that Shearer consented to be taken pursuant to Public Law 105-83 and the Declaration of Taking Act, 40 U.S.C., and listed below in the section titled "Mining Claims Subject to Individual Consent Declaration of Taking" as Parcels 2 through Parcel 21.

**(Claim continued)**
**Alaska State Court Orders and Settlements Filed After the Original Complaint**

32. On January 14, 2005, Plaintiff Paul G. Shearer and Michael R. Mark-Anthony entered into a Settlement Agreement that resolved all remaining issues that were raised or could have been raised by Mark-Anthony in 4FA-93-2045 and 4FA-98-1250 regarding the subject property which includes some of the Claims in the section below titled "Mining Claims Subject to Individual Consent Declaration of Taking". The Settlement transferred all of Mark-Anthony's rights to Parcel 2 (Galena) and Parcel 3 (Sulphide) to Shearer, and granted Shearer an Option to Purchase all of Mark-Anthony's rights to Parcels 7 (Banjo, Pass) and Parcel 8 (Banjo Mill). The Settlement also included a Release of Claims signed by Mark-Anthony with regard to the two Alaska State Court cases 4FA-93-2045 and 4FA-98-1250.

33. On February 23, 2005, (first signed date, and final signed date of March 10, 2005), Plaintiff Paul G. Shearer and Red Top Mining Company (RTMC) entered into a Settlement Agreement that resolved all remaining issues that were raised or could have been raised by Red Top Mining Company in 4FA-93-2045 and 4FA-98-1250 regarding the subject property which includes Claims in the section below titled "Mining Claims Subject to Individual Consent Declaration of

Taking". The Settlement resulted in RTMC transferring to Shearer all rights, title, or interest, if

any, in the Claims (Parcels 19, 20, and 21.) Shearer assigned to RTMC a 50% interest in the net

proceeds, distributions, or awards received by Shearer for the Claims (Parcels 19, 20, and 21.)

34. From the previous first partial settlement on September 8, 2000, the Alaska State Superior

Court filed an Order Vacating the September 12, 1996 Memorandum Decision and December 18,

1996 Decree Quieting Title.

35. On March 18, 2005, the Alaska State Superior Court filed an Order vacating the

Memorandum Opinion dated December 18, 1997 issued by Superior Court Judge Charles

Pengilly in Case No. 4FA-93-2045 Civil.

36. On March 18, 2005, the Alaska State Superior Court filed an Order granting defendant

Shearer's motion for partial summary judgment as follows:

> "IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the interest
> granted to the Optionees under that certain Option Agreement dated August 19,
> 1937, by and between Joseph B. Quigley and Fannie Quigley ("Optionors"), and
> E. Fransen and C. M. Hawkins ("Optionees"), which interest was assigned to Red
> Top Mining Company pursuant to that certain Assignment of Option dated
> October 15, 1937 (a) was an option interest and not the interest of a purchaser
> under a contract for purchase and sale; b) was not fully paid on or before
> November 23, 1979; and, (c) therefore expired no later than November 24, 1979,
> by operation of the "wait and see" Rule Against Perpetuities applicable in this
> case to the 937 Option Agreement under Hansen v. Stroecker, 699 P.2d 871
> (Alaska 1985)."

37. The settlement in paragraph 16 and resulting Orders and the recent settlements in paragraphs,

32 and 33 above, and the Orders in paragraphs 34, 35 and 36 above, resolved all remaining issues

that were brought, or could have been brought, by parties opposed to Shearer in the Alaska State

Superior Court cases 4FA-93-2045 CV and 4FA-98-1250 CV.  Shearer's ownership in the

Claims is no longer being disputed by the parties in those cases and Shearer can now proceed to

recover from the Government Defendants just compensation for the Claims and interests from

the date that the Claims were taken by the federal government.

**(Claim continued)**
**Mining Claims Subject to Individual Consent Declaration of Taking**

38. The Court Order Approving Settlement recorded on September 13, 2000 in Fairbanks

Recording District Book 1216 Page 0896-0298 approved a partial Settlement Agreement of 4FA-

98-1250 which included a stipulation provided to avoid disputes as to what property is subject to

the Consents made by the parties pursuant to Public Law 105-83 Section 120.  The Court

approved partial Settlement Agreement stipulation states the following:

> "5. All parties represent and warrant that except for the sales contract titled
> "Contract – Doherty" recorded in the Fairbanks Recording District in Book 980
> Page 959-973 which is now being converted into this Settlement Agreement, and
> the Consents given by the parties under Section 120 of Public Law 105-83, all
> parties have not sold, assigned, transferred, conveyed or otherwise disposed of any
> of the named subject property from the date the Complaint was filed in civil case
> 4FA-93-2045 to the present.  This settlement agreement represents a compromise
> of disputed claims without an admission of liability by any of the parties.
> Therefore with regard to the final interest in the subject property, or any portion
> thereof, held by each party after executing this Settlement Agreement, in the cases
> where there are multiple predecessors recorded, all parties stipulate that each party
> has the right to identify which predecessor their title is derived from.  Therefore
> each party is free to assert where the ownership interest originated from for their
> respective property, or any portion thereof.  This stipulation is provided to avoid
> disputes as to what property is subject to the Consents."

39. On January 14, 2005 the final Settlement Agreement between Michael R. Mark-Anthony and

Plaintiff Paul G. Shearer included a similar stipulation also intended to further avoid disputes as

to what property is subject to the Consents:

> "4. Mark-Anthony represents and warrants that except for the Quitclaims and
> Assignments conveyed pursuant to the first Settlement Agreement first dated June
> 10, 2000, and the Warranty Deeds for the Mark-Anthony Subdivision Lot 1 and 2,
> which are the Warranty Deed recorded on November 8, 2000 as document number

2000-000820-0 in Book 70, Pages 1-2, in the Nenana Recording District, and the Warranty Deed recorded on July 19, 2004, in document number 2004-015506-0, in the Fairbanks Recording District, State of Alaska., and the Consents given by Mark-Anthony under Section 120 of Public Law 105-83, Mark-Anthony has not sold, assigned, transferred, conveyed or otherwise disposed of any of the named subject property in this Settlement Agreement from the date the Complaint was filed in civil case 4FA-93-2045 to the present. This settlement agreement represents a compromise of disputed claims without an admission of liability by any of the parties. Therefore with regard to the final interest in the subject property, or any portion thereof, held by each party after executing this Settlement Agreement, in the cases where there are multiple predecessors recorded, all parties stipulate that each party has the right to identify which predecessor their title is derived from. Therefore each party is free to assert where the ownership interest originated from for their respective property, or any portion thereof. This stipulation is provided to avoid disputes as to what property is subject to the Consents."

40. On February 12, 1998, Plaintiff Paul G. Shearer signed an Individual Consent Declaration of Taking pursuant to Public Law 105-83 Section 120, agreeing to consent to the taking of all right, title or interest he held to such Claims in the Kantishna area of Denali National Park by the United States of America, excepting from such consent to taking the parcels and access easements and the right of way to such parcels as specifically described in the Individual Consent Declaration of Taking. The paragraphs below enumerate, and assign a parcel number for future reference, the mining claims and interests that were consented by way of that Individual Consent Declaration of Taking.

41. Shearer consented to the taking of the following interest, referred to as Parcel 1:

**Parcel 1:**   MS 1702   Doherty Lode Claim
Interest:   Remaining ownership interest of 3.05 acres out of the original 13.62 acres consented.
NPS has already fully paid for 10.57 acres out of the 13.62 acres consented.
NPS has already paid $107,000 plus interest toward the remaining 3.05 acres.

