IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

FILED
JUL 02 1993
UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By _____ Deputy

KLK, INC.,

    Plaintiff,

v.

UNITED STATES OF AMERICA,
DEPARTMENT OF THE INTERIOR,
NATIONAL PARK SERVICE,

    Defendant.

Case No. F92-006-CIV

**ORDER FROM CHAMBERS**

### Introduction

Plaintiff is the owner of an unpatented mining claim within the boundary of Denali National Park. It argues that the National Park Service (NPS) has prohibited it from using its claim and is thereby taking the property. Plaintiff moves for just compensation for the loss of its property. See 16 U.S.C. § 1910. Defendant agrees that it has taken the property but contends that the taking occurred on January 31, 1992, the date when it made a final decision on plaintiff's application for a permit to mine its claim. Defendant moves for partial summary judgment. Plaintiff disagrees, and argues that its property was taken when, after the close of the 1985 mining season, a court enjoined NPS from allowing further mining.

The parties also dispute the extent of the property which was taken. NPS argues that it took only those claims on which plaintiff sought a permit to operate a mine. Plaintiff contends that, in light of the decision on its application for a permit, seeking a permit for its

EXHIBIT ___1___
Page __1__ of __11__

other claims would be futile. Plaintiff, therefore, believes it is entitled to compensation for all its claims. Defendant moves to dismiss any claim for relocation expenses. Plaintiff argues that a decision on relocation expenses is premature. Finally, defendant claims that plaintiff has sued the wrong party.

## Statement of the Case

This case arose after Congress placed additional federal lands within national parks in Alaska in 1980. Alaska Native Interest Lands Conservation Act (ANILCA) § 202 (codified at 16 U.S.C. § 410hh-1(3)(a)). For the first time, private mines on these federal lands[1] became subject to the same federal laws that apply to other national park lands. ANILCA § 203 (codified at 16 U.S.C. § 410hh-2). The National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, et seq., requires NPS to prepare environmental assessments and evaluations before permitting mining in the parks. Similarly, the Mining in the Parks Act of 1976 (Mining Act), P.L. 94-429, 90 Stat. 1342 (1976) (codified in part at 16 U.S.C. §§ 1901-12), requires that "all mining operations . . . be conducted so as to prevent or minimize damage to the environment and other resources values." 16 U.S.C. § 1901(b)[2]. NPS

---

[1] The Mining Act of 1872 allows private citizens, who discover precious mineral resources, to file claim to those minerals and mine them without owning the land. 30 U.S.C. § 26.

[2] The reason Congress placed environmental limits on mining in national parks is "the level of technology of mineral exploration and development has changed radically in recent years and continued application of the mining laws of the United States to those areas of the National Park System to which it applies, conflicts with the purposes for which they were established[.]" 16 U.S.C. § 1901(a).

regulations in effect in 1985 required miners to submit plans of operation, which NPS had to approve before the mine could operate. 36 C.F.R. §§ 9.9, 9.10 (1992). According to its regulation, NPS had to prepare an environmental analysis[3] of the plan before approving it. 36 C.F.R. § 9.10(b) (1992).

Responding to a suit brought by environmental groups, Judge von der Heydt determined in 1985 that NPS's approval of existing mines violated both NEPA and its own regulations promulgated under the Mining Act. On July 22, 1985, the court enjoined NPS from allowing mining on park land until NPS complied with NEPA and ordered existing mining operations to terminate by October 15, 1985[4]. One of the requirements of NEPA is that NPS conduct a cumulative impact analysis of the aggregated impact of all mines in a particular area. The order allowed NPS or an aggrieved miner to petition the court for a determination that an individual mine would not affect the cumulative environmental impact to the area. If not, NPS could proceed with the permit process for that mine; otherwise, processing individual permits would have to wait until after NPS prepared a cumulative environmental impact statement.

In 1982, plaintiff purchased six claims and a portion of a seventh claim to mine on unpatented land.[5] The land was located in the Caribou Creek drainage on a portion of

---

[3] If there is a distinction between environmental assessments under NEPA and environmental analysis under NPS regulations, it is not pertinent to the resolution of these motions.