42. Shearer owns the condemnation rights of the following interest, referred to as Parcel 2:

**Parcel 2**:      MS 1747      Galena Lode Claim
Interest:      Ownership of 3% mineral rights.
               Note:  Originally consented by Michael Mark-Anthony on or before February 12,
               1998, who subsequently assigned all condemnation and/or inverse condemnation
               rights, proceeds, distributions, and/or awards to Shearer.

43. Shearer consented to the taking of the following interest, referred to as Parcel 3:

**Parcel 3**:      MS 1705      Sulphide Lode Claim
Interest:      Ownership of placer mining rights.
               Note:  Shearer consented all rights conveyed from Quigley heirs.
               Note:  Originally also consented by Michael Mark-Anthony on or before February
               12, 1998, who subsequently assigned all condemnation and/or inverse
               condemnation rights, proceeds, distributions, and/or awards to Shearer.

44. Shearer consented to the taking of the following interest, referred to as Parcel 4:

**Parcel 4**:      Lucky Gulch No. 1 Placer Claim
Interest:      (1/2 undivided interest)
               Ownership of rights, title, and interest vested in Joseph B. Quigley on or after date
               of 08/25/1939.  Shearer consented all interest remaining, if any, conveyed from
               Joseph B. Quigley heirs.

45. Shearer consented to the taking of the following interest, referred to as Parcel 5:

**Parcel 5**:      Trail Lode Claim
               Four (4) Associations Placer Claims
Interest:      Ownership of rights, title, and interest, vested in Joseph B. Quigley or Fannie
               Quigley on or after date of 08/16/1933.  Shearer consented all interest remaining,
               if any, conveyed from Quigley heirs.

46. Shearer consented to the taking of the following interest, referred to as Parcel 6:

**Parcel 6**:      Broken Bow "No. 1" mining claim
               Broken Bow "No. 2" mining claim
               Friday Creek Discovery Claim mining claim
Interest:      Ownership of rights, title, and interest, vested in Joseph B. Quigley or Fannie
               Quigley on or after date of 02/18/1965.  Shearer consented all interest remaining,
               if any, conveyed from Quigley heirs.

47. Shearer consented to the taking of the following interest, referred to as Parcel 7:

**Parcel 7**:      FF-54240      Banjo Lode Claim

FF-54241       Pass Lode Claim

Interest:       Ownership of mining claims and all other rights associated with mining claims.
Shearer consented all interest conveyed from Quigley heirs to Shearer.
Also originally consented by RTMC on or before February 12, 1998, who
subsequently assigned all condemnation and/or inverse condemnation rights,
proceeds, distributions, and/or awards to Mark-Anthony, who subsequently
optioned them to Shearer.

48. Shearer consented to the taking of the following interest, referred to as Parcel 8:

**Parcel 8**:    FF-54240       Banjo Mill and personal property

Interest:       Ownership of Banjo Mill, structures, and personal property.
Ownership of salvage rights and all other rights associated with personal property.
Shearer consented all interest conveyed from Quigley heirs to Shearer.
Also originally consented by RTMC who subsequently assigned all condemnation
and/or inverse condemnation rights, proceeds, distributions, and/or awards to
Mark-Anthony, who subsequently optioned them to Shearer.

49. Shearer consented to the taking of the following interest, referred to as Parcel 9:

**Parcel 9**:    Fannie Quigley Cabin, summer cabin, other structures, homestead, and homestead
rights.
Interest:       Ownership of all rights, title, and interest, including salvage rights,
originally vested in Fannie Quigley on or after 04/07/1937, and conveyed from
Fannie Quigley heirs to Shearer.

50. Shearer consented to the taking of the following interest, referred to as Parcel 10:

**Parcel 10**:   Joseph B. Quigley cabins, other structures, homesteads, and homestead rights.
Interest:       Ownership of all rights, title, and interest, including salvage rights,
originally vested in Joseph B. Quigley on or after 04/07/1937, and conveyed from
Joseph B. Quigley heirs to Shearer.

51. Shearer consented to the taking of the following interest, referred to as Parcel 11:

**Parcel 11**:   MS 360        Silver King Lode Claim
MS 360        Merry Widow Lode Claim
MS 361        Jupiter-Mars Lode Claim
MS 361        Chloride Lode Claim
MS 361        Waterloo Lode Claim
MS 362        Chlorine Lode Claim

Interest:       (1/6 undivided interest)

Ownership of rights, title, and interest vested in the patentee Joseph B. Quigley on or after patent issue date of 06/06/1914 (MS 360, 361) and 04/14/1914 (MS 362), and conveyed from Quigley heirs to Shearer.

52. Shearer consented to the taking of the following interest, referred to as Parcel 12:

**Parcel 12**:     MS 1706     Friday Lode Claim
           MS 1706     Star Lode Claim
Interest:     Ownership of all rights, title, and interest vested in Joseph B. Quigley on or after patent issue date of 09/09/1926, and conveyed from Quigley heirs to Shearer.

53. Shearer consented to the taking of the following interest, referred to as Parcel 13:

**Parcel 13**:     MS 1703     Polly Wonder Lode Claim
Interest:     (1/3 undivided interest)
           Ownership of rights, title, and interest vested in Joseph B. Quigley on or after patent issue date of 10/06/1927, and conveyed from Quigley heirs to Shearer.

54. Shearer consented to the taking of the following interest, referred to as Parcel 14:

**Parcel 14**:     MS 1702     Pittsburg Lode Claim
           MS 1702     Pennsylvania Lode Claim
           MS 1702     Keystone Lode Claim
Interest:     (1/3 undivided interest)
           Consent of all interest in claim of taking without compensation for:
           Ownership of rights, title, and interest vested in Joseph B. Quigley on or after patent issue date of 09/09/1926.

55. Shearer consented to the taking of the following interest, referred to as Parcel 15:

**Parcel 15**:     Mining interests in the subject property of the Quigley 1937 Option Agreement.
Interest:     2% mineral rights held originally by Joseph B Quigley and Fannie Quigley.
           The taking of rights or property values in the form of income from mineral rights owned by Joseph B. Quigley and Fannie Quigley or their assignees: Government Defendants interference with mining resulted in the taking of mining income.

56. Shearer consented to the taking of the following interest, referred to as Parcel 16:

**Parcel 16**:     Mining interests in the subject property that NPS claims to have purchased from Dalton heirs and assignees.

Interest:          Ownership interest in liens, documented by Creditor's Claim in Probate No. 1014
                   State of Alaska, on subject property for the following loans that Fannie Quigley
                   made to Joseph J. Dalton, payable to Fannie Quigley, or her heirs or assignees:
                   Loan for $1,000 together with 6% interest per annum from October, 2, 1940.
                   Loan for $1,000 together with 6% interest per annum from November 3, 1941.
                   This is for NPS taking of rights or property values in the form of unpaid liens
                   owed to Fannie Quigley or her assignees on subject property that NPS claims to
                   have purchased from Dalton heirs and assignees, but for which NPS never paid
                   the liens during that purchase.