[4] The original order allowed forty-five days; this was extended to October 15, 1985.

[5] The claims are described in plaintiff's motion as follows: "Caribou Howtay Association Claim Nos. 5 through 11 (BLM No. F523-78, Claim No. 5; BLM No. F523-79, Claim No.

Page 3
KLK, Inc. v. United States, F92-006-CIV
Order on pending motions

EXHIBIT 1
Page 3 of 11

Denali National Park that became park land under ANILCA in 1980.[6] Plaintiff was prohibited from operating its mine after October 15, 1985.[7] Shortly thereafter it submitted a plan of operation for claims 7 through the downstream one-half of 11 and requested that NPS conduct appropriate environmental studies. Plaintiff has never submitted a plan of operation for claims 5 and 6.

In 1987, NPS determined plaintiff's proposed mine would significantly affect both the local environment and contribute to the cumulative impact of mining in the park. NPS, therefore, declined to petition the court to exclude the mine from its injunction. Nor has plaintiff sought such relief. NPS completed an environmental impact statement (FEIS) for cumulative impacts of mining in Denali National Park. The FEIS included four alternative courses of action for the Park, one of which was acquiring all mining claims in the Park as funds became available. NPS adopted this plan in a Record of Decision (Denali ROD) on August 21, 1990. The stated NPS goal was to purchase all mining rights in Denali. Funding for the purchase price was not then available, so NPS set priorities in purchasing mining claims and, for those claims not purchased, NPS was to approve and regulate mining on an interim basis. The court disolved the injunction on NPS on January 2, 1991.

---

6; BLM No. F523-80, Claim No. 7; BLM No. F523-81 Claim No. 8; BLM No. F523-82, Claim No. 9; BLM No. F523-83, Claim No. 10; and, BLM No. F523-84, Claim No. 11."

[6] Judge von der Heydt's order, which admittedly applied to plaintiff's mine, was directed at the mines ANILCA placed within park boundaries.

[7] Plaintiff alleges that the injunction shut down the mine. Defendant contests that by the time the order was issued the mine was closed for the season and that plaintiff was merely enjoined from reopening the mine the following season.

With the injunction dissolved, NPS began the environmental assessment of plaintiff's plan of operation. On May 3, 1991, NPS staff denied plaintiff's proposed plan as contrary to its regulations. The denial letter mentioned NPS's intention to acquire all mining claims in Denali National Park and offered to negotiate a purchase. Plaintiff appealed this decision several times, but it was eventually affirmed by the director of NPS on January 31, 1992.

## Analysis

### I. When the Claims Were Taken.

When considering cross motions for summary judgment[8], federal courts render judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At summary judgment the moving party bears the same burden of proof that it has at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). If the moving party makes a prima facia case, the non-moving party must present sufficient evidence to raise a genuine issue of fact as to an element of the moving party's case in order to defeat the motion. Id. A genuine issue of fact is one that "properly can be resolved by a finder of fact because [it] may be reasonably resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A mere disagreement between the parties

---

[8] Plaintiff's motion is entitled "Motion to Determine Taking." In support of its motion, plaintiff includes affidavits and other evidence. The court will, therefore, treat this motion as a motion for summary judgment. See Fed. R. Civ. P. 12(b).

Page 5
KLK, Inc. v. United States, F92-006-CIV
Order on pending motions

EXHIBIT 1
Page 5 of 11

does not prohibit summary judgment. California Arch. Bldg. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987), cert. denied, 484 U.S. 1006 (1988).