57. Shearer consented to the taking of the following interest, referred to as Parcel 17:

**Parcel 17**:   Mining interests in the subject property of the Quigley 1937 Option Agreement.
Interest:          Ownership interest of a lien on subject property for promissory note of RTMC
                   dated September 11, 1942 in the sum of $5000 plus 5% interest from date of
                   payment, payable to Robert Deacon, assignee of Joseph B. Quigley.
                   This is for NPS taking of rights or property values in the form of unpaid liens
                   owed to Joseph B. Quigley or his assignees on subject property purchased or taken
                   by NPS:

58. Shearer consented to the taking of the following interest, referred to as Parcel 18:

**Parcel 18**:   Mining interests in the subject property of the Quigley 1937 Option Agreement.
Interest:          Ownership interest of a lien on subject property for promissory note of D. R.
                   Gustafson, President of RTMC, dated May 13, 1942 in the sum of $5000 plus 6%
                   interest from May 13, 1943, (valued at $5,139.95 on November 1, 1944), payable
                   to Fannie Quigley, or her heirs or assignees.
                   This is for NPS taking of rights or property values in the form of unpaid liens
                   owed to Fannie Quigley or her assignees on subject property purchased or taken
                   by NPS:

59. Shearer consented to the taking of the following interest, referred to as Parcel 19:

**Parcel 19**:   MS 1703        Polly Wonder Lode Claim
Interest:          (1/6 undivided interest – part of the 1937 optioned 2/3 undivided interest)
                   Ownership of rights, title, and interest vested in Joseph B. Quigley on or after
                   patent issue date of 10/06/1927, and retained by Joseph B. Quigley as "Optionor".
                   Conveyed from Quigley heirs to Shearer.

60. Shearer consented to the taking of the following interest, referred to as Parcel 20:

**Parcel 20**:   MS 1702        Pittsburg Lode Claim
                   MS 1702        Pennsylvania Lode Claim

MS 1702        Keystone Lode Claim

Interest:        (1/6 undivided interest – part of the 1937 optioned 2/3 undivided interest)
Consent of all interest in claim of taking without compensation for:
Ownership of rights, title, and interest vested in Joseph B. Quigley on or after
patent issue date of 09/09/1926, and retained by Joseph B. Quigley as "Optionor".
Conveyed from Quigley heirs to Shearer.
Conveyed from Shearer at the demand of NPS for earlier taking by NPS.

61. Shearer consented to the taking of the following interest, referred to as Parcel 21:

**Parcel 21**:    Mining interests in the subject property of the Quigley 1937 Option Agreement.
Interest:        3% mineral rights held originally by RTMC.
The taking of rights or property values in the form of income from mineral rights
owned by RTMC or their assignees:
Government Defendants interference with mining resulted in the taking of mining
income.

62. Shearer reserves the right to amend this Complaint to describe in further detail the remaining

interests in the Claims that Shearer consented to have taken or to add any mining claims that may

have been missed when compiling the current list of Claims consented.

63. Shearer reserves the right to amend this Complaint to remove any Claims from the list that

the parties stipulate were not consented so that Shearer can proceed to sell those Claims at the

current fair market value, rather than recover from the Government Defendants just

compensation for the Claims and interests from the date of taking, which is February 12, 1998.

64. Shearer reserves the right to amend this Complaint to remove the Banjo and Pass mining

claims (parcels 7 and 8) from the list of Claims consented and proceed to complete the current

patent application which is in progress on those mining claims. This right is supported by the

Order Approving Settlement recorded on September 13, 2000 in Fairbanks Recording District

Book 1216 Page 0896-0298 and the other related documents representing a partial settlement of

4FA-98-1250. This right is further supported by the Settlement Agreement between Paul G.

Shearer and Michael R. Mark-Anthony first dated January 14, 2005 and other related documents

representing a final settlement of 4FA-98-1250 between these two parties.

**(Claim continued)**
**Claims of Title of Mining Claims Subject to Individual Consent Declaration of Taking**

**Claims of Title that apply to multiple parcels consented by Plaintiff Shearer:**

65. Plaintiff Shearer includes claims in paragraphs 38 and 39 here by reference.

66. The Alaska State Superior Court Order filed on March 18, 2005 ordered as follows:

> IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the interest
> granted to the Optionees under that certain Option Agreement dated August 19,
> 1937, by and between Joseph B. Quigley and Fannie Quigley ("Optionors"), and
> E. Fransen and C. M. Hawkins ("Optionees"), which interest was assigned to Red
> Top Mining Company pursuant to that certain Assignment of Option dated
> October 15, 1937 (a) was an option interest and not the interest of a purchaser
> under a contract for purchase and sale; b) was not fully paid on or before
> November 23, 1979; and, (c) therefore expired no later than November 24, 1979,
> by operation of the "wait and see" Rule Against Perpetuities applicable in this
> case to the 937 Option Agreement under <u>Hansen v. Stroecker</u>, 699 P.2d 871
> (Alaska 1985).

67. In case Kantishna Mines v. Dunkle, 4FA-79-194, the Corrected Judgment and Decree

Quieting Title filed on April 12, 1991 and recorded on April 15, 1991 in Book 698 Page 636, is a

corrective of that certain Judgment and Decree Quieting Title first recorded on March 23, 1982

in Book 252, Page 713, in the Fairbanks Recording District.

68. Red Top Mining Company (RTMC) was a known party to both the Plaintiff and Defendants

in Kantishna Mines v. Dunkle, 4FA-79-194.

69. Red Top Mining Company (RTMC), a known party, was not named or personally served or

joined in the quiet title action by the plaintiff or defendants in Kantishna Mines v. Dunkle, 4FA-

79-194, and therefore the settlement and the Corrected Judgment and Decree Quieting Title

(identified in paragraph 67 above) in that case is not binding against RTMC.

70. Joseph B. Quigley was a known party to both the Plaintiff and Defendants in Kantishna Mines v. Dunkle, 4FA-79-194.

71. Joseph B. Quigley, a known party, was not named or personally served or joined in the quiet title action by the plaintiff or defendants in Kantishna Mines v. Dunkle, 4FA-79-194, and therefore the settlement and the Corrected Judgment and Decree Quieting Title (identified in paragraph 67 above) in that case is not binding against Joseph B. Quigley.

72. The Mining Lease With Option To Purchase from RTMC (lessor) to Kantishna Mines Ltd. (lessee) dated May 28, 1969, and recorded in Book 31 Page 104 of the Fairbanks Recording District, specified as one of the terms of exercising the Option To Purchase that Kantishna Mines Ltd. would "in writing, agree to indemnify and defend lessor against claims or losses arising from the estates of Fannie and Joseph Quigley and from liens which encumber the property as of the date of this agreement upon conveyances to the corporation of the aforenamed lode claims."

73. The Warranty Deed from RTMC (grantor) to Kantishna Mines Ltd. (grantee) dated April 26, 1978, and recorded in Book 116 Page 420 of the Fairbanks Recording District, did not make any warranties with respect to any liens which encumbered the subject property as of May 28, 1969, or subsequent thereto, or with respect to the claims of the Estates of Fannie Quigley and Joseph Quigley, their heirs, devisees, successors and assigns.

74. Kantishna Mines Ltd. did not meet all of the terms of the Option To Purchase within ten (10) years after the date of that agreement and specifically did not fully indemnify and defend lessor against all claims or losses arising from the estates of Fannie and Joseph Quigley and from liens which encumber the property as of the date of that agreement with respect to all of the subject property in that agreement.

75. RTMC (Grantor) conveyed a Quitclaim to Shearer (Grantee) for all of its remaining interest, whatsoever; in the property described in the 1937 Option Agreement by the Quitclaim signed on February 23, 2005, in Instrument Number 2005-005187-0 recorded in Fairbanks Recording District.

76. RTMC also assigned, transferred and/or surrendered to Shearer all of its access rights, adverse possession rights, salvage rights, mineral rights, personal property rights, condemnation and/or inverse condemnation rights, proceeds, distributions, and/or awards, if any, for the property which it quitclaimed to Shearer pursuant to the above paragraph, by way of the document titled Clarifying and Confirming Assignment of Salvage Rights, Adverse Possession Rights, Condemnation and/or Inverse Condemnation Rights, Proceeds, Distributions, and/or Awards signed on February 23, 2005, and recorded in Instrument Number 2005-005188-0.