Both parties agree that the federal government has taken plaintiff's mining claims. The sole disputed issue is the date on which the property was taken. Where the government physically occupies private property, a taking occurs upon acquiring possession of the property or a declaration of a condemnation. United States v. 57.09 Acres of Land More or Less, 706 F.2d 280, 282 (9th Cir. 1983). Where the owner alleges that a statute or regulation is so restrictive that it prevents any viable economic use of the property, a claim "is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulation to the property at issue." Williamson County Regional Planning Comm'n. v. Hamilton Bank, 473 U.S. 172, 186, 105 S. Ct. 3108, 3116 (1985). If an allegedly restrictive law requires the property owner to apply for a permit to undertake a desired use, a takings claim is only ripe after the property owner has actually applied for a permit and been denied. United States v. Vogler, 859 F.2d 638, 642 (9th Cir. 1988), cert. denied, 488 U.S. 1006 (1989). The taking occurs when the permit is denied. Id. If a taking results from the actual passage of a statute or regulation, as opposed to its implementation, it is a legislative taking and "the time when economic development [is] effectually prevented [is] the date of the taking." Whitney Benefits, Inc. v. United States, 752 F.2d 1554, 1559 (Fed. Cir. 1985), cert. denied, 112 S. Ct. 406 (1991); Whitney Benefits, Inc. v. United States, 18 Ct. Cl. 394 (1989).

The court must decide whether the Mining Act effected a legislative taking upon its passage or whether the taking only occurred upon NPS's implementation of the Act.

Controlling this court's determination is Ninth Circuit precedent on this issue. See United States v. Vogler, 859 F.2d 638. Vogler, who owned a claim in a similar situation as plaintiff's claim, drove a multi-ton earth mover along a trail into a national park, seeking access to his mining claim. He had neither applied for a permit to access his claim, nor submitted a proposed plan of operation for his mine. He argued that the law requiring an entry permit and a proposed plan of operation for the mine was a taking of his property. The court rejected his claim stating:

> This argument is not ripe for judicial resolution . . . because Vogler never attempted to apply for a permit and he never submitted a mining plan. . . . The very existence of a permit system implies that permission may be granted; therefore, it is only after a permit has been denied and the denial's effect prevents the "economically viable" use of land that it can be said a "taking" occurred.

United States v. Vogler, 859 F.2d at 642. By holding that Vogler had to apply for a permit, the court rejected the notion that passage of the Mining Act created a legislative taking.

Aside from this controlling precedent, the court is convinced that the Mining Act is not so specific as to effect a taking by its mere enactment. To effect a taking upon enactment, the legislation must indicate an intent to acquire land and specify the property to be acquired. The Mining Act does contemplate acquiring land. See 16 U.S.C. §§ 1901(b), 1910. It also specifically requires that NPS examine mining claims in Denali National Park. See Pub. L. 94-429 § 6, Sept. 28, 1976, 90 Stat. 1343 (temporary provision requiring NPS to determine validity of existing mining claims). The property on which plaintiff's claim is located was not, however, part of the national parks when this act was considered. Thus, Congress could not have specifically considered prohibiting mining on these claims and

Page 7
KLK, Inc. v. United States, F92-006-CIV
Order on pending motions



EXHIBIT ___1___
Page __7__ of __11__

acquiring this property when it passed the Mining Act.[9] Contrast <u>Whitney Benefits, Inc. v. United States</u>, 18 Ct. Cl. 394, where Congress intended to prevent coal mining on Whitney's property. Plaintiff's cites <u>Lucas v. South Carolina Coastal Council</u>, 112 S. Ct. 2886 (1992), to no avail. In that case, a property owner's plans to build a house were wholly and finally prevented by state legislation. The responsible administrative agency admitted that it would have denied any proposed building plan. Here, NPS has never stated that it would deny plaintiff's mining plan and did not do so until it reached that decision after considering the plan.

Having decided that the taking could occur only when NPS enforced the Mining Act, the court must determine when the NPS's decision was final. There is no real controversy on this point. NPS's final action was on January 31, 1992, when plaintiff's appeal was denied by the Commissioner. Plaintiff's property was taken on January 31, 1992.