77. The Assignment from RTMC to Shearer described in the above paragraph assigned to Shearer any remaining proceeds, distributions, and/or awards owed to RTMC for Transfer of Property Ownership Through Consent to Legislative Taking recorded in Book 1080 Pages 040-044 in the Fairbanks Recording District, with the (Attachment A, Page 041) Individual Consent Declaration of Taking signed by William R. Satterberg, Jr., Attorney for RTMC dated February 11, 1998, and the (Attachment B, Page 042-044) letter from William R. Satterberg enumerating properties consented.

78. The Transfer of Property Ownership Through Consent to Legislative Taking recorded in Book 1080 Pages 040-044 in the Fairbanks Recording District dated July 14, 1998 and signed by Charles M. Gilbert, Chief, Land Resources Program Center, Alaska, National Park Service, (see above paragraph), contained the following language:

"In addition to the DOHERTY CLAIM, the attached consent (Attachment A) affects several other properties enumerated in the attached letter (Attachment B). …
Location Index: Sections 4,5,6,7, and 8, T. 16 S., R.17W., Fairbanks Meridian and Sections 11, 12, 13, and 14, T.16S., R.18 W., Fairbanks Meridian."

79. Additional claims of title with respect to all of the consented parcels will be presented at trial.

**Claims of Title that apply to Parcel 1: (MS 1702 Doherty Lode Claim)**

80. Plaintiff Shearer's chain of title to Parcel 1 is supported by, but not limited to, previous documents sent to Government Defendants.

81. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 1 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

82. Plaintiff Shearer consented Parcel 1 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

83. NPS has already fully paid Plaintiff Shearer for 10.57 acres out of the original 13.62 acres of Parcel 1 consented.

84. NPS has already paid Plaintiff Shearer $107,000 plus interest toward the remaining 3.05 acres of Parcel 1 that Shearer consented.

**Claims of Title that apply to Parcel 2: (MS 1747 Galena Lode Claim – 3% mineral rights)**

85. Plaintiff Shearer's chain of title to Parcel 2 is supported by, but not limited to, previous documents sent to Government Defendants.

86. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 2 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

87. Michael R. Mark-Anthony consented Parcel 2 with the Transfer of Property Ownership and Individual Consent Declaration of Taking recorded in document 1998-016771-0, Book 1080 Page 049 in the Fairbanks Recording District.

88. Michael R. Mark-Anthony assigned to Shearer all of his salvage rights, adverse possession rights, condemnation and/or inverse condemnation rights, proceeds, distributions, and or awards from his consent in the above paragraph with the Assignment recorded in document 2005-005185-0 in the Fairbanks Recording District.

**Claims of Title that apply to Parcel 3: (MS 1705 Sulphide placer mining rights)**

89. Plaintiff Shearer's chain of title to Parcel 3 is supported by, but not limited to, previous documents sent to Government Defendants.

90. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 3 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

91. Michael R. Mark-Anthony consented Parcel 3 with the Transfer of Property Ownership and Individual Consent Declaration of Taking recorded in document 1998-016771-0, Book 1080 Page 047 in the Fairbanks Recording District.

92. Michael R. Mark-Anthony assigned to Shearer all of his salvage rights, adverse possession rights, condemnation and/or inverse condemnation rights, proceeds, distributions, and or awards from his consent in the above paragraph with the Assignment recorded in document 2005-005185-0 in the Fairbanks Recording District.

**Claims of Title that apply to Parcel 4: (Lucky Gulch No. 1. Placer Claim)**

93. Plaintiff Shearer's chain of title to Parcel 4 is supported by, but not limited to, previous documents sent to Government Defendants.

94. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 4 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

95. Plaintiff Shearer consented Parcel 4 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

**Claims of Title that apply to Parcel 5: (Trail Lode Claim and other claims)**

96. Plaintiff Shearer's chain of title to Parcel 5 is supported by, but not limited to, previous documents sent to Government Defendants.

97. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 5 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

98. Plaintiff Shearer consented Parcel 5 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

**Claims of Title that apply to Parcel 6: (Broken Bow "No 1" and other mining claims)**

99. Plaintiff Shearer's chain of title to Parcel 6 is supported by, but not limited to, previous documents sent to Government Defendants.

100.Additional evidence to support Plaintiff Shearer's chain of title to Parcel 6 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

101.Plaintiff Shearer consented Parcel 6 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

**Claims of Title that apply to Parcel 7: (Banjo and Pass mining claims)**

102.Plaintiff Shearer's chain of title to Parcel 7 is supported by, but not limited to, previous documents sent to Government Defendants.

103. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 7 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

104. Plaintiff Shearer consented Parcel 7 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

105. Red Top Mining Company (RTMC) consented Parcel 7 with the Transfer of Property Ownership and Individual Consent Declaration of Taking recorded in document 1998-016769-0, Book 1080 Page 040 in the Fairbanks Recording District.

106. Plaintiff Shearer and RTMC assigned to Michael R. Mark-Anthony all of their rights to Parcel 7 for condemnation and/or inverse condemnation rights, proceeds, and or awards from the two consents in the above paragraphs 104 and 105 with the Assignment recorded in document 2000-020413-0 in the Fairbanks Recording District.

107. Michael R. Mark-Anthony optioned to Shearer for Parcel 7 all of his rights to patent, salvage rights, adverse possession rights, condemnation and/or inverse condemnation rights, proceeds, distributions, and or awards from his interest as assignee in the Assignments in the above paragraph with the document titled: Clarifying and Confirming Assignment of Rights to Patent, Salvage Rights, Adverse Possession Rights, Condemnation and/or Inverse Condemnation Rights, Proceeds, Distributions, and/or Awards.

**Claims of Title that apply to Parcel 8: (Banjo Mill and personal property)**

108. Plaintiff Shearer's chain of title to Parcel 8 is supported by, but not limited to, previous documents sent to Government Defendants.

109. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 8 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

110. Plaintiff Shearer consented Parcel 8 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

111. Red Top Mining Company (RTMC) consented Parcel 8 with the Transfer of Property Ownership and Individual Consent Declaration of Taking recorded in document 1998-016769-0, Book 1080 Page 040 in the Fairbanks Recording District.

112. Plaintiff Shearer and RTMC assigned to Michael R. Mark-Anthony for Parcel 8 all of their condemnation and/or inverse condemnation rights, proceeds, and or awards from the two consents in the above paragraphs 110 and 111 with the Assignment recorded in document 2000-020413-0 in the Fairbanks Recording District.

113. Michael R. Mark-Anthony optioned to Shearer for Parcel 8 all of his rights to patent, salvage rights, adverse possession rights, condemnation and/or inverse condemnation rights, proceeds, distributions, and or awards from his interest as assignee in the Assignments in the above paragraph with the document titled: Clarifying and Confirming Assignment of Rights to Patent, Salvage Rights, Adverse Possession Rights, Condemnation and/or Inverse Condemnation Rights, Proceeds, Distributions, and/or Awards.

**Claims of Title that apply to Parcel 9: (Fannie Quigley Cabin and personal property)**

114. Plaintiff Shearer's chain of title to Parcel 9 is supported by, but not limited to, previous documents sent to Government Defendants.

115. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 9 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

116. Plaintiff Shearer consented Parcel 9 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

**Claims of Title that apply to Parcel 10: (Joseph B. Quigley cabins and personal property)**

117. Plaintiff Shearer's chain of title to Parcel 10 is supported by, but not limited to, previous documents sent to Government Defendants.

118. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 10 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

119. Plaintiff Shearer consented Parcel 10 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

**Claims of Title that apply to Parcel 11: (MS 360, 361, 362)**

120. Plaintiff Shearer's chain of title to Parcel 11 is supported by, but not limited to, previous documents sent to Government Defendants.

121. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 11 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

122. Plaintiff Shearer consented Parcel 11 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

**Claims of Title that apply to Parcel 12: (Friday and Star mining claims)**

123. Plaintiff Shearer's chain of title to Parcel 12 is supported by, but not limited to, previous documents sent to Government Defendants.

124. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 12 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

125.Plaintiff Shearer consented Parcel 12 with the Individual Consent Declaration of Taking

recorded in Book 1080 Page 052 in the Fairbanks Recording District.

126.The Deed between J.B. Quigley (party of the first part) and Joseph J. Dalton (party of the

second part) recorded in deed number 5340 in the former Kantishna Mining and Recording

Precinct, Territory of Alaska, and now recorded in the Fairbanks Recording District, fourth

Judicial District, State of Alaska, and signed on the date January 16, 1925, listed by name the

following mining claims unpatented interests that existed as of the date January 16, 1925:

> "The Star lode claim …
> The Friday lode claim …
> An undivided one third (1/3) in and to the Pennsylvania lode claim, …
> An undivided one third (1/3) in and to the Pittsburg lode claim, …
> An undivided one third (1/3) in and to the Keystone lode claim, …
> An undivided one third (1/3) in and to the Polly Wonder lode claim, …
> Also all placer mining rights within the boundary lines of placer mining claims
> No. five and No. six Above Discovery, Eureka Creek, which said placer mining
> claims may be overlapped by the Water Level and Sulphide lode claims."

127.The Deed between J.B. Quigley and Joseph J. Dalton recorded in deed number 5340 (see

paragraph 126 above) did not contain the word "warrant".

128.The Deed between J.B. Quigley and Joseph J. Dalton recorded in deed number 5340 (see

paragraph 126 above) was not a Warranty Deed as defined by Alaska State Statute 35.15.030.

129.The Deed between J.B. Quigley and Joseph J. Dalton recorded in deed number 5340 (see

paragraph 126 above) contained the words "convey" and "quit-claim".

130.The Deed between J.B. Quigley and Joseph J. Dalton recorded in deed number 5340 (see

paragraph 126 above) was a Quitclaim Deed as defined by Alaska State Statute 35.15.040.

131.The patent from the United States of America to Joseph B. Quigley dated September 9, 1926

and recoded June 13, 1991 in Book 704 Page 938 in the Fairbanks Recording District, created a

patent interest in Parcel 12 as of the patent date of September 9, 1926. Said patent interest did not exist prior to the patent date of September 9, 1926.

132. The Deed between J.B. Quigley and Joseph J. Dalton recorded in deed number 5340 (see p126  above) did not convey or warrant the interest in the patented mining claims that Shearer acquired from the patentee heirs and consented as the interest in Parcels 12, 13, and 14.

**Claims of Title that apply to Parcel 13: (MS 1703 Polly Wonder lode claim 1/3 interest)**

133. Plaintiff Shearer's chain of title to Parcel 13 is supported by, but not limited to, previous documents sent to Government Defendants.

134. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 13 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

135. Plaintiff Shearer consented Parcel 13 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

136. The patent from the United States of America to Joseph B. Quigley dated October 6, 1927 created a patent interest in Parcel 13 as of the patent date of October 6, 1927. Said patent interest did not exist prior to the patent date of October 6, 1927.

137. The Deed between J.B. Quigley and Joseph J. Dalton recorded in deed number 5340 (see paragraph126  above) did not convey or warrant the interest in the patented mining claims that Shearer acquired from the patentee heirs and consented as the interest in Parcel 13.

**Claims of Title that apply to Parcel 14: (MS 1702 3 claims 1/3 interest)**

138. Plaintiff Shearer's chain of title to Parcel 14 is supported by, but not limited to, previous documents sent to Government Defendants.

139.Additional evidence to support Plaintiff Shearer's chain of title to Parcel 14 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

140.Plaintiff Shearer consented Parcel 14 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

141.The patent from the United States of America to Joseph B. Quigley dated September 9, 1926, and recorded on April 20, 1929, in Book 2 of General Records, pages 62 through 65, Kantishna Recording District Records (now Fairbanks Recording District) created a patent interest in Parcel 14 as of the patent date of September 9, 1926. Said patent interest did not exist prior to the patent date of September 9, 1926.

142.The Deed between J.B. Quigley and Joseph J. Dalton recorded in deed number 5340 (see paragraph 126 above) did not convey or warrant the interest in the patented mining claims that Shearer acquired from the patentee heirs and consented as the interest in Parcel 14.

**Claims of Title that apply to Parcel 15: (Quigley 1937 Option property, 2% mineral rights)**

143.Plaintiff Shearer's chain of title to Parcel 15 is supported by, but not limited to, previous documents sent to Government Defendants.

144.Additional evidence to support Plaintiff Shearer's chain of title to Parcel 15 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

145.Plaintiff Shearer consented Parcel 15 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

146.Government Defendants interference with mining resulted in the taking of mining income represented by Parcel 15.

**Claims of Title that apply to Parcel 16: (Dalton lien on taken property)**

147.Plaintiff Shearer's chain of title to Parcel 16 is supported by, but not limited to, previous documents sent to Government Defendants.

148.Additional evidence to support Plaintiff Shearer's chain of title to Parcel 16 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

149.Plaintiff Shearer consented Parcel 16 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

150.Government Defendants have failed to pay compensation for liens represented by Parcel 16 on property taken by Government Defendants.

**Claims of Title that apply to Parcel 17: (Deacon lien on taken property)**

151.Plaintiff Shearer's chain of title to Parcel 17 is supported by, but not limited to, previous documents sent to Government Defendants.

152.Additional evidence to support Plaintiff Shearer's chain of title to Parcel 17 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

153.Plaintiff Shearer consented Parcel 17 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

154.Government Defendants have failed to pay compensation for liens represented by Parcel 17 on property taken by Government Defendants.

**Claims of Title that apply to Parcel 18: (Fannie Quigley lien on taken property)**

155. Plaintiff Shearer's chain of title to Parcel 18 is supported by, but not limited to, previous documents sent to Government Defendants.

156. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 18 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

157. Plaintiff Shearer consented Parcel 18 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

158. Government Defendants have failed to pay compensation for liens represented by Parcel 18 on property taken by Government Defendants.

**Claims of Title that apply to Parcel 19: (Poly Wonder mining claim 1/6 interest)**

159. Plaintiff Shearer's chain of title to Parcel 19 is supported by, but not limited to, previous documents sent to Government Defendants.

160. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 19 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

161. Plaintiff Shearer consented Parcel 19 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

162. The patent from the United States of America to Joseph B. Quigley dated October 6, 1927 created a patent interest in Parcel 19 as of the patent date of October 6, 1927. Said patent interest did not exist prior to the patent date of October 6, 1927.

163. Joseph B. Quigley optioned a 2/3 interest to W.E. Dunkle on April 6, 1937.

164.Joseph B. Quigley conveyed 1/3 out of the 2/3 interest to Fannie Quigley by the Property Settlement dated April 7, 1937.

165.Joseph B. Quigley subsequently optioned his 1/3 out of 2/3 interest in the Option Agreement to a Fransen and Hawkins dated August 19, 1937.

166.Joseph B. Quigley conveyed 1/6 out of this 1/3 to Don Fowler on April 7, 1944.

167.NPS knew that Joseph B. Quigley only conveyed 1/6 out of this 1/3 to Don Fowler on April 7, 1944.

168.Joseph B. Quigley retained 1/6 out of this 1/3 interest.

169.Joseph B. Quigley was known but was not a named party in the case Kantishna Mines v. Dunkle, 4FA-79-194 and therefore was not bound by that settlement agreement that attempted to include his retained 1/6 with the 2/3 interest included in the Decree to Quiet Title.  Defendants in that case also knew, but did not disclose to the Court, that Joseph B. Quigley had retained 1/6 interest.