Plaintiff also argues, possibly in the alternative, that the relevant time for determining whether a taking has occurred is distinct from the relevant time for determining just compensation. It would have the court find that, even though the taking occurred upon final denial of the permit, it is entitled to compensation from the first time plaintiff was prohibited from using the mine. Plaintiff has not cited, and the court has not found, any authority justifying retroactive compensation. At any one moment plaintiff's property has either been taken by the government or has not. If the government has taken the property, the owner is

---

[9] While ANILCA specifically identified the lands to be added to the national parks, it did not require that mining claims be acquired and only applied those restrictions already applying to other national park lands. 16 U.S.C. § 410hh.

entitled to just compensation for the period during which the government possesses the property. First English Evangelical Lutheran Church of Glendale v. County of Los Angles, 482 U.S. 304 (1987), cert. denied, 493 U.S. 1056 (1990). If the property has not been taken, the owner is not entitled to compensation. Plaintiff's property was taken on January 31, 1992, and it is entitled to compensation from that point.

## II.     Whether Claim 5 and Claim 6 Were Taken.

Plaintiff acknowledges that it has not submitted a proposed plan of operation to NPS for claims 5 and 6. It argues that these claims are taken because the FEIS indicated a policy decision to acquire all mining claims in Denali National Park. In light of this policy decision, plaintiff argues that submitting a proposed plan of operation would be futile. Defendant disagrees and argues that the claims in question were not taken by the NPS.

Plaintiff's argument was rejected in United States v. Vogler, 859 F.2d at 642. NPS's policy determination was discussed as an option in the FEIS and chosen as a policy in the Denali ROD. Plaintiff correctly indicates that NPS has decided to acquire all the mining property in Denali. The Denali ROD also indicates, however, that the resources to acquire property are not readily available and that there will be an interim period where mining will occur pursuant to NPS regulations. NPS has not decided to prohibit mining across the board. Cf. Lopez v. Heckler, 725 F.2d 1489, 1500 (9th Cir. 1984), vacated on other grounds, 469 U.S. 1082 (1984) (where head of agency declared agency policy of nonacquiescence with court determination in previous case, exhaustion of other case in the class would be futile). This court cannot, therefore, determine whether NPS would deny plaintiff's plan of operation for claims 5 and 6.

Page 9
KLK, Inc. v. United States, F92-006-CIV
Order on pending motions

EXHIBIT 1
Page 9 of 11

72A

Plaintiff argues further that when the conditions contained in the FEIS and the Denali ROD are applied to claims 5 and 6, NPS would necessarily make the same decision as it did for claims 7, 8, 9, 10, and 11. Plaintiff does not support this assertion with any admissible evidence, and the record is silent on the environmental characteristics of the claims. In order to avoid summary judgment, plaintiff must bring forth enough evidence to establish an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. at 322-323. It has failed to so do. Even if plaintiff had attempted to make such a showing, the court doubts whether it would be competent to decide the issue without a record developed before NPS. See Weinberger v. Salfi, 422 U.S. 749, 765 (1975) ("Exhaustion is generally required . . . to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.")

### III.   Whether Plaintiff Correctly Sued the National Park Service.

Defendant argues that plaintiff is suing NPS and this is not proper because the United States has not waived sovereign immunity as to either the Department of Interior or NPS. See Boyd v. United States, 482 F. Supp. 1126 (W.D. Pa. 1980). Plaintiff, however, names the United States of America as the defendant. While the named defendant is modified by the "Department of the Interior" and the "National Park Service," the single defendant in this case is the United States.

### Conclusion

Plaintiff's motion at docket number 50 is **DENIED**. Defendant's motion at docket number 54 is **GRANTED** as to the date of taking and which property was taken, and is

**DENIED** as to the correct party to sue. Plaintiff's opposition indicates that, given the court's decision as to the date of taking, it will not request relocation expenses. The court, therefore, does not address that issue.

**It is so ordered.**

DATED the 22nd day of June, 1993, at Anchorage, Alaska.

cc: Sheehan
    Dunsmore
    9CCA

John W. Sedwick
United States District Judge

Page 11
KLK, Inc. v. United States, F92-006-CIV
Order on pending motions

EXHIBIT 1
Page 11 of 11