170.This 1/6 interest was conveyed from Joseph B. Quigley heirs to Shearer prior to February 12, 1998.

**Claims of Title that apply to Parcel 20: (MS 1702 3 claims 1/6 interest)**

171.Plaintiff Shearer's chain of title to Parcel 20 is supported by, but not limited to, previous documents sent to Government Defendants.

172.Additional evidence to support Plaintiff Shearer's chain of title to Parcel 20 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

173. Plaintiff Shearer consented Parcel 20 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

174. Plaintiff Shearer incorporates Parcel 14 paragraphs 141 through 142 here to also apply with respect to Parcel 20.

175. Plaintiff Shearer incorporates Parcel 19 paragraphs 162 through 170 here to also apply with respect to Parcel 20.

**Claims of Title that apply to Parcel 21: (Quigley 1937 Option property, 3% mining rights)**

176. Plaintiff Shearer's chain of title to Parcel 21 is supported by, but not limited to, previous documents sent to Government Defendants.

177. Additional evidence to support Plaintiff Shearer's chain of title to Parcel 21 is being provided in response to Government Defendant's Discovery Requests and will be presented at trial.

178. Plaintiff Shearer consented Parcel 21 with the Individual Consent Declaration of Taking recorded in Book 1080 Page 052 in the Fairbanks Recording District.

179. Government Defendants interference with mining resulted in the taking of mining income represented by Parcel 21.

**(Claim continued)**
**Mining Claims and Access Rights Not Subject to Individual Consent Declaration of Taking**

180. Shearer did not consent any interest or forfeit any access rights to any property or access rights that he obtained after February 12, 1998, the date he signed the Individual Consent Declaration of Taking.

181. Shearer claims however that Deeds conveyed to Shearer and Assignments assigned to Shearer after the date of February 12, 1998, can be used for the purpose of quieting title to property interests that Shearer did claim to own and consent on February 12, 1998, by way of the Individual Consent Declaration of Taking.

182. Shearer did not consent any interest or forfeit any access rights to the property specifically excluded from his consent as documented in the Individual Consent Declaration of Taking. For the avoidance of doubt, those properties excluded from the consent are explicitly described in this Complaint in the next paragraphs 183 through 193.

183. Shearer did not consent any of his interest to Rainy #5 Placer Mining Claim (M.S. 2430).

184. Shearer did not consent any of his interest to Rainy #4 Placer Mining Claim (M.S. 2430).

185. Shearer did not consent any of his interest to the access rights and mining claims traversed by the ACCESS EASEMENT and RIGHT OF WAY attached as an exhibit to the Corrective Warranty Deed recorded in Book 839 Page 287-303 in the Fairbanks Recording District, Fourth Judicial District, State of Alaska. Further described as the Access Easement and Right of Way that extends from the Denali Park Road to and across Rainy#4 and Rainy#5 Placer Claims (M.S. 2430).

186. Shearer did not consent any of his interest to the divided parcel of Doherty Lode Claim (M.S. 1702) specifically described as follows:

> Commencing at Corner No. 1 of Doherty Lode Claim (M.S. 1702), the point of beginning;
> thence South 36 degrees 07 minutes West a distance of 11.110 chains;
> thence North 53 degrees 43 minutes West a distance of 4.568 chains;
> thence North 36 degrees 07 minutes East a distance of 6.666 chains;
> thence North 53 degrees 43 minutes West a distance of 4.568 chains;
> thence North 36 degrees 07 minutes East a distance of 4.444 chains to Corner No. 4;
> thence South 53 degrees 43 minutes East a distance of 9.136 chains to Corner No. 1,

the point of beginning, containing approximately 7.1 acres, more or less.

187.Shearer did not consent any of his interest to his access to the Doherty mining claim. Therefore Shearer did not consent his access to all of the Skyline Drive (aka Quigley Ridge Road), such access beginning at the Denali Park Road on the Galena lode mining claim.

188.Shearer did not consent any of his rights to his access across the Galena mining claim.

189.Shearer did not consent any of his rights to his access across the Doherty mining claim.

190.Shearer did not consent any of his rights to his access across the Banjo and Pass unpatented mining claims.

191.Shearer did not consent and has not forfeited any access rights guaranteed by the Alaska National Interest Lands Conservation Act (ANILCA.) specifically described in, but not limited to, the sections: VALID EXISTING RIGHTS (16 USC 3169) SEC. 1109 and SPECIAL ACCESS AND ACCESS TO INHOLDINGS (16 USC 3170) SEC. 1110.  The excerpt of these sections is included below for reference:

### ALASKA NATIONAL INTEREST LANDS CONSERVATION ACT

PUBLIC LAW 96-487-DEC. 2, 1980 94 STAT. 2465

VALID EXISTING RIGHTS

(16 USC 3169) SEC. 1109. Nothing in this title shall be construed to adversely affect any valid existing right of access.

SPECIAL ACCESS AND ACCESS TO INHOLDINGS

(16 USC 3170) SEC. 1110. (a) Notwithstanding any other provision of this Act or other law, the Secretary shall permit, on conservation system units, national recreation areas, and national conservation areas, and those public lands designated as wilderness study, the use of snowmachines (during periods of adequate snow cover, or frozen river conditions in the case of wild and scenic rivers), motorboats, airplanes, and nonmotorized surface transportation methods for traditional activities (where such activities are permitted by this Act or other law) and for travel to and from villages and homesites. Such use shall be subject

to reasonable regulations by the Secretary to protect the natural and other values of the conservation system units, national recreation areas, and national conservation areas, and shall not be prohibited unless, after notice and hearing in the vicinity of the affected unit or area, the Secretary finds that such use would be detrimental to the resource values of the unit or area. Nothing in this section shall be construed as prohibiting the use of other methods of transportation for such travel and activities on conservation system lands where such use is permitted by this Act or other law.

(b) Notwithstanding any other provisions of this Act or other law, in any case in which State owned or privately owned land, including subsurface rights of such owners underlying public lands, or a valid mining claim or other valid occupancy is within or is effectively surrounded by one or more conservation system units, national recreation areas, national conservation areas, or those public lands designated as wilderness study, the State or private owner or occupier shall be given by the Secretary such rights as may be necessary to assure adequate and feasible access for economic and other purposes to the concerned land by such State or private owner or occupier and their successors in interest. Such rights shall be subject to reasonable regulations issued by the Secretary to protect the natural and other values of such lands.

192. Shearer claims the right to receive the same quality and quantity of access to the property he retained in his Individual Consent Declaration of Taking as is provided to other Kantishna Inholders under the provisions of ANILCA as described above, or any other laws granting access.

193. Shearer claims the right to receive all equal rights and opportunities under the law for access to the property that he did not consent to taking.

### (Claim continued)
### Claims of Taking Involving Rights to Patented and Unpatented Mining Claims

194. With respect to consented parcels 11 through 21 that are patented mining claims or interests therein, Shearer claims certain rights as a predecessor (assignee) of the original patentee which are binding on the grantor (USA) and established in the original patents with the following language:

> Hereby granted by the United States unto the said (patentee), the said mining
> premises hereinbefore described, …
> TO HAVE AND TO HOLD said mining premises, together with all the rights,
> privileges, immunities, and appurtenances of whatsoever nature thereunto
> belonging, unto the said grantees above named and to their heirs and assigns
> forever;

195. With respect to consented parcels 11 through 21 that are patented mining claims, Shearer

claims that the recorded record beginning with the date of patent will show that Shearer received

a conveyed interest in the patent rights as described above which he subsequently consented to

the USA on February 12, 1998.

196. With respect to consented parcels 7 and 8 (Banjo and Pass) that are unpatented mining

claims in the process of being patented, the rights and interests that existed as of the date of

taking, February 12, 1998, included the status of a valid Mineral Report. The United States

Department of the Interior National Park Service Alaska Regional Office MINERAL REPORT, a

Supplement to Mineral Patent for the Pass and Banjo Lode Mining Claims, Mineral Survey No.

2510 Alaska, had received Technical Approval by Robert C. Fink on August 14, 1995 and had

received Management Acknowledgement by Lynn Griffith on August 17, 1995. The MINERAL

REPORT stated the following Conclusions and Recommendations:

> Conclusions
> The estimated value of recoverable metals from the Pass and Banjo lode claims
> exceeds the estimated cost of production in 1972. It is therefore concluded that
> the subject claims are supported by mineral discovery at the time of withdrawal of
> lands from mineral entry and thereafter.

> Recommendations
> Having met the requirement of mineral discovery s defined by the General Mining
> Law of 1872, as amended, it is recommended the pass and Banjo claims are valid
> and qualify for issuance of mineral patent.

**(Claim continued)**
**Claims of Taking Involving National Park Service Land Acquisition Procedures**

197. Shearer's list of consented Claims include some mining claims and interests in which the Government Defendants may claim to have taken Shearer's ownership interest on a date earlier than February 12, 1998. The issue of the earlier date of first taking, or whether Shearer's ownership interest continued beyond the earlier date of first taking, does not alter the final consent which transferred all interest, if any, to the Government Defendants. For those claims the effect of Shearer's Individual Consent Declaration of Taking was to consent all of Shearer's rights to bring any separate action against the Government Defendants for the purpose of receiving compensation for the earlier takings. If the Court agrees with evidence to be presented at trial, or if the parties stipulate, that Shearer's ownership interest was still vested in Shearer when he signed the Individual Consent Declaration of Taking, then the ownership interest transferred on February 12, 1998, rather than any earlier date. In either case the effect of Shearer's Individual Consent Declaration of Taking was to vest the right to just compensation which entitles Shearer to recover the value of the Claims as of the February 12, 1998 date of taking pursuant to Public Law 103-85 and the Declaration of Taking Act, 40 U.S.C. 258a.

198. The list of Claims that may have been affected by earlier takings will be established at trial.

199. The Government Defendants did not follow all of the National Park Service Land Acquisition Procedures as defined by that agency with regard to the potential earlier takings of Shearer's ownership interests in the Claims or the ownership interests of Shearer's predecessors-in-interest. The official procedures not followed include, but are not limited, to the procedures sighted in the following paragraphs 200 through 217.

200.On about February 7, 1994, Plaintiff contacted NPS and informed NPS that Plaintiff had received deeds and as the grantee had received an ownership interest in certain Claims.

201.Plaintiff provided copies of the recorded deeds and subsequent deeds to NPS beginning in February 1994. These deeds included, but are not limited to, the following deeds:

| Book 840 Page 012-014 | 02/07/1994 | Quitclaim Deed<br>Grantor: Robert Zoppi (Joseph Quigley devicee)<br>Grantee: Paul G. Shearer |
| Book 842 Page 261-263 | 02/24/1994 | Executrix Quitclaim Deed<br>Grantor: Shirley Jo Rogers (Joseph Quigley heir)<br>Grantee: Paul G. Shearer |

202.The deeds in the above paragraph (as well as subsequent deeds) conveyed to Plaintiff Shearer (Grantee) an ownership interest for the Claims including, but not limited to, Parcels 3 through 21.

203.NPS procedures not followed in the following paragraphs 204 through 217 apply to the Claims listed in this Complaint including, but not limited to, takings after February 1994 specifically involving, but not limited to, parcel 14 and parcel 20.

204.NPS did not obtain Preliminary Title Evidence that was in full compliance with the "Standards for the Preparation of Title Evidence in Land Acquisition by the United States" (Department of Justice Title Standards).

205.NPS did not follow standard procedures for handling Title Exceptions.

206.NPS did not follow standard procedures for conduct of negotiations.

207.NPS did not establish early contact with Plaintiff or Plaintiff's predecessors.

208. NPS did not follow the standard procedure of providing at initial contact the pamphlet entitled "Progress, Property and Just Compensation."

209. NPS did not send to Plaintiff or Plaintiff's predecessors all of the required contact notices, including but not limited to, letters of intent, letter of just compensation, final letter to owner, and Individual Offer to Sell Real Property.

210. NPS did not present to Plaintiff or attempt to obtain an Individual Offer to Sell Real Property or obtain Plaintiff's agreement to sell prior to delivering to Plaintiff a Warranty Deed and instructing Plaintiff to sign and return the Warranty Deed.

211. NPS did not prepare Warranty Deeds in compliance with the requirements as established in the "Standards for the Preparation of Title Evidence in Land Acquisitions by the United States".

212. NPS did not prepare as part of the Warranty Deed which was sent to the Plaintiff the required citation of the true consideration and the receipt thereof.

213. NPS requested Plaintiff to convey his interest, whatever it was, to the United States.

214. NPS employees, NPS agents, and others conspired to take Plaintiff's interest for the benefit of NPS without paying any compensation.

215. NPS requested Plaintiff to convey certain deeds to third parties to facilitate a final conveyance to NPS, but did pay Plaintiff compensation after Plaintiff conveyed the deeds as requested by NPS.

216. NPS and NPS agents made multiple requests for the Plaintiff to convey interests which the Plaintiff then conveyed for the benefit of NPS. NPS knew, or should have known, that these interests were vested in the Plaintiff. NPS did not pay Plaintiff compensation for the conveyance of these interests which were conveyed to the benefit of NPS.

217.NPS did not retain specific records in the files on land tracts purchased which the NPS knew, or should have known, might be requested during discovery in court actions involving takings cases.  NPS routinely removed such evidence from their land files after a sale.

218.NPS removed, or allowed to be removed, historic "No Trespassing" signs which had been identified as physical evidence in prior Alaska State Superior Court cases and established and used to control access to private property.

219.With respect to parcel 11, NPS knew, or should have known, who the owners (patentees) were, including Shearer's predecessors, and how to contact them prior to negotiating an earlier purchase.

220.With respect to parcel 11, NPS knew, or should have known, that the party representing to be the owner in an earlier sale had not met the criteria required for Adverse Possession as was represented to and required by the Alaska State Superior Court.

221.With respect to parcel 12 and 13, NPS knew, or should have known, that the party representing to be the owner in an earlier sale did not own the patent rights granted by the USA, but only owned a quitclaim that had been conveyed before the patent rights had been granted.

222.With respect to parcel 12 and 13, NPS knew, or should have known, who the owners (patentees) were, including Shearer's predecessors, and how to contact them prior to negotiating an earlier purchase.

223.Evidence for and the accumulative damages resulting from the Government Defendants failure to follow the National Park Service Land Acquisition Procedures will be presented at trial.

**Claims for Valuation of Consented Mining Claims and Parcels 1 through 21**

224. Plaintiff Shearer claims that both the just compensation and fair market value of Parcel 1, the 3.05 acre parcel of the Doherty patented mining claim, is higher than the NPS offered $107,000 (or $35,000 per acre) as of February 12, 1998, by an amount to be determined at trial.

225. Sales of land comparable to Shearer's 1998 consented parcels include the 1988 sale (10 years earlier) of USMS 4015 approximately 5 acres of real estate for North Face Lodge with a total purchase price in 1988 of $650,000 ($175,000 for buildings and improvements, and $475,000 for real estate, or 5 acres at $95,000 per acre in 1988), secured with a Deed of Trust recorded on September 30, 1987 in Book 40 Page 328 in the Nenana Recording District 414, 10 years prior to Shearer's consent.

226. Sales of land comparable to Shearer's 1998 consented parcels include the 1988 sale (10 years earlier) of USMS 2432 of approximately 2.5 acres of real estate (raw land) for over $90,000 per acre, by Warranty Deed recorded on October 19, 1988, in Book 593 Page 351 in the Fairbanks Recording District, 10 years prior to Shearer's consent.

227. Sales of land comparable to Shearer's 1998 consented parcels include the 1987 sale (10 years earlier) of USMS 2432 of approximately 1.0 acres of real estate (raw land) for $100,000 per acre, by Warranty Deed recorded on November 23, 1987, in Book 551 Page 932 in the Fairbanks Recording District, over 10 years prior to Shearer's consent.

228. Appraisals of land in the vicinity of Shearer's consented parcels show the land value of parcels in Kantishna appreciating at a rate of up to 18% per year prior to February 12, 1998, the date of Shearer's consent.

229.NPS appraisals of Plaintiff Shearer's Claims have not included all appropriate prior private

sales as the comparables which would result in higher valuations of the Claims.

230.NPS appraisals of Plaintiff Shearer's Claims have not adequately adjusted for features

affecting land prices in the vicinity including, but not limited to, features such as road access and

views of Denali (Mt. McKinley), which would result in higher valuations of the Claims.

231.The just compensation and fair market value as of February 12, 1998 for Plaintiff Shearer's

consented Parcels 1 through 21 will be in an amount to be determined by the Court at trial.

**(Claim continued – Second Amended Complaint)**
**<u>Claims for Takings of one or more of the Parcels 2 through 21 pursuant to:</u>**
**<u>"Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq."</u>**

232.Plaintiff Shearer reserves a right to appeal decisions by this Court that find any of the Parcels

2 through 21 were not subject to taking under the Public Law No. 105-83 Section 120.

233.Without forfeiting his right to appeal, Plaintiff Shearer claims that for all Parcels 2 through

21 that this Court finds were not subject to taking under the Public Law No. 105-83 Section 120,

either because of an earlier date of taking or because the Parcel does not meet the definition of

property that could be taken pursuant to Section 120, Shearer brings a claim of taking for all such

Parcels 2 through 21 pursuant to the "Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq."

234.Plaintiff Shearer claims the Parcels 14, 15, 16, 17, 18, 20, and 21; if not taken pursuant to

Law No. 105-83 Section 120, were taken pursuant to the "Mining in the Parks Act, 16 U.S.C.

Secs 1901, et seq".

**(Claim continued – Second Amended Complaint)**
**<u>Claims for Ownership and Request to Quiet Title any Parcels 2 through 21</u>**
**<u>that are found not to have been taken pursuant to Public Law No. 105-83 Section 120</u>**
**<u>("Section 120") and found not to have been taken pursuant to:</u>**
**<u>"Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq."</u>**

235. Plaintiff Shearer reserves a right to appeal decisions by this Court that find any of the Parcels 2 through 21 were not subject to taking under the Public Law No. 105-83 Section 120.

236. Without forfeiting his right to appeal, Plaintiff Shearer claims that he is the rightful owner of all rights, title, and interest to any Parcels 2 through 21 that the court finds not to have been taken pursuant to Section 120 and not to have been taken pursuant to the "Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq."

237. Plaintiff Shearer has recorded his proof of ownership in the form of deeds, assignments, releases, and other recordable documents in the Fairbanks Recording District, State of Alaska.

238. Plaintiff Shearer has produced the recorded documents that are the basis for his ownership and chain of title to Parcels 2 through 21 and provided a copy of such recorded documents to the Defendant the United States.

239. The United States has allegedly claimed an interest conflicting with Plaintiff Shearer's interest to some of Parcels 2 through 21.

240. The United States has not produced any proof of ownership or chain of title that is superior to Plaintiff Shearer's interest in response to Shearer's Requests for Production.

241. Plaintiff Shearer therefore is requesting the court to quiet title to Shearer all of the rights, title, and interest to Parcels 2 through 21 that the court finds not to have been taken pursuant to

Section 120 and not to have been taken pursuant to the "Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq."

242. Plaintiff Shearer claims the Parcels 2, 3, 9, and 10; if not taken pursuant to Law No. 105-83 Section 120, and if not taken pursuant to the "Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq.", are owned by Plaintiff Shearer and requests the Court to quiet title the above Parcels to Paul G. Shearer against any and all defendants, including Defendant United States and any unknown defendants: Plaintiff Shearer requests the Court to enter a judgment declaring that the Plaintiff, to the exclusion of all other parties to this action, is the owner of these Parcels and nullifying any claim of the United States to said Parcels.

### Prayer for Recovery

Plaintiff respectfully requests that:

1.  The Court enter judgment declaring that the Government Defendants are liable to Plaintiff in an amount equal to the just compensation for the taking of the 3.05 acre tract of Doherty patented mining claim as of the date of taking and award Plaintiff just compensation for the value of such property interest in an amount to be determined by the Court.

2.  The Court enter judgment declaring that the Government Defendants are liable to Plaintiff in an amount equal to the just compensation for the taking of all other interests and Claims consented by the Individual Consent Declaration of Taking as of the date of taking and award Plaintiff just compensation for the loss of the property interest in an amount to be determined by the Court.

3.  The Court enter judgment declaring that the Government Defendants are liable to Plaintiff in an amount equal to the just compensation for the taking of all affected interests and Claims or

other damages caused by the failure of the Government Defendants to follow the National Park

Service Land Acquisition Procedures as of the date of taking and award Plaintiff just

compensation for the loss of the property interest in an amount to be determined by the Court.

4. The Court enter judgment in favor of Plaintiff and against the Government Defendants,

awarding interest on the sum determined to be just compensation for the Claims from the date of

taking until payment.

5. The Court order and direct the Government Defendants to immediately proceed to determine

the estimated just compensation plus interest from the date of taking to the date of deposit, for

the taking of all other interests and remaining Claims listed above as parcels 2 through 21

consented by the Individual Consent Declaration of Taking pursuant to Section 120 of Public

Law No. 105-83 or pursuant to the Mining in the Parks Act, 16 U.S.C. Secs 1901, et seq.

6. The Court order and direct the Government Defendants to deposit in the Court's Registry

account the estimated just compensation plus interest from the date of taking to the date of

deposit, for the consented Claims listed above as parcels 2 through 21 consistent with Section

120 of Public Law 105-83, as soon as the estimated just compensation is determined.

7. The Court order the immediate release to Plaintiff of such funds deposited in the Court

Registry.

8. The Court order and direct the Government Defendants to reimburse the Plaintiff for all

relocation expenses that are allowed by the Uniform Relocation Assistance and Real Property

Acquisition Policies Act of 1970, Public Law 91-646, as amended (42 U.S.C. 4601 et seq.).

9. Alternatively if the government Defendants fail to perform its obligations under the law

regarding any of the Claims consented by the Plaintiff, or if the Court finds that the Plaintiff

ownership interests have not been taken by the United States, then the Plaintiff requests the Court

to enter a judgment declaring that the Plaintiff, to the exclusion of all other parties to this action,

is the owner of the Claims and nullifying any claim of the United States to said Claims.

10. The Court enter judgment in favor of Plaintiff and against the Government Defendants for

Plaintiff's attorney fees and costs of this action pursuant to the Equal Access to Justice Act, 28

U.S.C. sec 2412 or any other applicable statute; and

11. The Court award Plaintiff such further relief as the Court determines to be just and equitable.

Dated April 5, 2007

Plaintiff
Paul G. Shearer
1532 Meadows Drive
Lake Oswego, OR  97034